JULIAN BACH, SBN 162421
LAW OFFICE OF JULIAN BACH
7911 Warner Avenue
Huntington Beach, CA 92647
Telephone: (714) 848-5085
Facsimile: (714) 848-5086

STRAGGAS DEAN LLP
Eric D Dean, SBN 56854
8911 Research Drive
Irvine, California 92618
Telephone: (949) 660-9100
Facsimile: (949) 660-9144

Co-Counsel for Creditor,
CELTIC BANK CORPORATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>M.R.R. FABRIC, INC.,<br><br>Debtor. | Case No. 2:16-bk-21734-BR<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION OF CREDITOR CELTIC BANK CORPORATION FOR ISSUANCE OF AN ORDER UNDER BANKRUPTCY RULE 2004 COMPELLING THE EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ERIC DEAN IN SUPPORT THEREOF**<br><br>[No hearing required unless otherwise ordered by the Court pursuant to LBR 2004-1(d)] |

TO ALL INTERESTED PARTIES AND TO THE CLERK OF THE COURT:

**PLEASE TAKE NOTICE** that creditor Celtic Bank Corporation ("Celtic Bank"), hereby moves the Court for issuance of an order under Federal Rule of Bankruptcy Procedure 2004:

1. Authorizing Celtic Bank to issue a subpoena compelling the person most knowledgeable at Debtor M.R.R. Fabric, Inc. (the "Debtor"), whose address is 237 South Wetherly Drive, Beverly Hills, California 90211, to produce to Celtic Bank for inspection and copying on 24 days' notice, the documents described in Exhibit A to the attached Declaration of Eric Dean. The said documents shall be produced at the Law Office of Straggas Dean, LP, 8911 Research, Irvine, California 92618, attn: Eric Dean and

2. Authorizing Celtic Bank Corporation to issue and serve a subpoena on the Debtor to facilitate the examination under Rule 2004 of the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 2004-1(d), the Motion may be granted without a hearing. Accordingly, no hearing will be held on the Motion unless the Court orders otherwise.

Dated: November 3, 2016

Respectfully submitted,
STRAGGAS DEAN, LLP
LAW OFFICE OF JULIAN BACH

By: ______________________
Eric Dean
Julian Bach

Co-Counsel for Creditor,
CELTIC BANK CORPORATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. STATEMENT OF FACTS

On or about February 13, 2015, Celtic Bank made two commercial business loans to entities known as Debtor M.R.R. Fabric, Inc. (the "Debtor") and R2D Apparel, Inc. ("R2D"), designated as Loan No.s 1750188 ("Loan 1") and 1750189 ("Loan 2"). Loan 1 was in the original principal amount of $4 million; Loan 2 was in original principal amount of $750,000 (collectively the "Celtic Bank Loans"). Rabin Arrehbori and Raymond Arrehbori are the sole shareholders, directors and officers of the Debtor and R2D, signed all Loan Documents on behalf of those entities and guaranteed the Celtic Bank Loans.

To induce Celtic Bank to make the Celtic Bank Loans, Rabin Arrehbori and Raymond Arrehbori represented to Celtic Bank, *inter alia*, that the Debtor and R2D were in the business of purchasing, selling, manufacturing, importing and/or distributing fabric and/or garments comprised of various fabric and designs and that the Debtor and R2D were fully legal compliant in their business operations and had no knowledge of any possible claims that might be asserted against them. In fact, they were illegally engaged in copyright violations at the time they applied for the Celtic Bank Loans and these copyright violations would result in Federal Court Litigation being filed against each of them (Neman Brothers & Assoc. Inc. v. M.R.R., Fabric, Inc. et. al., United States District Court, Central District of California, Case No. 2:16-cv-4103) which was ultimately settled by the Debtor.

Within around one month of the Celtic Bank Loans being funded, the Debtor, R2D, Rabin Arrehbori and Raymond Arrehbori breached their obligations to Celtic Bank. All four have been and remain in breach of their obligations under the Celtic Bank Loans. As of June 1, 2016, the total balance owed to Celtic Bank was in the amount of approximately $1,257,787.94. Based upon the defaults under the Celtic Bank Loans and failure to pay, on June 15, 2016, Celtic Bank commenced a

lawsuit against the Debtor, R2D, Rabin Arrehbori and Raymond Arrehbori in Los Angeles County Superior Court, Case No. TC 028460.

Thereafter, on September 1, 2016, the Debtor voluntarily commenced this Chapter 7 bankruptcy proceeding. At the same time as this instant bankruptcy was filed, four other related Chapter 7 bankruptcy cases were likewise filed: (1) *In re Raymond Arrehbori*, Case No. 2:16-bk-27145-BR; (2) *In re Arrehbori Family, LLC,* Case No. 2:16-bk-21731-BR; (3) *In re Rabin Arrehbori,* Case No. 2:16-bk-21748-BR; and (4) *In re R2D Apparel, Inc.*, Case No. 2:16-bk-21740-BR.

Celtic Bank is informed and believes that, among other things, at the time of the application and making of the Celtic Bank Loans, Rabin Arrehbori and Raymond Arrehbori knew but failed to disclose that they and their related business entities, including the Debtor, were committing copyright violations and were otherwise engaging in illicit business practices such that they could no longer continue in value and the value of the assets pledged to Celtic Bank as collateral became essentially valueless and unmarketable.

Further, a review of the statements and schedules filed by the Debtors in the above-referenced bankruptcy proceedings makes it unclear what happened to the proceeds from the Celtic Bank Loans as well as the assets and liabilities of the Debtor and the other related bankrupt individuals and business entities as outlined herein above. In fact, Celtic Bank is informed that the Debtors diverted the Celtic Bank collateral for improper purposes prior to the filing of their respective Bankruptcy Petitions. The above has prompted Celtic Bank to bring the instant motion.

## II. ARGUMENT

Under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), the Court may order the examination of any person or entity regarding, among other things, "to the acts, conduct, or property or to the liabilities and financial condition of the debtor." Fed.R.Bank.P. 2004(b). As indicated by the language of the rule, the permissible scope of examination under Rule 2004 is very broad. *See, e.g. In*

*re Dinubilo*, 177 B.R. 932, 939 (E.D.Cal. 1993) ("The range of discoverable subject matter in a Rule 2004 examination is 'unfettered and broad.'"); *In re Financial Corp. of America*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990) ("The scope of Rule 2004 is broad, and an examination pursuant to this rule may extend to third parties who have had dealings with the debtor.").

In the present case, there are multiple reasons why the information held by the Debtor is relevant to the acts, conduct, or property or to the liabilities and financial condition of the Debtor. More specifically, Celtic Bank is informed and believes that, among other things, at the time of the application and making of the Celtic Bank Loans, Rabin Arrehbori and Raymond Arrehbori knew but failed to disclose that they and their related business entities, including the Debtor, were committing copyright violations with respect to their business operations. Further, a review of the statements and schedules filed by the Debtors in the above-referenced bankruptcy proceedings makes it unclear what happened to the proceeds from the Celtic Bank Loans as well as the assets and liabilities of the Debtor and his other bankrupt business entities as outlined herein above. Finally, the requested document production and examination can not proceed under Federal Rule of Bankruptcy Procedure 7030 or 9014 because the matters to be covered are not the subject of any pending contested matter or adversary proceeding.

## III. CONCLUSION

For the reasons set forth above, Celtic Bank respectfully requests that the Court issue an order authorizing Celtic Bank to issue discovery demands to the Debtor and to examine the person most knowledgeable at Debtor under oath concerning the acts, conduct, or property or to the liabilities and financial condition of the Debtor.

Dated: November 3, 2016

Respectfully submitted,
STRAGGAS DEAN LLP
LAW OFFICE OF JULIAN BACH

By: ______________________
Eric Dean
Julian Bach
Co-Counsel for Creditor,
CELTIC BANK CORPORATION

**DECLARATION OF ERIC DEAN**

1. I am and at all time relevant have been an attorney at law licensed to practice in the State of California and admitted to practice before this Court and a partner in the law firm of Straagas Dean LLP, Co-Counsel of record for creditor Celtic Bank Corporation ("Celtic Bank") in this proceeding. Except as stated on information and belief, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2. I have represented Celtic Bank in connection with this bankruptcy and also in litigation pending since June, 2016 in the Los Angeles County Superior Court against Raymond Arrehbori, his brother Rabin Arrehbori, and their business entities Debtor M.R.R. Fabric, Inc. (the "Debtor") and R2D Apparel, Inc. ("R2D"), Case No. TC 028460 (the "Civil Action"), all of whom are in their own separate bankruptcy proceedings pending before this Court. The Civil Action was filed June 15, 2016 and remains pending although stayed by virtue of the various bankruptcy filings.

3. In connections with preparing for the filing of the Civil Action, I carefully reviewed loan documents and a guaranty signed by Raymond Arrehbori and Rabin Arrehbori as well as a Stipulation filed in the pending civil action also signed by the Debtor and its Counsel in this proceeding as well as in the Civil Action, which Stipulation was filed in Los Angeles County Superior Court.

4. I make this declaration in support of Celtic Bank's Motion under Fed. R. Bankr. P. 2004 to compel the production of documents and testimony from the Debtor. In their filings with this Court as well as in the Civil Action, Raymond Arrehbori and Rabin Arrehbori have each admitted that they are and at all times relevant been the sole shareholders, directors and officers of Debtors M.R.R. and R2D.

5. On or about February 13, 2015, Celtic Bank made two commercial business loans to the Debtor and R2D, which Raymond Arrehbori and Rabin Arrehbori each unconditionally and fully guaranteed. Raymond and Rabin each signed all loan documents as officers of the Debtor and R2D with regard to

the Celtic Bank Loans, including Loan Documents in which they made representations and warranties to Celtic Bank that I am informed and believe were untrue when made by the Debtor.

6. The Celtic Bank Loans were designated as Loan Nos. 1750188 ("Loan 1") and 1750189 ("Loan 2"). Loan 1 was in the original principal amount of $4 million; Loan 2 was in original principal amount of $750,000 (collectively the "Celtic Bank Loans"). Both Loans were secured by a perfected security interest in first position against all assets, rights and interests of both the Debtor and R2D. I am informed and believe and thereon declare that the Debtor, in violation of the rights granted by Celtic Bank, wrongfully diverted proceeds in which Celtic Bank had a perfected security interest for their personal use.

7. The Debtor, R2D, Raymond Arrehbori and Rabin Arrehbori have been and remain in breach of their obligations under the Celtic Bank Loans since in or before April, 2016. As of June 1, 2016, the total balance owed to Celtic Bank was in the amount of approximately $1,257,787.94.

8. On September 1, 2016, the Debtor voluntarily commenced this Chapter 7 bankruptcy proceeding. At the same time as this instant bankruptcy was filed, four other related Chapter 7 bankruptcy cases were likewise filed: (1) *In re Rabin Arrehbori*, Case No. 2:16-bk-27148-BR; (2) *In re Arrehbori Family, LLC*, Case No. 2:16-bk-21731-BR; (3) *In re Raymond Arrehbori.,* Case No. 2:16-bk-21745-BR; and (4) *In re R2D Apparel, Inc.*, Case No. 2:16-bk-21740-BR.

9. In addition to the reasons stated above, there are ample reasons why a 2004 Examination and production of documents is appropriate in this case. The information held by the Debtor is relevant to the acts, conduct, or property or to the liabilities and financial condition of the Debtor. A review of the statements and schedules filed by the Debtors in the above-referenced bankruptcy proceedings makes it unclear what happened to the proceeds from

the Celtic Bank Loans as well as the assets and liabilities of the Debtor and his other bankrupt business entities as outlined herein above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of November, 2016, at Irvine, California.

Eric Dean

**EXHIBIT A**

**EXHIBIT A – DOCUMENTS TO BE PRODUCED**

1. All originals and duplicates of Writings, Photographs and Recordings (each as defined in Rule 1001 of the *Federal Rules of Evidence*" ), other than attorney work product or which constitute confidential communications between a client and counsel, (hereinafter collectively "DOCUMENTS"), that constitute, refer to or reflect any Financial Statements, Financial Reports, Reconciliations, Bank Statements, Account Receivable Aging, Inventory Lists, Journals, Ledgers, Balance Sheets, Income and Expense Statements, Profit and Loss Statements (hereinafter collectively "FINANCIAL RECORDS") prepared by or on behalf of M.R.R. FABRIC, INC (hereinafter MRR") at any time from January 1, 2014 to the date of production (the "TIME PERIOD").

2. All DOCUMENTS which constitute, refer to or reflect any FINANCIAL RECORDS of R2D Apparel, Inc ("R2D") during the TIME PERIOD.

3. All DOCUMENTS which constitute, refer to or reflect any FINANCIAL RECORDS of Rabin Arrehbori ("RABIN") during the TIME PERIOD.

4. All DOCUMENTS which constitute, refer to or reflect any FINANCIAL RECORDS of Raymond Arrehbori ("RAYMOND") ) during the TIME PERIOD.

5. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT (as defined in Rule 801 (a) of the Federal Rules of Evidence), whether in the form of letters, text messages, emails, or otherwise, between MRR(including any PERSON acting on its behalf) , and Neman Brothers & Associates, or any person or entity understood to be acting on its behalf (collectively "NEMAN") during the TIME PERIOD.

6. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT, whether in the form of letters, text messages, emails, or otherwise, between R2D (including any PERSON acting on its behalf) and NEMAN, or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

7. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT, whether in the form of letters, text messages, emails, or otherwise, between RAYMOND and NEMAN, or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

8. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise, between RABIN and NEMAN or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

9. All DOCUMENTS which constitute, refer to or reflect any agreements, contracts, understandings or stipulations (collectively "AGREEMENTS") whether oral or in writing, between MRR and NEMAN during the TIME PERIOD.

10. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS between R2D and NEMAN during the TIME PERIOD.

11. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS between RAYMOND and NEMAN during the TIME PERIOD.

12. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS between RABIN and NEMAN during the TIME PERIOD.

13. All DOCUMENTS which constitute, refer to or reflect a notice or demand received by MRR from NEMAN or a PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

14. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT, whether in the form of letters, text messages, emails, or otherwise, between R2D (including any PERSON acting on its behalf) and Robert O. Arrehbori during the TIME PERIOD.

15. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT, whether in the form of letters, text messages, emails, or otherwise, between MRR (including any PERSON acting on its behalf) and Robert O. Arrehbori during the TIME PERIOD.

16. All DOCUMENTS which constitute, refer to or reflect a notice or demand received by R2D from NEMAN or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

17. All DOCUMENTS which constitute, refer to or reflect a notice or demand received by RAYMOND from NEMAN or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

18. All DOCUMENTS which constitute, refer to or reflect a notice or demand received by RABIN from NEMAN or any PERSON stating to be or understood to be acting on its behalf during the TIME PERIOD.

19. All DOCUMENT which constitute, reflect or refer to any disbursement of or uses made of proceeds by MRR from or after February 13, 2015.

20. All DOCUMENT which constitute, reflect or refer to disbursement of or uses made of proceeds by R2D from or after February 13, 2015.

21. All DOCUMENTS which constitute, reflect or refer to any proceeds received by MRR from or after February 13, 2015.

22. All Documents which constitute, reflect or refer to any proceeds received by R2D from or after February 13, 2015.

23. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS between RAYMOND and Robert O. Arrenhbori during the TIME PERIOD.

24. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS between RABIN and Robert O. Arrenhbori.

25. All DOCUMENTS which constitute, refer to or reflect any oral or written AGREEMENTS in which Nobel Textile, Inc. is referenced.

26. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENT, whether in the form of letters, text messages, emails, or otherwise in which Nobel Textile, Inc. is referenced during the TIME PERIOD.

27. All DOCUMENTS referencing any account receivables owed MRR by Nobel Textile, Inc. to MRR from or after February 13, 2015.

28. All DOCUMENTS referencing any account receivables owed MRR by Nobel Textile, Inc. to R2D from or after February 13, 2015.

29. All DOCUMENTS referencing any payments made by Noble Textile, Inc. to R2d from or after February 13, 2015.

30. All DOCUMENTS referencing any payments made by Noble Textile, Inc. to MRR from or after February 13, 2015.

31. All DOCUMENTS referencing any invoices by MRR to Noble Textile, Inc. from or after February 13, 2015.

32. All DOCUMENTS referencing any invoices by R2D to Noble Textile, Inc. from or after February 13, 2015.

33. All DOCUMENTS referencing any purchase orders by Noble Textile, Inc to MRR from or after February 13, 2015.

34. All DOCUMENTS referencing any purchase orders by Nobile Textile, Inc. to R2D from or after February 13, 2015.

35. All DOCUMENTS referencing any goods purchased by MRR that were delivered to Noble Textile, Inc. from or after February 13, 2015.

36. All DOCUMENTS referencing any goods purchased by R2D that were delivered to Noble Textile, Inc. from or after February 13, 2015.

37. All DOCUMENTS which reference or refer to whether MRR was committing copyright violations during the TIME PERIOD.

38. All DOCUMENTS which reference or refer to whether R2D was committing copyright violations during the TIME PERIOD.

39. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of R2D canceling orders during the TIME PERIOD.

40. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of MRR canceling orders during the TIME PERIOD.

41. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of MRR refusing to accept delivery of goods or concerning the return of goods during the TIME PERIOD.

42. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of MRR refusing to accept delivery of goods or concerning the return of goods during the TIME PERIOD.

43. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of R2D terminating AGREEMENTS during the TIME PERIOD.

44. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise received from customers of MRR terminating AGREEMENTS during the TIME PERIOD.

45. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise concerning the return of any purchased fabric by R2D to the vendor who provided that fabric during the TIME PERIOD.

46. All DOCUMENTS which constitute, refer to or reflect any oral or written STATEMENTS, whether in the form of letters, text messages, emails, or otherwise concerning the return of any purchased fabric by MRR to the vendor who provided that fabric during the TIME PERIOD.

47. All DOCUMENTS which constitute, refer to or reflect any AGREEMENTS concerning the return of any purchased fabric by R2D to the vendor who provided that fabric during the TIME PERIOD.

48. All DOCUMENTS which constitute, refer to or reflect any AGREEMENTS concerning the return of any purchased fabric by MRR to the vendor who provided that fabric during the TIME PERIOD.

49. All DOCUMENTS which refer to or reflect the inventory of R2D during the TIME PERIOD.

50. All DOCUMENTS which refer to or reflect the inventory of MRR during the TIME PERIOD.

51. All DOCUMENTS which refer to or reflect the location of any inventory of R2D during the TIME PERIOD.

52. All DOCUMENTS which refer to or reflect the location of the inventory of MRR during the TIME PERIOD.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 7911 Warner Avenue, Huntington Beach, CA 92647

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND MOTION OF CREDITOR CELTIC BANK CORPORATION FOR ISSUANCE OF AN ORDER UNDER BANKRUPTCY RULE 2004 COMPELLING THE EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ERIC DEAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 3, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Joseph Caceres jec@locs.com
Charles Shamash cs@locs.com
George D Straggas george.straggas@straggasdean.com
Heide Kurtz trustee@hkurtzco.com
U.S. Trustee ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL ~~OR OVERNIGHT MAIL~~**(indicate method for each person or entity served):
On 11/03/2016, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

(Debtor's Counsel)
Joseph Caceres
Charles Shamash
Caceres & Shamash LLP
8200 Wilshire Blvd Ste 400
Beverly Hills, CA 90211
[Via U.S. Mail]

(Chapter 7 Trustee)
Heidi Kurtz
2515 S Western Avenue #11
San Pedro, CA 90732
[Via U.S. Mail]

(Debtor)
M.R.R. Fabric, Inc.
237 South Wetherly Drive
Beverly Hills, CA 90211
[Via U.S. Mail]

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ________________, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 11/03/2016 | Julian Bach | /s/ Julian Bach |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**CONTINUED SERVICE LIST BY U.S. MAIL**

**U.S. BANKRUPTCY JUDGE: SERVED BY U.S. MAIL**
Chambers of the Honorable Barry Russell
U.S. Bankruptcy Court - Los Angeles Division
255 East Temple Street, Suite 1660
Los Angeles, California 90012
Attn: Chambers copies