| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Edmond Nassirzadeh, Esq., SBN: 201833**<br>*ed@nasslawfirm.com*<br>**NASS LAW FIRM, INC.**<br>**A Professional Law Corporation**<br>**9454 Wilshire Blvd., Suite 700**<br>**Beverly Hills, CA 90212**<br>**Tel: 310-858-7755** | |

☐ *Individual appearing without attorney*

☒ *Attorney for **Movant SIONIT NEMAN***

## UNITED STATES BANKRUPTCY COURT
### Central District of California

| In re:<br><br>**M.R.R. FABRIC, INC.** | CASE NO.: **7**<br><br>CHAPTER: **2:16-bk-21734-BR** |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(REAL PROPERTY)** |
| Debtor(s). | DATE: **December 14, 2016**<br>TIME: **10:00 A.M.**<br>COURTROOM: **1668** |
| **Movant: *SIONIT NEMAN*** | |

1. **Hearing Location:**

☒ 255 East Temple Street, Los Angeles, CA 90012         ☐ 411 West Fourth Street, Santa Ana, CA 92701

☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101

☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____ ; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Dated:  **November 22, 2016**

**NASS LAW FIRM, INC.**
_____
Printed Law Firm Name (if applicable)

**Edmond Nassirzadeh, Esq.**
_____
Printed Name of Individual Movant or attorney for Movant

*Edmond Nassirzadeh*
_____
Signature of Individual Movant or attorney for Movant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

June 2014                                     Page 2                                     **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

**1.   Movant is the:**

☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

☐ Other (*specify*):

**2.   The Property at Issue (Property):**

a.   Address:

| | |
|---|---|
| *Street address:* | **237 South Wetherly Drive** |
| *Unit/suite number* | |
| *City, state, zip code:* | **Beverly Hills, CA 90211** |

b.   Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit ___"A"___ ):   **LOT 699 OF TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69, PAGE(S) 11 THROUGH 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**3.   Bankruptcy Case History:**

a.   A ☒ voluntary ☐ involuntary bankruptcy petition
under ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*) **9/1/2016** .

b.   ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (date) _____.

c.   ☐ A plan, if any, was confirmed on (*date*) _____.

**4.   Grounds for Relief from Stay:**

a.   ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

(1)   ☐ Movant's interest in the Property is not adequately protected.

(A)   ☐ Movant's interest in the collateral is not protected by an adequate equity cushion.

(B)   ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

(C)   ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

(2)   ☐ The bankruptcy case was filed in bad faith.

(A)   ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(B)   ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C)   ☐ A non-individual entity was created just prior to bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D)   ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(E)   ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(F)   ☐ Other (*see attached continuation page*).

(3)   ☐ *(Chapter 12 or 13 cases only)*

(A)   ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*June 2014*                                        Page 3                          **F 4001-1.RFS.RP.MOTION**

    (B) ☐  Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

    (4) ☐  The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

    (5) ☐  The Movant regained possession of the Property on (date) _____, which is ☐ prepetiton ☐ postpetition.

    (6) ☐  For other cause for relief from stay, see attached continuation page.

b. ☒  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐  Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐  Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐  Multiple bankruptcy cases affecting the Property.

5. ☐  **Grounds for annulment of the Stay**. Movant took postpetition actions against the Property or the Debtor

a. ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐  Others (*specify*):

6. **Evidence in Support of Motion:( *Declaration(s) MUST be signed under the penalty of perjury and attached to this motion*)**

a.  The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒  Supplemental declaration of Edmond Nassirzadeh.

c. ☒  The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit **"B"**.

d. ☒  Other: **Debtor, is a Borrower under the Promissory Note attached hereto as Exhibit "C". ARREHBORI FAMILY, LLC., a California Limited Liability company ("LLC" and/or "Guarantor") which has also filed a Chapter 7 Bankruptcy Petition (Case No.: 2:16-BK-21731-BR) is the current owner of the Property that the Note is secured against. Authenticated copies of the relevant portions of the case commencement documents of the LLC that include the statements made by the LLC under penalty of perjury concerning Movant's claims and the Property, are attached hereto as Exhibit "C"**

7. ☒  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1.  Relief from the stay is granted under: ☐ 11 U.S.C. § 362(d)(1) ☒ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2. ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐  Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

June 2014                         Page 4                         **F 4001-1.RFS.RP.MOTION**

Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☐ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.


Dated: **November 22, 2016**

**NASS LAW FIRM, INC.**
_____
Print Law Firm Name (if applicable)

**Edmond Nassirzadeh, Esq.**
_____
Printed Name of Individual Movant or attorney for Movant

*Edmond Nassirzadeh*
_____
Signature of Individual Movant or attorney for Movant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

_June 2014_                                   Page 5                    **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, *SIONIT NEMAN*, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the personal Property that is subject of this Motion ("Property") because *(specify)*:

    a. ☒ I am the Movant.

    b. ☐ I am employed by the Movant as *(state title and capacity)*:


    c. ☐ Other *(specify)*:

2.  a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other *(see attached)*:


3.  The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as **Exhibit "D"**

    b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as **Exhibit "A"**

    c. ☐ Other Personal Property *(describe type, identifying information, and location)*:

        ☐ Holder

        ☐ Beneficiary

    d. ☒ Other *(specify)*: **Movant has physical possession of the original Continuing Secured Guaranty executed by the ARREHBORI FAMILY, LLC., on November 6, 2015, wherein (1) the ARREHBORI FAMILY, LLC., Guaranteed the obligations of the Borrower under the Note referenced in section 3 a. above; and the obligations of said Guaranty are secured by the Deed of Trust as referenced in section 3 b. above. A true and correct copy of the Continuing Secured Guaranty is attached hereto as Exhibit "E"**

4.  a. The address of the Property is:

    *Street address:*        **237 South Wetherly Drive**
    *Unit/suite number*

    *City, state, zip code:*   **Beverly Hills, CA 90211**

    b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is: **LOT 699 OF TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69, PAGE(S) 11 THROUGH 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**


5.  Type of Property (*check all applicable boxes*):

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 6                          **F 4001-1.RFS.RP.MOTION**

a. ☐ Debtor's principle residence           b. ☐ Other residence

c. ☐ Multi-unit residential               d. ☐ Commercial

e. ☐ Industrial                           f. ☐ Vacant land

g. ☒ Other *(specify)*: **Single Family Residence designated as Debtor's principal place of business.**

6. Nature of the Debtor's interest in the Property

   a. ☐ Sole owner

   b. ☐ Co-owner(s) *(specify)*:

   **C.** ☐ Lienholder *(specify)*:

   d. ☒ Other *(specify)*: **Debtor has no interest in the Property other than being one of the Borrowers under the Promissory Note attached hereto as Exhibit "D" which is secured against the Property.**

   e. ☒ The Debtor ☐ did ☒ did not  list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
       The deed was recorded on _____

7. Movant holds a ☒ deed of trust ☐ judgement lien ☐ other (specify) _____ that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as **Exhibit "A"**.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as **Exhibit "D"**.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| a. Principal: | $ | $ | **$700,000.00** |
| b. Accrued interest: | $ | $ | **$105,000.00** |
| c. Late charges | $ | $ | **$3,500.00** |
| d. Costs (attorney's fees, forclosure fees, other costs): | $ | $ | **$28,685.00** |
| e. Advances (property taxes, insurance): | $ | $ | **$0.00** |
| f. Less suspense account or partial balance paid: | $[ ] | $[ ] | **$[0.00]** |
| g. TOTAL CLAIM as of *(date)*:**11/1/2016** | $ | $ | **$837,185.00** |

   h. ☒ Loan is all due and payable because it matured on **02/12/2016.**

9. Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action has occurred)*:

   a. Notice of default recorded on (date) _____ or ☒ none recorded.

   b. Notice of sale recorded on (date) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (date) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (date) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (date) _____ or ☒ none held.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

June 2014                                     Page 7                          **F 4001-1.RFS.RP.MOTION**

f.   Trustee's deed upon sale already recorded on (date) _____ or ☒ none recorded

10.  Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11.  ☒  (*chapter 7 and 11 cases only*) Status of Movant's loan:

a.   Amount of current monthly payment as of the date of this declaration: $ **8,750.00 (at the Default interest rate)** for the month of **November 2016** .

b.   Number of payments that have come due and were not made: **12** . Total amount: $**105,000.00**

c.   Future payments due by time of anticipated hearing date (if applicable):

An additional payment of $ **8,750.00** will come due on (date) **12/01/2016** , and on the **1st** day of each month thereafter. If the payment is not received within  5  days of said due date, a late charge of $**291.67** will be charged to the loan.

d.   The fair market value of the Property is **$ 2,167,964.00**   , established by:

(1)  ☐  An appraiser's declaration with appraisal is attached as Exhibit _____.

(2)  ☐  A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

(3)  ☐  A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as _____.

(4)  ☒  Other (specify): **Debtor is the Borrower on the Promissory Note (Exhibit "D") that is secured by a Deed of Trust (Exhibit "A") against the Property.  ARREHBORI FAMILY, LLC., a California Limited Liability company ("LLC" and/or "Guarantor") which has also filed a Chapter 7 Bankruptcy Petition (Case No.: 2:16-BK-21731-BR)  is the current owner of the Property and attached hereto as Exhibit "C" are relevant portions of LLC's schedules establishing value of the Property. In addition, a true and correct copy of the Grant Deed, attached hereto as Exhibit "F", evidences that the LLC is the owner of the Property.**

e.   **Calculation of equity/equity cushion in Property:**

Based upon ☐ a preliminary title report ☒ ARREHBORI FAMILY, LLC's (Case No.: 2:16-BK-21731-BR) admissions in the schedules filed in case number 2:16-BK-21731-BR, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | George Washington Lending, Inc. | $1,575,000.00 | $1,575,000.00  –  Debtor's Schedule "D" & Recorded Deed of Trust |
| 2nd deed of trust: | Sionit Neman | $700,000.00 | **$837,185.00**-  Books  and Records |
| 3rd deed of trust: | Ray Davis | $450,000.00 | $450,000.00  –  Debtor's Schedule "D" & Recorded Deed of Trust |
| 4th deed of trust: | Moosa Lari | $125,000.00 | $125,000.00  -  Debtor's Schedule "D" & Recorded Deed of Trust |
| Judgment liens: | | $ | $ |
| Taxes | | $ | $ |
| Other | | $ | $ |

**TOTAL DEBT:** $2,987,185.00 (Before Costs of Sale).

f.   Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit and consists of:

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 8                          **F 4001-1.RFS.RP.MOTION**

(1) ☐  Preliminary title report.

(2) ☒  Relevant portions of the ARREHBORI FAMILY, LLC's schedules (Case No.: 2:16-BK-21731-BR) attached hereto as **Exhibit "C".**

(3) ☒  Other (*specify*):**Recorded Copies of the Deed of Trusts attached hereto as** <u>**Exhibits "G", "H" & "I".**</u>

g. ☐  **11 U.S.C. § 362(d)(1) - Equity Cushion:**
I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

h. ☒  **11 U.S.C. § 362(d)(2)(A) - Equity:**
By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is **$ <u>-819,221.00 (before costs of sale)</u>**.

i. ☒  Estimated costs of sale: $<u>173,437.12</u> (estimate based upon <u>**8**</u> % of estimated gross sales price)

j. ☐  The fair market value of the Property is declining because:


12. ☐  (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d.  Postpetition advances or other charges due but unpaid:            $
(*For details of type and amount, see Exhibit       *)

e.   Attorney's fees and costs:            $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:        $[        ]

　　　　　　　　TOTAL POSTPETITION DELINQUENCY:        $

g.  Future payments due by time of anticipated hearing date (if applicable): _____.An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of _____ $ will be charged to the loan.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 9                    **F 4001-1.RFS.RP.MOTION**

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation toinsure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

a.  ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b.  ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c.  ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs(or chapter 13 plan, if appropriate) have not been filed.

d.  ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a.  ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b.  ☐ Multiple bankruptcy cases affecting the Property include:

1. Case name: _____

   Chapter: _____ Case number: _____

   Date filed: _____ Date Discharged: _____ Date dismissed: _____

   Relief from stay regarding the Property ☐ was ☐ was not granted.

2. Case name: _____

   Chapter: _____ Case number: _____

   Date filed: _____ Date Discharged: _____ Date dismissed: _____

   Relief from stay regarding the Property ☐ was ☐ was not granted.

3. Case name: _____

   Chapter: _____ Case number: _____

   Date filed: _____ Date Discharged: _____ Date dismissed: _____

   Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

June 2014                                          Page 10                               **F 4001-1.RFS.RP.MOTION**

a.  ☐   These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐   Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐   For other facts justifying annulment, see attached continuation page.

20.  ☒   See attached Continued Declaration Page of SIONIT NEMAN which is incorporate herein by this reference.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _November 22, 2016_ | **_SIONIT NEMAN_** | |
| Date | Printed Name | |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

_June 2014_                     Page 11                     **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**9454 Wilshire Blvd., Suite 700, Beverly Hills, CA 90212**

A true and correct copy of the foregoing document entitled (*specify*):    **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C §362 (with supporting declarations) (REAL PROPERTY)**    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 22, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Julian K Bach    Julian@Jbachlaw.com, julianbach@sbcglobal.net**
- **Joseph Caceres    jec@locs.com, generalbox@locs.com**
- **Marian Garza    ecfnotices@ascensioncapitalgroup.com**
- **Heide Kurtz (TR)    trustee@hkurtzco.com, ecf.alert+Kurtz@titlexi.com**
- **Charles Shamash    cs@locs.com, generalbox@locs.com**
- **George D Straggas    george.straggas@straggasdean.com, eric.dean@straggasdean.com;sarah.borghese@straggasdean.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  **November 22, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Barry Russell**
**United States Bankruptcy Court**
**255 E. Temple Street, Suite 1660 / Courtroom 1668**
**Los Angeles, CA 90012**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 22, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 22, 2016 | Edmond Nassirzadeh, Esq. | *Edmond Nassirzadeh* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

| | |
|---|---|
| *VIA HAND DELIVERY*<br>*Co-Debtor:*<br>**Arrehbori Family, LLC<br>237 South Wetherly Drive<br>Beverly Hills, CA 90211** | *VIA E-MAIL and NEF*<br>*Rabin Arrehbori's Counsel:*<br>**Joseph Caceres<br>Charles Shamash<br>Caceres & Shamash LLP<br>8200 Wilshire Blvd Ste 400<br>Beverly Hills, CA 90211<br>Email: cs@locs.com; jec@locs.com** |
| *VIA OVERNIGHT MAIL& NEF*<br>*U.S. Trustee*<br>**United States Trustee (LA)<br>915 Wilshire Blvd, Suite 1850<br>Los Angeles, CA 90017** | *VIA HAND DELIVERY*<br>*1st Trust Deed Beneficiary*<br>**Maximus Lending Fund IV, LLC<br>c/o George Washington Lending, Inc.<br>660 Sacramento Street, Suite 201<br>San Francisco, CA 94111** |
| *VIA HAND DELIVERY*<br>*Co-Debtor:*<br>**Raymond Arrehbori<br>237 South Wetherly Drive<br>Beverly Hills, CA 90211** | *VIA HAND DELIVERY*<br>*3rd Trust Deed Beneficiary*<br>**Ray Davis<br>244 South Robertson Boulevard<br>Beverly Hills, CA 90211** |
| *VIA E-MAIL*<br>*Chapter 7 Trustee for Co-Debtor:*<br>**Sam S Leslie<br>3435 Wilshire Blvd., Suite 990<br>Los Angeles, CA 90010<br>EMAIL: sleslie@trusteeleslie.com,<br>sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com** | *VIA HAND DELIVERY*<br>*4th Trust Deed Beneficiary*<br>**Moosa Lari<br>1734 Coldwater Canyon<br>Beverly Hills, CA 90210** |
| *VIA E-MAIL*<br>*Co-Debtor's Counsel:*<br>**Joseph Caceres<br>Charles Shamash<br>Caceres & Shamash LLP<br>8200 Wilshire Blvd Ste 400<br>Beverly Hills, CA 90211<br>Email: cs@locs.com; jec@locs.com** | *VIA HAND DELIVERY*<br>*Debtor:*<br>**M.R.R. Fabric, Inc.<br>237 South Wetherly Drive<br>Beverly Hills, CA 90211** |
| *VIA HAND DELIVERY*<br>*Co-Debtor:*<br>**Rabin Arrehbori<br>237 South Wetherly Drive<br>Beverly Hills, CA 90211** | *VIA E-MAIL & NEF*<br>*Chapter 7 Trustee for Debtor M.R.R. Fabric, Inc.*<br>**Heide Kurtz (TR)<br>2515 S. Western Avenue #11<br>San Pedro, CA 90732. Email: trustee@hkurtzco.com,<br>ecf.alert+Kurtz@titlexi.com** |
| *VIA E-MAIL*<br>*Chapter 7 Trustee for Co-Debtor Rabin Arrehbori:*<br>**Sam S Leslie<br>3435 Wilshire Blvd., Suite 990<br>Los Angeles, CA 90010<br>EMAIL:  sleslie@trusteeleslie.com,<br>sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com** | *VIA E-MAIL*<br>*Debtor M.R.R. Fabric, Inc's Counsel:*<br>**Joseph Caceres<br>Charles Shamash<br>Caceres & Shamash LLP<br>8200 Wilshire Blvd Ste 400<br>Beverly Hills, CA 90211<br>Email: cs@locs.com; jec@locs.com** |

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 13                          **F 4001-1.RFS.RP.MOTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

1.    **Background of the Loan and the Parties Involved**

The instant Motion for Relief From the Automatic Stay (the "Motion") arises out of a $1,000,000.00 commercial loan (the "Loan") by Movant, SIONIT NEMAN ("Movant" and/or "Lender") to RABIN ARREHBORI, an individual ("Rabin"), RAYMOND ARREHBORI, an individual ("Raymond") and M.R.R. FABRIC, INC., a California corporation ("MRR"), evidenced by a Promissory Note dated October 6, 2015 (the "Note"). Rabin, Raymond and MRR are collectively referred to herein as "Borrower".

RABIN and RAYMOND, own, control and manage the, ARREHBORI FAMILY, LLC., a California Limited Liability company ("LLC" and/or "Guarantor"). The Guarantor has Guaranteed the performance and obligations of the Borrower under the Note, by executing a CONTINUED SECURED GUARANTY[1] ("Guaranty"), in addition to securitizing said Guaranty by executing a Deed to Trust which has been recorded on or about February 12, 2016 as instrument number 20160161810 with the L.A. County Recorder's, against the Guarantor's Real Property located at 237 S Wetherly Drive, Beverly Hills, California 90211 (the "Property").  A true and correct copy of the Guaranty is attached hereto as Exhibit "E".  A true and correct copy of said Deed of Trust is attached

---

[1] The Recitals section of the Guaranty outlines certain events that took place between the Lender and Borrower and Guarantor prior to execution of the Guaranty.  Although the facts in the Recitals are not necessarily relevant to the issues raised in the instant Motion, it does provide some further background information with regards to the facts and circumstances of the Loan and the Parties involved.

hereto as Exhibit "A"[2].

## 2.  Priorities of Deed of Trusts against Arrehbori Family, LLC.'S Property

Although Movant has a 2ND priority lien recorded against Guarantor's Property, there are three (3) other secured loans recorded against the Property.  The 1ST Priority Deed of Trust for the benefit of George Washington Lending, Inc., was recorded against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161809, and a true and correct copy of said Deed of Trust is attached hereto as Exhibit "G". The 2nd Priority Deed of Trust for the benefit of Movant, was recorded against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161810, and a true and correct copy of said Deed of Trust is attached hereto as Exhibit "A".  The 3RD Priority Deed of Trust for the benefit of Ray Davis was recorded against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161811, and a true and correct copy of said Deed of Trust is attached hereto as Exhibit "H".  The 4th Priority Deed of Trust for the benefit of Moosa Lari, was recorded against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number

---

[2] The Court should be aware that prior to execution and recordation of this Deed of Trust, Movant's Loan/Guaranty was secured by an earlier Deed of Trust, executed on the same date as the Guaranty by the Guarantor and recorded on November 18, 2015 as instrument number 20151446115 with the L.A. County Recorder's Office (the "Previous Deed of Trust").  However, the Guarantor on or about February of 2016 refinanced the Property and paid the Lender $300,000.00 thereby reducing the principal amount of Note from $1,000,000.00 to $700,000.00 and a revised Deed of Trust (the current and controlling Deed of Trust which is attached as Exhibit "A") was executed by Guarantor and recorded with the L.A. County Recorder's Office.

20160161812, and a true and correct copy of said Deed of Trust is attached hereto as

Exhibit "I"[3].

3.    **Related Bankruptcy Filings**

The Court should be aware that concurrently with the filling of Debtor's

Bankruptcy Petition, ARREHBORI FAMILY, LLC., RABIN and RAYMOND each also

filed their own Bankruptcy Petitions as follows:

| Case Name: | Case Number: | Chapter | Date Filed | Trustee | Status |
|---|---|---|---|---|---|
| Rabin Arrehbori | 2:16-bk-21748-BR | 7 | 09/01/2016 | Sam S. Leslie | Pending |
| ARREHBORI FAMILY, LLC., | 2:16-bk-21731-BR | 7 | 09/01/2016 | Heide Kurtz | Pending |
| Raymond Arrehbori | 2:16-bk-21745-BR | 7 | 09/01/2016 | Sam S. Leslie | Pending |

Therefore, concurrently with the filing of this instant Motion, the Movant has also

filed Motions for Relief from the Automatic Stay in each of the above referenced related

bankruptcy cases.  Said Motions on the related cases, are set to be heard concurrently on

the same date and time as the instant Motion, with the Honorable Barry Russell presiding.

The Debtors in all the above related cases are represented by the same Bankruptcy

Counsel.

---

[3] Arrehbori Family, LLC's Schedule "D" indicates that Moosa Lari has a 3RD Priority Deed of Trust, where in fact, Ray Davis, has a 3RD Priority Deed of Trust and Moosa Lari has a 4TH Priority Deed of Trust as Ray Davis' Deed of Trust was recorded immediately BEFORE Moosa Lari's Deed of Trust evidenced by the Instrument Numbers of the respective Deeds of Trusts (Ray Davis 20160161811 and Moosa Lari 20160161812)

Lastly, in accordance with section three (3) of the Note,  on January 13, 2016 written demand was made for the entire outstanding principal balance of the Note, together with all accrued and unpaid interest   by Movant, thorough her Counsel, to Borrower, effectuating the Maturity Date of the Note to be February 12, 2016. A true and correct copy of the written demand along with proof of mailing is attached hereto as Exhibit "J".

Dated: November 22, 2016                          **NASS LAW FIRM**


                                                  By: *Edmond Nassirzadeh*
                                                  Edmond Nassirzadeh, Esq.
                                                  Attorney for MOVANT, SIONIT NEMAN

## CONTINUED DECLARATION OF SIONIT NEMAN

21.     The instant Motion for Relief From the Automatic Stay (the "Motion") arises out of a $1,000,000.00 commercial loan (the "Loan") by me ("Movant" and/or "Lender") to RABIN ARREHBORI, an individual ("Rabin"), RAYMOND ARREHBORI, an individual ("Raymond") and M.R.R. FABRIC, INC., a California corporation ("MRR"), evidenced by a Promissory Note dated October 6, 2015 (the "Note"). Rabin, Raymond and MRR are collectively referred to herein as "Borrower".

22.     RABIN and RAYMOND, own, control and manage, ARREHBORI FAMILY, LLC., a California Limited Liability company ("LLC" and/or "Guarantor").

23.     The Guarantor has Guaranteed the performance and obligations of the Borrower under the Note, by executing a CONTINUED SECURED GUARANTY[1] ("Guaranty"), in addition to securitizing said Guaranty by executing a Deed to Trust which has been recorded on or about February 12, 2016 as instrument number 20160161810 with the L.A. County Recorder's, against the Guarantor's Real Property located at 237 S Wetherly Drive, Beverly Hills, California 90211 (the "Property").

24.     A true and correct copy of the Guaranty is attached hereto as Exhibit "E".

25.     A true and correct copy of said Deed of Trust is attached hereto as Exhibit

---

[1] The Recitals section of the Guaranty outlines certain events that took place between the Lender and Borrower and Guarantor prior to execution of the Guaranty. Although the facts in the Recitals are not necessarily relevant to the issues raised in the instant Motion, it does provide some further background information with regards to the facts and circumstances of the Loan and the Parties involved.

"A"[2].

26.     Although I have a 2ND priority lien recorded against the Guarantor's

Property, there are three (3) other secured loans recorded against the Property.

27.     The 1ST Priority Deed of Trust for the benefit of George Washington

Lending, Inc., was recorded against Guarantor's Property on February 12, 2016 with the

L.A. County Recorder's Office as Instrument number 20160161809, and a true and correct

copy of said Deed of Trust is attached hereto as Exhibit "G".

28.     The 3RD Priority Deed of Trust for the benefit of Ray Davis was recorded

against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's

Office as Instrument number 20160161811, and a true and correct copy of said Deed of

Trust is attached hereto as Exhibit "H".

29.     The 4th Priority Deed of Trust for the benefit of Moosa Lari, was recorded

against Guarantor's Property on February 12, 2016 with the L.A. County Recorder's

Office as Instrument number 20160161812, and a true and correct copy of said Deed of

Trust is attached hereto as Exhibit "I"[3].

---

[2] The Court should be aware that prior to execution and recordation of this Deed of Trust,
Movant's Loan/Guaranty was secured by an earlier Deed of Trust, executed on the same
date as the Guaranty by the Guarantor and recorded on November 18, 2015 as instrument
number 20151446115 with the L.A. County Recorder's Office (the "Previous Deed of
Trust").  However, the Guarantor on or about February of 2016 refinanced the Property
and paid the Lender $300,000.00 thereby reducing the principal amount of Note from
$1,000,000.00 to $700,000.00 and a revised Deed of Trust (the current and controlling Deed
of Trust which is attached as Exhibit "A") was executed by Guarantor and recorded with
the L.A. County Recorder's Office.
[3] Arrehbori Family, LLC's Schedule "D" indicates that Moosa Lari has a 3RD Priority Deed
of Trust, where in fact, Ray Davis, has a 3RD Priority Deed of Trust and Moosa Lari has a
4TH Priority Deed of Trust as Ray Davis' Deed of Trust was recorded immediately

30.     The Court should be aware that concurrently with the filling of Debtor's

Bankruptcy Petition, ARREHBORI FAMILY, LLC., RABIN and RAYMOND each also

filed their own Bankruptcy Petitions as follows:

| Case Name: | Case Number: | Chapter | Date Filed | Trustee | Status |
|---|---|---|---|---|---|
| Rabin Arrehbori | 2:16-bk-21748-BR | 7 | 09/01/2016 | Sam S. Leslie | Pending |
| ARREHBORI FAMILY, LLC., | 2:16-bk-21731-BR | 7 | 09/01/2016 | Heide Kurtz | Pending |
| Raymond Arrehbori | 2:16-bk-21745-BR | 7 | 09/01/2016 | Sam S. Leslie | Pending |

31.     Therefore, concurrently with the filing of this instant Motion, though my

Counsel, I have also filed Motions for Relief from the Automatic Stay in each of the above

referenced related bankruptcy cases.

32.     Said Motions on the related cases, are set to be heard concurrently on the

same date and time as the instant Motion, with the Honorable Barry Russell presiding.

33.     The Debtors in all the above related cases are represented by the same

Bankruptcy Counsel.

34.     Lastly, in accordance with section three (3) of the Note, on January 13, 2016

written demand was made for the entire outstanding principal balance of the Note,

together with all accrued and unpaid interest by me, thorough my Counsel, to Borrower,

---

BEFORE Moosa Lari's Deed of Trust evidenced by the Instrument Numbers of the
respective Deeds of Trusts (Ray Davis 20160161811 and Moosa Lari 20160161812)

effectuating the Maturity Date of the Note to be February 12, 2016. A true and correct

copy of the written demand along with proof of mailing is attached hereto as Exhibit "J".

## <u>DECLARATION OF EDMOND NASSIRZADEH, ESQ.</u>

I, EDMOND NASSIRZADEH, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and the Federal Courts for the Central District of California. I am also the attorney for Movant, SIONIT NEMAN  and all facts stated herein are of my personal knowledge. If called as a witness, I could and would competently testify to the truthfulness of all the below statements.

2.      In accordance with section three (3) of the Note, on January 13, 2016 written demand was made for the entire outstanding principal balance of the Note, together with all accrued and unpaid interest by me, on behalf of Movant, to Borrower, effectuating the Maturity Date of the Note to be February 12, 2016. A true and correct copy of the written demand along with proof of mailing is attached hereto as Exhibit "J".

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 22nd  Day of November 2016, at Beverly Hills, California 90212.

*Edmond Nassirzadeh*
Edmond Nassirzadeh, Esq.





This page is part of your document - DO NOT DISCARD

## 20160161810




Pages:
0033

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/12/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 154.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 154.00 |



**L E A D S H E E T**



201602120250005

**00011712212**



007379040

**SEQ:
02**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T97

Recording Requested by:

NEXTITLE

When recorded mail to:

Madison Tex, Inc.
Sionit Neman
Mohteram Azim
1818 Pelham Ave #107
Los Angeles. CA 90024


02/12/2016
*20160161810*

---

**Deed of Trust**
*(Title on Document)*

29

3

# DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT
## (SECURING PROMISSORY NOTE)

This **DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT**
("Deed of Trust") is made as of *this 5th day of February 2016* by **ARREHBORI FAMILY,
LLC.,** a California Limited Liability company having an address of 237 S. Wetherly Drive,
Beverly Hills, CA 90211 ("Trustor"), to **PROVIDENT TILE COMPANY** ("Trustee"), whose
address is 9300 Wilshire Boulevard, Suite 100, Beverly Hills, California 90212, for the benefit of
**MADISON TEX, INC., a California corporation, and SIONIT NEMAN,** an individual, and
**MOHTERAM AZIM,** an individual (collectively "Beneficiary").

1.    **GRANTING CLAUSE.**

(1.1)    Trust Estate. For good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, Trustor hereby irrevocably grants, sells, transfers and assigns to
Trustee, in trust, with power of sale, for the benefit and security of Beneficiary, all of Trustor's
right, title and interest in and to all real and personal property, tangible and intangible, described
below in Sections 1.1(a) through (g) (hereinafter collectively referred to as the "Trust Estate"): **(a)
all that certain real property (the "Property") located in the City of Beverly Hills, County of
Los Angeles, State of California, commonly known as 237 S Wetherly Dr, Beverly Hills, CA
90211, bearing Assessor's Parcel Number: 4331-024-010, with the following legal description:
"Lot 699 of Tract 6380, in the City of Beverly Hills, County of Los Angeles, State of California
as per map recorded in Book 69, Page(s) 11 through 20 inclusive of Maps, in the Office of the
County Recorder of said County.";** (b) all right, title, estate and interest of Trustor in and to all
options to purchase or lease the Trust Estate or any part thereof or interest therein, and any
greater estate in the Trust Estate now owned or hereafter acquired by Trustor; (c) all right, title,
estate and interest of every kind and nature, at law or in equity, which Trustor now has or may
hereafter acquire in the Trust Estate; (d) all rights, rights-of-way, easements, licenses, profits,
privileges, tenements, hereditaments and appurtenances, now or hereafter in any way
appertaining and belonging to or used in connection with the Trust Estate and any part thereof,
or as a means of access thereto, including, but not limited to, any claim at law or in equity, and
any after acquired title and reversion in or to each and every part of all streets, roads, highways
and alleys adjacent to and adjoining the Trust Estate; (e) all buildings, structures and
improvements now or hereafter located on or at the Trust Estate, including, without limitation,
all of the property owned by Trustor and any other property now or hereafter affixed or attached
to such buildings, structures or improvements (collectively, the "Improvements"); (f) all of the
property owned by Trustor which is attached to the Property (to the extent such property
constitutes personal property under the California Commercial Code), and all replacements,
additions, substitutions and proceeds thereof, now or hereafter owned by Trustor or in which
Trustor now or hereafter has any rights and which is now or hereafter located on or at, or affixed
or attached to, or used in connection with the ownership, operation, management, maintenance
or repair of the Trust Estate (collectively, the "Personal Property"); and (g) all other claims and

demands which Trustor now has or may hereafter acquire in the Trust Estate, including, without limitation, all claims or demands to all proceeds of all insurance now or hereafter in effect with respect to the Trust Estate, the Improvements or the Personal Property, all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the Trust Estate, or any part thereof, or any damage or injury thereto, all awards resulting from a change of grade of streets, and all awards for severance damages.

(1.2)    Assignment of Leases, Rents and Profits. Trustor hereby assigns and transfers to Beneficiary, absolutely and unconditionally, all of Trustor's right, title and interest in and to the following property: (a) any and all leases and occupancy agreements now existing or hereafter entered into affecting all or any part of the Trust Estate, together with all benefits and advantages to be derived therefrom, and all rights and benefits now or hereafter accruing to Trustor under any and all guarantees of the obligations of any tenant thereunder, all as the same may be amended, extended, renewed or modified from time to time (collectively, the "Leases"); provided, however, that such grant is subject to the provisions of Section 3, below; and (b) all rents, royalties, profits, revenues, incomes and other benefits of and from the Leases and the Trust Estate whether now due, past due or to become due, including without limitation, all prepaid rents, reserve accounts, security and other deposits (the "Rents and Profits"); provided, however, that such grant is subject to the provisions of Section 3, below.

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary may in its sole discretion determine:

(1)    Payment of the indebtedness evidenced by the Continued Secured Guranty of even date herewith by Trustor to Beneficiary in the original principal sum of ONE MILLION DOLLARS ($1,000,000.00), which has now been reduced to **SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00), concurrently with the execution of this Deed of Trust,** and any renewals, extensions or modifications thereof (the "Note"); (2) Payment of all indebtedness arising under this Deed of Trust, including sums advanced by Beneficiary or Trustee, with interest thereon at the same rate set forth in the Note which is applicable to the principal (the "Advance Interest Rate"); (3) Payment of all other sums, with interest thereon, which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, when evidenced by another promissory note (or modification to the Note) reciting that it is secured by this Deed of Trust; and (4) Performance and discharge of all obligations, covenants and agreements of Trustor in this Deed of Trust, the Note, and any other instrument securing the Note (including, without limitation, any environmental indemnity executed to secure the Note), and all modifications, amendments, replacements, extensions, renewals and substitutions of any and all such documents. The Note, this Deed of Trust, and all other instruments given to evidence or further secure the payment and performance of any indebtedness or obligation secured hereby (including, without limitation, any environmental indemnity made by Trustor in favor of Beneficiary) are hereinafter collectively referred to as the "Loan Documents." All that which is

described in the foregoing paragraphs (1) through (3) and the monetary components of the obligations described in paragraph (4) is collectively referred to herein as the "Indebtedness."

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

**2.     COVENANTS AND AGREEMENTS OF TRUSTOR.**

2.1    Trustor's Covenants.

(a)    Trustor shall pay when due, in the manner specified herein or in any other Loan Document, all components of the Indebtedness.

(b)    Trustor covenants that it has good and marketable title to the fee simple interest in the Property, and that the Property; that is, Trustor has full power and authority to convey the Trust Estate as provided in this Deed of Trust and the other Loan Documents and that neither the entry nor the performance of this Deed of Trust and that neither the entry nor performance of this Deed of Trust and the other Loan Documents has resulted or will result in any violation of, or be in conflict with, or result in the creation of any deed of trust, lien, encumbrance or charge (other than those created by the execution and delivery of, or permitted by, this Deed of Trust or any other Loan Document) upon any of the Trustor's properties or assets, or constitute a default under any deed of trust, indenture, contract, agreement, instrument, franchise, permit, judgment, decree, order, statute, rule or regulation applicable to Trustor.

(c)    Trustor shall, at its sole cost: keep and maintain the Trust Estate, including all landscaping, sidewalks, curbs, roads, parking areas and abutting grounds, in good condition and repair and shall make all reasonable or necessary repairs to the Trust Estate, whether interior or exterior, structural or nonstructural, ordinary or extraordinary, or foreseen or unforeseen; not remove, demolish or substantially alter any of the Improvements without Beneficiary's prior written consent (except to the extent required by applicable law and then only upon giving Beneficiary prior written notice); complete promptly and in a good and workmanlike manner any building or other improvement which is constructed on the Trust Estate, and promptly restore and repair, in like manner, to the equivalent of its original condition, any building or other improvement which is damaged or destroyed thereon; obtain Beneficiary's prior written consent to any contracts with any general contractors, architects, engineers or other similar consultants for the Trust Estate; and not permit or commit any waste or deterioration of the Trust Estate.

(d)    Trustor shall comply with all federal, state and local restrictions, covenants, conditions, laws, ordinances, building codes, regulations, rules, requirements, directions, orders and notices of every kind relating to or affecting the Trust Estate or the business being conducted thereon whether by Trustor or by any occupant thereof.

(e)    Trustor shall pay when due all utility assessments and charges for gas, electricity, fuel, water, steam, sewer, drainage, refuse disposal, telephone and other services furnished to the

6

Trust Estate and all other assessments and charges of a similar nature, whether public or private, affecting the Trust Estate.

(f)     Trustor shall appear in, contest and defend any action or proceeding purporting to affect the Trust Estate, the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee under this Deed of Trust, and Trustor shall pay all costs (including, without limitation, attorneys' fees and costs) incurred by Beneficiary or Trustee in connection with such action or proceeding.

(g)     Unless required by applicable law, Trustor shall not allow changes in the use of the Trust Estate from the use being made as of the date of this Deed of Trust, and Trustor shall not initiate or acquiesce in any change in the zoning classification of the Property without Beneficiary's prior written consent.

(h)     Trustor shall faithfully perform each and every monetary and nonmonetary covenant to be performed by Trustor under any lien or encumbrance upon or affecting the Trust Estate, including, without limitation, mortgages, deeds of trust, leases, declaration of covenants, easements, conditions and restrictions and other agreements which affect the Trust Estate, and a breach of or a default under any such lien or encumbrance shall constitute an Event of Default under this Deed of Trust.

(i)     Trustor shall pay all filing, registration, recording, documentary stamp tax and other fees, taxes, assessments and charges in connection with the preparation, execution, delivery and enforcement of the Note, this Deed of Trust, and other Loan Documents and subsequent Loan Documents.

2.2 Hazardous Substances.

(a)     As used in this Section 2.2, the following terms shall have the meanings set forth below: (i) "Environmental Laws" means and includes any law, ordinance, regulation or requirement now or hereinafter in effect relating to land use, air, soil, surface water, groundwater (including the protection, cleanup, removal, remediation or damage thereof), human health and safety or any other environmental matter, including, without limitation, the following laws as the same may be amended from time to time: Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. Sec. 9601, et seq.; Federal Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901, et seq.; Clean Water Act, 33 U.S.C. Sec. 1251, et seq.; Toxic Substances Control Act, 15 U.S.C. Sec. 2601, et seq.; Refuse Act, 33 U.S.C. Sec. 407; Occupational Safety and Health Act, 29 U.S.C. Sec. 651, et seq.; Clean Air Act, 42 U.S.C. Sec. 7401, et seq.; Hazardous Waste Control Act, California Health and Safety Code sections 25100, et seq.; Hazardous Substance Account Act, California Health and Safety Code sections 25300, et seq.; Hazardous Substance Cleanup Bond Act of 1984, California Health and Safety Code sections 25385, et seq., and related statutes including sections 25356.1-25356.4 of the California Health and Safety Code; Porter-Cologne Water Quality Control Act, California Water Code

*1*

sections 13000, et seq.; Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), California Health and Safety Code sections 25249.5, et seq.; California Health and Safety Code sections 25220, et seq., 25280, et seq., 25359.7; California Civil Code section 3483; and California Code of Civil Procedure section 736. (ii) "Hazardous Substances" shall mean any hazardous or toxic substances, materials or wastes, pollutants or contaminants defined, listed or regulated by the Environmental Laws or any other federal, state or local law, regulation, order or common law decision.

(b)    Trustor hereby represents and warrants to Beneficiary that neither Trustor, nor any agent, affiliate, tenant, partner or joint venturer of Trustor has actual knowledge or notice of the actual, alleged or threatened presence or release of Hazardous Substances in, on, around or potentially affecting any part of the Trust Estate or the soil, groundwater or soil vapor on or under the Trust Estate, except as has been expressly disclosed to Beneficiary in writing. Trustor has used its best efforts to investigate the presence of Hazardous Substances in, on, around or potentially affecting any part of the Trust Estate, and any potential environmental liability with respect to the Trust Estate for noncompliance with the Environmental Laws. Trustor shall perform regular environmental audits to determine if any Hazardous Substances are in, on, around or potentially affecting any part of the Trust Estate and investigate any potential environmental liability with respect to the Trust Estate for noncompliance with the Environmental Laws. Trustor has complied, and shall comply and cause all occupants of the Trust Estate to comply, with all Environmental Laws, including those requiring disclosures to prospective and actual buyers of all or any portion of the Trust Estate. Trustor also has complied and shall comply with the recommendations of any qualified environmental engineer or other expert which apply or pertain to the Trust Estate. Trustor shall promptly notify Beneficiary if it knows, suspects or believes there may be any Hazardous Substance in, around or potentially affecting the Trust Estate or the soil, groundwater or soil vapor on or under the Trust Estate, or that Trustor or the Trust Estate may be subject to any threatened or pending investigation by any governmental agency under any Environmental Laws.

(c)    Beneficiary shall have the right at any reasonable time to enter and visit the Trust Estate for the purposes of observing the Trust Estate, taking and removing soil or groundwater samples, and conducting tests on any part of the Trust Estate. Beneficiary has no duty, however, to visit or observe the Trust Estate or to conduct tests, and no site visit, observation or testing by Beneficiary shall impose any liability on Beneficiary. In no event shall any site visit, observation or testing by Beneficiary be a representation that Hazardous Substances are or are not present in, on, under or around the Trust Estate, or that there has been or shall be compliance with any Environmental Laws. Neither Trustor nor any other party is entitled to rely on any site visit, observation or testing by Beneficiary. Beneficiary owes no duty of care to protect Trustor or any other party against, or to inform Trustor or any other party of, any Hazardous Substances or any other adverse condition affecting the Trust Estate. Beneficiary shall not be obligated to disclose to Trustor or any other party any report or findings made as a result of, or in connection with, any site visit, observation or testing by Beneficiary. Beneficiary shall make reasonable efforts to

Page 5 of 30

avoid interfering with Trustor's use of the Trust Estate in exercising any rights provided in this Section 2.2(c).

(d)    In the event any or all of the representations contained in subsection (b), above, are or become untrue or Trustor defaults in or fails to perform or observe any of its obligations under this Section 2.2, Beneficiary, at its option, and without prior notice to or the right to cure by Trustor, may: (i) declare the Indebtedness immediately due and payable; (ii) require Trustor to promptly perform, at Trustor's sole cost and in accordance with applicable law, all Remedial Work (defined below) desired by Beneficiary; and (iii) cause a person other than Trustor to perform the Remedial Work, at Trustor's sole cost.

(e)    All monitoring and investigation of site conditions, cleanup, containment, removal, restoration or other remedial work for the Trust Estate which is required by the Environmental Laws or reasonably requested by Beneficiary pursuant to this Section 2.2 is hereinafter referred to as the "Remedial Work." All Remedial Work shall be conducted: (i) in a diligent and timely manner by licensed contractors acting under the supervision of a consulting environmental engineer; (ii) pursuant to a detailed written plan approved by any public or private agencies or persons with the legal or contractual right to such approval; (iii) with such insurance coverage pertaining to liabilities arising out of the Remedial Work as is customarily maintained with respect to such activities; and (iv) only following receipt of any required permits, licenses, or approvals. The selection of the Remedial Work contractors and consulting environmental engineer, the contracts entered into with such parties, all disclosures to or agreements with any public or private agencies or parties relating to the Remedial Work and the written plan for the Remedial Work shall be subject to Beneficiary's prior written approval. In addition, Trustor shall submit to Beneficiary, promptly upon receipt or preparation, copies of any and all reports, studies, analyses, correspondence, governmental comments or approvals prepared or received by Trustor in connection with any Remedial Work. All costs and expenses of such Remedial Work shall be paid by Trustor, including, without limitation, the cost of the Remedial Work contractors and the consulting and environmental engineers, taxes and penalties assessed in connection with the Remedial Work and Beneficiary's reasonable fees and costs incurred in connection with monitoring and reviewing the Remedial Work. In the event Trustor shall fail to commence or cause to be commenced in a timely manner or fail diligently to prosecute the completion of such Remedial Work, Beneficiary may, but shall not be required to, cause such Remedial Work to be performed, and all costs incurred in connection therewith, together with interest at the Advance Interest Rate, shall be reimbursed by Trustor upon demand and shall be secured by this Deed of Trust.

2.3    Required Insurance.

(a)    Trustor shall at all times provide and keep in force the following policies of insurance: (i) insurance covering the Improvements (exclusive of the excavations, grading, filling and foundations of buildings below the lowest basement floor) and Personal Property against all

9

risks of physical loss (including, without limitation, fire, lightning, windstorm, hail, explosion, vandalism and civil unrest) in an amount not less than the full replacement cost of the Improvements and Personal Property (without deduction for depreciation); (ii) comprehensive public liability insurance covering Trustor against any and all liability in connection with the Trust Estate, the adjoining streets and sidewalks (including, but not limited to, construction operations coverage if any construction of new Improvements occurs following the execution of this Deed of Trust); (iii) if requested by Beneficiary, business interruption insurance and loss of "rental value" insurance in such amounts as are reasonably required by Beneficiary; (iv) during the course of any construction or repair of the Improvements, builder's risk completed value insurance against all risks of physical loss, including collapse and transit coverage, covering the total value of the work performed, plus equipment, supplies and materials; (v) boiler and machinery insurance covering pressure vessels, air tanks, boilers, machinery, pressure piping, heating, ventilation and air conditioning equipment, and elevator and escalator equipment, provided the Improvements contain equipment of such nature, and insurance against loss of occupancy or use arising from any breakdown of any such items, in such amounts as are reasonably required by Beneficiary; (vi) upon Beneficiary's written request, insurance against loss or damage by earthquake; (vii) flood insurance if all or any part of the Trust Estate is now or hereafter located in a special flood hazard area, as defined in the Flood Disaster Protection Act of 1973, as now in force or as hereafter amended, or any successor thereto or regulations thereunder, in compliance with all requirements of the National Flood Insurance Programs as applicable to the Trust Estate, in an amount approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary; (viii) upon Beneficiary's written request, insurance against environmental impairment liability, as well as an environmental cleanup bond, valued at the principal sum of the Indebtedness; (ix) workers' compensation coverage and employee automobile coverage in an amount and form required by California law; and (x) Such other policies of insurance as may from time to time be reasonably required by Beneficiary. All policies of insurance required by this Deed of Trust shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act, omission or negligence of Trustor which might otherwise result in forfeiture of such insurance, and an endorsement that the insurer waives all rights of setoff, counterclaims or deductions against Trustor.

(b)     All policies of insurance shall be issued by companies and in amounts reasonably satisfactory to Beneficiary. All liability policies (including those listed in clauses (a)(ii), (vii) and (ix), above) shall list Beneficiary as an additional insured, and all property policies (including those listed in clauses (a)(i), (iii), (iv), (v), (vi) and (vii), above) shall list Beneficiary as mortgagee and shall have attached thereto a lender's loss payable endorsement for the benefit of Beneficiary in form satisfactory to Beneficiary. Trustor shall furnish Beneficiary with an original of all policies of insurance required by this Deed of Trust. If Beneficiary consents to Trustor providing any of the required insurance through blanket policies carried by Trustor and covering more than one property, Trustor shall furnish Beneficiary with a certified copy of each such policy and a

certificate of insurance for each such policy setting forth the coverage as to the Trust Estate, the limits of liability as to the Trust Estate, the name of the carrier, the policy number and the expiration date. At least thirty (30) days prior to the expiration of each insurance policy, Trustor shall furnish Beneficiary with evidence satisfactory to Beneficiary of the payment of the premium and arrangements for the reissuance of the policy continuing insurance in force as required by this Deed of Trust. All such policies shall contain a provision that such policies shall not be canceled or materially amended (which includes any reduction in the scope or limits of coverage), without at least thirty (30) days prior written notice to Beneficiary. If Trustor fails to provide, keep in force or deliver to Beneficiary the policies of insurance required by this Deed of Trust, Beneficiary may procure such insurance, and Trustor shall pay all premiums thereon promptly upon demand by Beneficiary, and until such payment is made by Trustor the amount of all such premiums, together with interest thereon at the Advance Interest Rate, shall be secured by this Deed of Trust.

(c)    In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Trust Estate in extinguishment, in whole or in part, of the Indebtedness, all right, title and interest of Trustor in and to all policies of insurance required by this Deed of Trust shall inure to the benefit of and pass to the successor in interest to Trustor, or the purchaser or grantee of the Trust Estate. In the event that prior to any such transfer of title, any claim under any casualty insurance policy has not been paid and distributed in accordance with the terms of this Deed of Trust, but such claim is paid after any such transfer of title, then, to the extent the Indebtedness was not fully discharged in conjunction with such transfer of title, the subject insurance proceeds shall belong to and be paid to Beneficiary. Trustor hereby assigns, transfers and sets over to Beneficiary all of its respective right, title, and interest in and to any such insurance proceeds. The balance of any such insurance proceeds, if any, shall belong to Trustor. Notwithstanding the above, Trustor shall retain an interest in the insurance policies required by this Deed of Trust during any redemption period.

2.4    Insurance Proceeds.

(a)    Following the occurrence of any casualty to the Trust Estate, Trustor shall give prompt written notice thereof to Beneficiary (but in no event shall Trustor give any such notice later than three (3) days following the date of the occurrence of the casualty).

(b)    In the event of any damage to or destruction of the Trust Estate, all proceeds of insurance shall be payable to Beneficiary, and Trustor hereby authorizes and directs any and all insurance companies to make payment of such proceeds directly to Beneficiary. Beneficiary is hereby authorized and empowered by Trustor to settle, adjust and compromise all claims for loss, damage or destruction under any policy of insurance.

(c)    In the event of any such damage or destruction, Beneficiary shall have the right, in its sole discretion, to apply all or any part of the insurance proceeds to (i) the Indebtedness (in

such order as Beneficiary may determine), (ii) the restoration and/or replacement of the Trust Estate, or (iii) Trustor.

(d)    If the insurance proceeds are applied by Beneficiary to the restoration and/or replacement of the Trust Estate, Trustor shall restore, repair and replace the Trust Estate as nearly as possible to its value, condition and character immediately prior to such damage or destruction. Beneficiary shall have the right, at Beneficiary's option, to establish disbursement procedures and to condition disbursement of the insurance proceeds on Beneficiary's approval (in its sole discretion) of architects' and/or engineers' plans and specifications, contractors' cost estimates, architects' certificates, waivers of liens, sworn statements of contractors, mechanics and materialmen, and such other evidence of costs, completion of construction, application of payments, and satisfaction of liens as Beneficiary may require.

(e)    Except to the extent that insurance proceeds are received by Beneficiary and applied to the Indebtedness, nothing herein shall excuse Trustor from repairing or maintaining the Trust Estate as provided in Section 2.1, above, or restoring and/or replacing all damage to or destruction of the Trust Estate, regardless of whether insurance proceeds are available or sufficient in amount, and the application or release by Beneficiary of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust.

2.5    Indemnification; Subrogation; Waiver of Offset.

(a)    If Beneficiary is made a party to any action, cause of action, litigation or other proceeding ("action") concerning this Deed of Trust or the Trust Estate or any part thereof or interest therein, or the use or occupancy thereof, then Trustor shall indemnify, protect, defend and hold harmless Beneficiary from and against any and all claims, demands, liability, losses, damages, costs and expenses (including attorneys' fees and costs) by reason of such action, whether or not any such action is prosecuted to judgment. If Beneficiary commences an action against Trustor to enforce this Deed of Trust or because of the breach by Trustor of this Deed of Trust, or for the recovery of the Indebtedness or any part thereof, Trustor shall pay Beneficiary's attorneys' fees and costs, and the right to such attorneys' fees and costs, shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment. If Trustor breaches any covenant or agreement in this Deed of Trust, Beneficiary may employ attorneys to protect its rights hereunder and, in the event of such employment following any breach by Trustor, Trustor shall pay Beneficiary's attorneys' fees and costs, whether or not an action is actually commenced against Trustor by reason of the breach.

(b)    Trustor waives any and all right to claim or recover against Beneficiary, its directors, officers, employees, agents and representatives, for loss of or damage to Trustor, the Trust Estate, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by this Deed of Trust.

(c)     All sums payable by Trustor pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction or any condemnation or similar taking of the Trust Estate or any part thereof; (ii) any restriction or prevention of or interference with any use of the Trust Estate or any part thereof; (iii) any title defect or encumbrance or any eviction from the Trust Estate or any part thereof by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Trustor or Beneficiary, or any action taken with respect to this Deed of Trust by any trustee or receiver of Trustor or Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Beneficiary; (vi) any default or failure on the part of Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Trustor; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Trustor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured by this Deed of Trust and payable by Trustor.

2.6     Taxes, Assessments and Impositions.

(a)     Trustor agrees to pay prior to the date when due all general, special and supplemental real property taxes and assessments, and all other taxes, assessments, fees, levies and charges of every kind and nature whatsoever, including, without limitation, all nongovernmental levies and assessments such as maintenance charges, owner association dues and charges, and assessments, fees, levies and charges resulting from covenants, conditions and restrictions affecting the Trust Estate, which are assessed against or imposed upon the Trust Estate, or become due and payable with respect to the Trust Estate, or which create or are secured by a lien upon the Trust Estate (all of such taxes, assessments, fees, levies and charges are hereinafter collectively referred to as "Impositions"). In the event Trustor fails to pay any Imposition as required by this Deed of Trust, Beneficiary may pay such Imposition, and Trustor shall pay the amount thereof to Beneficiary promptly upon demand by Beneficiary, and until such payment is made by Trustor the amount of such Imposition, together with interest thereon at the Advance Interest Rate, shall be secured by this Deed of Trust. Subject to the provisions of Section 2.6(c), below, Trustor shall provide to Beneficiary, within thirty (30) days following the date an Imposition is due, receipts evidencing the payment of such Imposition. Subject to the provisions of Section 2.6(c), below, Trustor shall provide to Beneficiary, within thirty (30) days following the date an Imposition is due, receipts evidencing the payment of such Imposition. If requested by Beneficiary, Trustor shall (at Trustor's cost) cause to be provided to Beneficiary a tax reporting service covering the Trust Estate of the type and duration and with a company satisfactory to Beneficiary.

*13*

(b)    If at any time there is assessed or imposed any tax, assessment, levy or fee on Beneficiary and measured by or based in whole or in part on this Deed of Trust, the amount of the Indebtedness or upon the Trust Estate, then all such taxes, assessments, levies and fees shall be deemed to be included within the term "Impositions" as defined in subparagraph (a) of this Section 2.6 and Trustor shall pay and discharge the same as provided with respect to the payment of Impositions or, if it is unlawful for Trustor to pay any such tax, assessment, levy or fee, at the option of Beneficiary, the Indebtedness shall immediately become due and payable. If requested by Beneficiary, Trustor shall (at Trustor's cost) cause to be provided to Beneficiary a tax reporting service covering the Trust Estate of the type and duration and with a company satisfactory to Beneficiary.

(c)    Trustor shall have the right before any delinquency occurs to contest in good faith the amount or validity of any Imposition by appropriate legal proceedings; provided, any such contest by Trustor shall not in any way release, modify or extend Trustee's obligation to pay an Imposition at the time and in the manner provided in this Section 2.9 unless Trustor gives prior written notice to Beneficiary of Trustor's intent to contest the Imposition, and, at Beneficiary's sole option, (i) Trustor demonstrates to Beneficiary's satisfaction that the contest proceedings shall conclusively operate to prevent the sale of the Trust Estate or to stay payment of the Imposition prior to final determination of the proceedings, (ii) Trustor furnishes a good and sufficient bond or other security for payment as requested by and satisfactory to Beneficiary, or (iii) Trustor furnishes a good and sufficient bond or undertaking as may be required or permitted by law to accomplish a stay of payment of the Imposition. At the conclusion of such proceedings, Trustor shall pay the Imposition as determined in such proceedings.

2.7    Impound Payments. At the request of Beneficiary, Trustor shall deposit with Beneficiary, in monthly installments in advance on the first day of each month, an amount sufficient, as estimated by Beneficiary in its sole discretion, to pay

(a)    all Impositions next due on the Trust Estate, and

(b)    all insurance premiums next due on all policies of insurance required by this Deed of Trust. In such event, Trustor agrees, upon Beneficiary's request, to cause all bills, statements and other documents relating to Impositions and the insurance premiums to be mailed directly to Beneficiary. Upon receipt of such bills, statements and other documents, and provided Trustor has deposited sufficient funds with Beneficiary, Beneficiary shall pay the amounts due thereunder from the funds deposited with Beneficiary. If at any time and for any reason the funds deposited with Beneficiary are or will be insufficient to pay the Impositions and insurance premiums as may then or subsequently be due, Beneficiary may notify Trustor and Trustor shall immediately deposit an amount equal to the deficiency with Beneficiary. If at any time the funds deposited with Beneficiary exceed the amount deemed necessary by Beneficiary to pay such Impositions and insurance premiums as may then or subsequently be due, such excess shall be credited to Trustor on the next monthly installment or installments of such Impositions and

insurance premiums (unless Trustor is in default of this Deed of Trust or another Loan Document, in which event any such excess shall be applied to reduce the Indebtedness in such order as Beneficiary shall elect). Upon payment in full of the Indebtedness, Beneficiary shall promptly refund to Trustor any funds held by Beneficiary for the payment of Impositions and insurance premiums. Trustor grants to Beneficiary a security interest in all funds deposited with Beneficiary for the payment of Impositions and insurance premiums, and such funds are pledged by Trustor to Beneficiary for the purpose of securing the Indebtedness. Nothing herein shall cause Beneficiary to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary. Beneficiary may commingle such deposits with its own funds and Trustor shall not be entitled to any interest on the funds deposited with Beneficiary.

2.8      Eminent Domain.

(a)      If the Trust Estate, or any part thereof or interest therein, is taken or damaged by reason of any public improvement, condemnation proceeding, exercise of the power of eminent domain, or conveyance in lieu of condemnation (hereinafter collectively referred to as a "taking"), or if Trustor receives any notice or other information regarding any such taking, Trustor shall give prompt written notice thereof to Beneficiary.

(b)      Beneficiary shall have the right to receive all compensation, awards, damages, proceeds and other payments for any such taking, and shall be entitled to commence, appear in and prosecute in its own name any action or proceeding at Trustor's sole cost. Beneficiary shall also have the right to make any compromise or settlement in connection with any such taking at Trustor's sole cost. Trustor hereby absolutely and unconditionally assigns to Beneficiary all such compensation, awards, damages, proceeds and other payments awarded to Trustor (the "Proceeds") and Trustor agrees to execute all further assignments of the Proceeds which are requested by Beneficiary.

(c)      In the event the Trust Estate, or any part thereof or interest therein, is taken, Beneficiary shall have the right, in its sole discretion, to apply all or any part of the Proceeds, after deducting therefrom all costs incurred by Beneficiary in connection with the Proceeds (including, without limitation, attorneys' fees and costs), to (i) the Indebtedness (in such order as Beneficiary may determine), (ii) the restoration and replacement of the Trust Estate, or (iii) Trustor.

(d)      If the Proceeds are applied by Beneficiary to the restoration and replacement of the Trust Estate, Trustor shall restore, repair and replace the Trust Estate as nearly as possible to its value, condition and character immediately prior to the taking. Beneficiary shall have the right, at Beneficiary's option, to establish disbursement procedures and to condition disbursement of the Proceeds on Beneficiary's approval of architects' and/or engineers' plans and specifications contractors' cost estimates, architects' certificates, waivers of liens, sworn statements of contractors, mechanics and materialmen, and such other evidence of costs, completion of construction, application of payments, and satisfaction of liens as Beneficiary may require.

(e)    Except to the extent that the Proceeds are received by Beneficiary and applied to the Indebtedness, nothing herein shall excuse Trustor from repairing or maintaining the Trust Estate as provided in Section 2.1 or restoring all damage to the Trust Estate, regardless of whether Proceeds are available or sufficient in amount, and the application or release by Beneficiary of any Proceeds shall not cure or waive any default or notice of default under this Deed of Trust.

2.9    Financial Statements and Records. Trustor shall deliver to Beneficiary:

(a)    copies of operating statements, balance sheets, statements of changes in financial positions, tax returns and such other financial statements and reports in such form and content as Beneficiary may require of Trustor, the Trust Estate and any guarantor or the Indebtedness on or before ninety (90) days following the end of the fiscal year of Trustor;

(b)    copies of any interim operating statements, balance sheets, statements of changes in financial positions, tax returns and such other financial statements and reports in such form and content as Beneficiary may reasonably require of Trustor, the Trust Estate and any guarantor of the Indebtedness on or before the fifteenth (15th) business day following Beneficiary's written demand; and

(c)    any other report Beneficiary may reasonably require from time to time regarding Trustor, the Trust Estate and any guarantor of the Indebtedness. The foregoing operating statements, balance sheets and statements of changes in financial positions, tax returns and other financial statements and reports shall be prepared in accordance with generally accepted accounting principles and shall be certified as to accuracy by an independent certified public accountant or representative of Trustor acceptable to Beneficiary. Trustor authorizes Beneficiary, at any time, prior to payment in full of the Indebtedness, or within one year following foreclosure of the Trust Estate, to obtain any information that Beneficiary may reasonably require, including credit information from other sources (such as credit reporting agencies), concerning Trustor, the Trust Estate and any guarantor of the Indebtedness. Trustor shall also be required to furnish to Beneficiary at any time upon the request of Beneficiary, a rent roll for the Trust Estate, certified as to accuracy by Trustor, including for each unit of rentable space the identity of the tenant or a statement that such space is vacant, the net rentable area, the lease expiration date, the rent payable and the rent and any security or other deposit actually paid. Trustor shall keep and maintain at all times at the Trust Estate, or such other place as Beneficiary may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Trust Estate and copies of all written contracts, leases and other documents which affect the Trust Estate. Such books, records, contracts, leases and other documents shall be subject to examination, inspection and copying at any reasonable time by Beneficiary.

2.10    Sale or Encumbrance of Trust Estate. If Trustor sells, conveys, assigns or otherwise transfers (hereinafter collectively referred to as a "Sale") or further pledges, mortgages or otherwise encumbers (hereinafter collectively referred to and an "Encumbrance") all or any part of the Trust Estate or any interest in the Trust Estate, whether any such Sale or Encumbrance

16

occurs directly or indirectly, voluntarily or involuntarily, or by operation of law, without the prior written consent of Beneficiary (which may be withheld in Beneficiary's sole and absolute discretion) the entire Indebtedness shall become immediately due and payable at the election of Beneficiary, without notice to Trustor. For purposes of this Deed of Trust, a transfer of the interests in Trustor, whether direct or indirect or in one or more transactions, shall be deemed a transfer of Trustor's interest in the Trust Estate (and, therefore, a "Sale" for purposes of this Section 2.10).

2.11    Inspections. Beneficiary, its agents and representatives are authorized to enter the Trust Estate at any reasonable time, and from time to time, for the purpose of inspecting the Trust Estate and performing any of the acts Beneficiary is authorized to perform under this Deed of Trust and any other Loan Document.

2.12    Preservation of Lien Priority by Trustor.

(a)    This Deed of Trust is and shall continue to be a valid lien upon the Trust Estate subject only to the liens, charges and encumbrances approved by Beneficiary in writing, and Trustor shall not, directly or indirectly, create or permit to be created against the Trust Estate, or any portion thereof, any lien, charge or encumbrance prior to, subordinate to, or on a parity with the lien of this Deed of Trust without Beneficiary's prior written consent; Trustor acknowledges and agrees that Beneficiary may withhold consent to any subordinate financing secured by the Trust Estate which Beneficiary, in its business judgment, deems to be detrimental to Beneficiary.

(b)    All property of every kind acquired by Trustor after the date hereof which, by the terms hereof, is required or intended to be subjected to the lien of this Deed of Trust shall, immediately upon the acquisition thereof and without any further conveyance, assignment or transfer, become subject to the lien of this Deed of Trust.

(c)    In order to more effectively evidence or confirm the lien of this Deed of Trust on the Trust Estate (including all property acquired after the date hereof which is subject to the lien of this Deed of Trust), Trustor shall, at its sole cost, do, execute, acknowledge and deliver all such further acts, conveyances, deeds of trust, assignments, notices of assignments and further instruments required by Beneficiary, including, without limitation, security agreements, financing statements, continuation statements and other instruments requested by Beneficiary.

(d)    If any action or proceeding is instituted (i) which could materially affect Trustor's ability to perform its obligations under any of the Loan Documents, (ii) to evict Trustor, (iii) to recover possession of the Trust Estate, or (iv) for any other purpose which affects the Trust Estate, the lien of this Deed of Trust or Beneficiary's rights hereunder, Trustor shall, immediately upon service thereof on or by Trustor, deliver to Beneficiary a true copy of each petition, summons, complaint, notice of motion, order to show cause and all other processes, pleadings and papers, however designated, served in such action or proceeding.

2.13    Liens. Trustor shall pay, at Trustor's sole cost, as and when payment is due, all lawful claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in, or permit the creation of, a lien on the Trust Estate, the Leases, Rents or Profits, and Trustor shall do or cause to be done everything necessary so that the lien and security interest hereof shall be fully preserved; provided, however, that if applicable law empowers Trustor to discharge of record any mechanic's, laborer's, materialman's or other lien against the Trust Estate by posting a bond or other security, Trustor shall not have to make such payment if Trustor posts such bond or other security within the time prescribed by law so as not to place the Trust Estate in jeopardy of a lien or forfeiture. Trustor shall have the right to contest in good faith the amount or validity of any such lawful claims and demands of mechanics, materialmen, laborers and others by appropriate legal proceeding if Trustor gives Beneficiary prior written notice and procures a bond or anything else required by and satisfactory to Beneficiary (in Beneficiary's sole discretion). If at any time payment of any obligation imposed upon Trustor herein shall become necessary to prevent the delivery of a tax deed conveying the Trust Estate or any portion thereof because of non-payment, or if the Beneficiary or Trustee shall incur any civil or criminal liability as a result of such non-payment, then Beneficiary may pay the same in sufficient time to prevent the delivery of such tax deed or the incurrence of civil or criminal liability, and any expense incurred by Beneficiary in connection therewith shall be payable by Trustor upon demand, together with interest at the Advance Interest Rate, and shall be secured by this Deed of Trust.

2.14    Beneficiary's Powers. Without affecting the liability of any other person liable for the Indebtedness, and without affecting the lien of this Deed of Trust upon any portion of the Trust Estate not then released as security for the Note or any other Loan Document, Beneficiary may, from time to time and without notice:

    (a)    release any person so liable;

    (b)    extend the maturity or alter any of the terms of the Indebtedness;

    (c)    grant other indulgencies;

    (d)    release or reconvey any parcel, portion or all of the Trust Estate;

    (e)    take or release any other security for the Indebtedness;

    (f)    make any arrangements with debtors in relation to the Indebtedness; and

    (g)    advance additional funds to protect the security of this Deed of Trust and pay or discharge the obligations of Trustor hereunder or under any other Loan Document, and all amounts so advanced, together with interest at the Advance Interest Rate, shall be paid by Trustor to Beneficiary on demand and shall be secured by this Deed of Trust.

2.15    Cross Default Effect of Further Security Instruments. The Indebtedness may be secured by additional assignments of Trustor's interest in the Leases, security agreements, financing

statements, deeds of trust, letters of credit, collateral assignments, pledges, or other security instruments. Any default under the provisions of any such additional security instruments that is not remedied within any applicable cure period shall be an Event of Default under this Deed of Trust, and Beneficiary may, at its option, effect a sale or foreclosure of any one or more of said security instruments either prior or subsequent to, joined or otherwise contemporaneous with, any sale or foreclosure with respect to this Deed of Trust, and may apply the proceeds received therefrom to the Indebtedness without waiving or affecting the status of any default or any right or power (whether contained in this Deed of Trust or any other security instrument.

3.    **ASSIGNMENT OF LEASES, RENTS AND PROFITS.**

3.1    Assignment. Pursuant to Section 1.2, above, Trustor has absolutely, presently, and unconditionally assigned, transferred, conveyed and set over to Beneficiary all of Trustor's right, title and interest in and to the Leases, Rents and Profits to be applied by Beneficiary to the Indebtedness (the "Assignment"). This Assignment shall be fully operative without any further action on the part of Trustor or Beneficiary and Beneficiary shall be entitled, at its option, to all Rents and Profits whether or not Beneficiary takes possession of the Trust Estate. Trustor hereby further grants to Beneficiary the right to

        (a)    enter and take possession of the Trust Estate for the purposes of collecting the Rents and Profits,

        (b)    dispossess by the usual summary proceedings of any tenant defaulting in the payment thereof to Beneficiary,

        (c)    let the Trust Estate or any part thereof, and

        (d)    apply the Rents and Profits, after payment of all necessary charges and expenses (including attorneys' fees and costs) to the Indebtedness. This Assignment shall continue in effect until the Indebtedness is paid in full. The execution of this Deed of Trust constitutes Trustor's irrevocable consent to Beneficiary's entry and taking possession of the Trust Estate pursuant to this Assignment, whether or not sale or foreclosure has been instituted. Neither the exercise of any rights under this Assignment by Beneficiary nor the application of the Rents and Profits to the Indebtedness shall cure or waive an Event of Default or notice of default, and shall be cumulative with all other rights and remedies of Beneficiary.

3.2    Trustee's License. Notwithstanding anything in Section 3.1, above, to the contrary, as long as an Event of Default (described below) has not occurred, Trustor shall have a license to collect and receive all Rents and Profits. Upon the occurrence of an Event of Default, such license shall be deemed automatically revoked, without regard to the adequacy of Beneficiary's security and without notice to or demand upon Trustor, and any Rents and Profits received thereafter by Trustor shall be immediately turned over to Beneficiary. Upon the occurrence of an Event of Default, Trustor agrees to deliver the original copies of all Leases to Beneficiary. Trustor hereby

irrevocably appoints Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation, checks and money orders, tendered as payments of Rents and Profits and to do any and all things necessary and proper to carry out the purposes of this Assignment.

3.3    Trustor's Covenants. Trustor shall not: (i) execute an assignment of the rents or any part thereof from the Trust Estate; (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any Lease having an unexpired term of two (2) years or more unless, promptly after the cancellation or surrender of any Lease, a new Lease is entered into with a new lessee satisfactory to Beneficiary and on terms at least as favorable to the lessor thereunder as were the terms of the Lease so terminated or canceled; (iii) modify any Lease or give consent to any assignment or subletting without Beneficiary's prior written consent; (iv) accept prepayments of any installments of rent or additional rent to become due under the Leases, except prepayments in the nature of security for the performance of the lessee's obligations thereunder; or (v) in any other manner impair the value of the Trust Estate or the security of the Trustee or Beneficiary for the payment of the Indebtedness. Trustor shall not execute any Lease for all or a substantial portion of the Trust Estate except for actual occupancy by the lessee thereunder, and shall at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all Leases now or hereafter existing, on the part of the lessor thereunder to be kept and performed. Trustor shall, from time to time upon request of Beneficiary, specifically assign to Beneficiary as additional security hereunder, by a written instrument approved by Benef all right, title and interest of Trustor in and to any and all Leases, together with all security therefor and all monies payable thereunder, subject to the Trustor's conditional license to collect the Rents. Trustor shall also execute and deliver to Beneficiary any notification, financing statement or other document reasonably required by Beneficiary to perfect the Assignment as to any of the Leases. Each Lease shall provide that, in the event of the enforcement by the Trustee or Beneficiary of the remedies provided for by law or by this Deed of Trust, any person succeeding to the interest of Trustor as a result of such enforcement shall not be bound by any payment of rent or additional rent for more than one month in advance, and that nothing in the Lease or Deed of Trust affects or impairs the rights of Beneficiary to terminate the Lease in connection with the Beneficiary's or Trustee's exercise of its remedies hereunder.

3.4    Foreclosure. Upon a sale of the Trust Estate pursuant to foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to the Leases shall, by virtue of this Deed of Trust and the Assignment, automatically vest in and become the absolute property of the purchaser of the Trust Estate without any further act or assignment by Trustor. Trustor hereby irrevocably appoints Beneficiary and its successors and assigns, as its agent and attorney-in-fact, to execute all instruments of assignment or further assurances in favor of such purchaser of the Property as may be necessary or desirable for such purpose. Nothing contained herein shall prevent Beneficiary from terminating through foreclosure the Lease of any tenant subordinate to this Deed of Trust.

2D

## 4.    SECURITY AGREEMENT.

4.1    Creation of Security Interest. Trustor hereby grants to Beneficiary a security interest in the Personal Property for the purpose of securing the Indebtedness.

4.2    Warranties, Representations and Covenants of Trustor. Trustor hereby warrants, represents and covenants as follows:

(a)    except for the security interest granted hereby, Trustor is, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owner of the Personal Property, free from any lien, security interest, encumbrance or adverse claim of any kind whatsoever, and Trustor shall indemnify, protect, defend, and hold harmless Beneficiary and the Personal Property against all claims and demands of all persons and entities at any time claiming the Personal Property or any part thereof or any interest therein;

(b)    Trustor shall promptly notify Beneficiary of any attachment or other legal process levied against any of the Personal Property and any information received by Trustor relative to the Personal Property, Trustor's debtors or other persons obligated in connection therewith, which may in any way affect the value of the Personal Property or the rights and remedies of Beneficiary in respect thereto;

(c)    Trustor shall not lease, sell, convey or in any manner transfer the Personal Property without the prior written consent of Beneficiary;

(d)    the Personal Property is not, and shall not be, used or bought for personal, family or household purposes;

(e)    the Personal Property shall be kept on or at the Property and Trustor shall not remove the Personal Property from the Property without the prior written consent of Beneficiary, except for such portions or items of Personal Property as are consumed or worn out in ordinary usage, all of which Trustor shall promptly replace with new items of equal or better quality;

(f)    Trustor maintains a place of business in the State of California and Trustor shall immediately notify Beneficiary in writing of any change in its place of business;

(g)    at the request of Beneficiary, Trustor shall join Beneficiary in executing financing statements and continuation and amendments thereof pursuant to the California Commercial Code in form satisfactory to Beneficiary, and Trustor shall pay the cost of filing the same in all public offices wherever filing is deemed by Beneficiary to be necessary or desirable;

(h)    all covenants and agreements of Trustor in this Deed of Trust relating to the Trust Estate shall be deemed to apply to the Personal Property whether or not expressly referred to herein;

21

(i)    Trustor shall permit representatives of Beneficiary to inspect the Personal Property and Trustor's books and records relating to the Personal Property and make copies thereof and arrange for verification of the amount of Personal Property under procedures acceptable to Beneficiary at Trustor's cost; and

(j)    Trustor shall maintain, preserve and protect all Personal Property, keep all Personal Property in good condition and repair and prevent any waste or unusual depreciation thereof; and

(k)    until Beneficiary exercises its right to collect proceeds of the Personal Property pursuant to this Section 4, Trustor shall collect with diligence any and all proceeds of the Personal Property (which shall be held in trust for Beneficiary), and upon written request by Beneficiary, Trustor shall keep all such proceeds collected separate from all other funds so as to be capable of identification as to the property of Beneficiary and shall deliver such collections to Beneficiary at such time as Beneficiary may request and in the identical form received, properly endorsed or assigned when required to enable Beneficiary to complete collection thereof.

4.3    Beneficiary's Rights as a Secured Party. With respect to the security interest granted to Beneficiary in this Section 4, Beneficiary shall have all the rights and remedies granted to a secured party under Division 9 of the California Commercial Code, as well as all other rights and remedies available at law or in equity. Trustor shall, upon the demand of Beneficiary, assemble all of such Personal Property and make it available to Beneficiary at the Trust Estate, which is hereby agreed to be reasonably convenient to Beneficiary, Trustee and Trustor. Any sale proceeds which are applied against the principal component of the Indebtedness shall, to the extent not repaying the entire Indebtedness, be applied to principal in the reverse order of maturity.

4.4    Beneficiary's Collection of Proceeds. Beneficiary may at any time, without prior notice to Trustor, collect proceeds of the Personal Property and may give notice of assignment to any and all of Trustor's debtors, and Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or in Beneficiary's name or otherwise all rights of Trustor in the Personal Property and to do any and all things necessary and proper to carry out the purposes hereof; provided, however, Trustor shall have the right to collect, retain, use and enjoy such proceeds subject to the terms of the Loan Documents prior to the occurrence of any Event of Default. It is recognized that the power of attorney granted herein is coupled with an interest and shall not be revocable and Beneficiary shall have the right to exercise this power of attorney upon any Event of Default. Beneficiary shall notify Trustor of any action taken by Beneficiary pursuant to this provision, but Beneficiary's failure to do so shall not invalidate any such act, affect any of Trustor's obligations to Beneficiary or give rise to any right, claim or defense on the part of Trustor.

4.5    Fixture Filing. The Personal Property in which Beneficiary has a security interest includes goods which are or may become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of sections 9313 and 9402 of the California Commercial

Code. This filing is to be recorded in the real estate records of the county in which the Property is located. Trustor warrants and agrees that there is no financing statement covering the Trust Estate or any part thereof on file in any public office.

## 5.    REMEDIES UPON DEFAULT.

5.1    Events of Default. In addition to any Event of Default under any other Section of this Deed of Trust, the occurrence of any of the following events shall be an Event of Default under this Deed of Trust:

(a)    Trustor's failure to pay any of the following sums on the date that such sums are required to be paid: (1) any regular installment of interest and/or principal due under the Note; (2) any other payment of interest and/or principal due under the Note (whether at any stated maturity or by acceleration or otherwise); or (3) any other sums required to be paid by Trustor pursuant to the Note, this Deed of Trust or any other Loan Document.

(b)    Trustor's failure to perform when due any covenant, condition or agreement of Trustor in this Deed of Trust, or any other Loan Document.

(c)    Trustor (or any guarantor of the Indebtedness) files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent, or files any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or seeks or consents to or acquiesces in the appointment of any trustee, receiver, custodian, liquidator or similar official for Trustor or the Trust Estate, or makes any general assignment for the benefit of creditors, or admits in writing its inability to pay its debts generally as they become due.

(d)    An order for relief or any other order, judgment or decree is entered approving a petition filed against Trustor (or any guarantor of the Indebtedness) seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree remains unvacated and unstayed for an aggregate of thirty (30) days (whether or not consecutive) from the first date of entry thereof, or any trustee, receiver, custodian, liquidator or similar official of Trustor (or guarantor of the Indebtedness) or of all or any part of the Trust Estate or any interest therein is appointed without the consent or acquiescence of Trustor (or guarantor of the Indebtedness) and such appointment is not vacated and not stayed for an aggregate of thirty (30) days (whether or not consecutive) from the first date of entry thereof.

(e)    A writ of execution or attachment or any similar process is issued or levied against all or any part of the Trust Estate or any interest therein, or any judgment is entered against Trustor which becomes a lien on the Trust Estate or any part thereof or interest therein, and such

23

execution, attachment or similar process or judgment is not released, vacated or stayed within thirty (30) days after its issuance, levy or entry.

(f)    Any or all of the representations or warranties made by Trustor in the Note, this Deed of Trust or any other Loan Document proves to be untrue, which adversely affects Beneficiary's security hereunder.

(g)    Any Sale or Encumbrance in violation of Section 2.10.

(h)    Any other default under or breach of any provision of the Note, this Deed of Trust or any other Loan Document (including, without limitation, any environmental indemnity executed to secure the Indebtedness.

5.2    Remedies. Upon the occurrence of any Event of Default, Trustee and Beneficiary, effective as of the date of the occurrence of any Event of Default, shall have any and all of the following rights and remedies which may be exercised individually, collectively or cumulatively:

(a)    Beneficiary may declare all the Indebtedness immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and written notice of default and of election to cause the Trust Estate to be sold, which notice Trustee shall cause to be duly filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Trust Estate at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash and lawful money of the United States, payable at time of sale. If the Trust Estate consists of more than one legal parcel, Beneficiary may designate the order in which such parcels shall be sold or offered for sale, subject, however, to any unqualified statutory right which Trustor may have to direct such order. In addition, if the Trust Estate consists of more than one legal parcel, Beneficiary may require that such parcels be sold at separate sales held at separate times, subject, however, to any unqualified statutory right which Trustor may have to direct the manner of the sale of such parcels. Trustee may postpone sale of all or any portion of the Trust Estate by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. After making such sale, Trustee shall deliver to the purchaser or purchasers its deed or deeds conveying the Trust Estate so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proofs of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.

24

After deducting all costs, fees and expenses of Trustee and of the trust created by this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: (i) all sums expended in connection with such sale, together with reasonable expenses of the trust created hereby, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; (ii) all other sums advanced or expended by Beneficiary and secured hereby; (iii) the Indebtedness remaining unpaid; and (iv) the remainder, if any, to the person or persons legally entitled thereto.

The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Trust Estate remaining unsold, but shall continue unimpaired until all of the Trust Estate has been sold by exercise of the power of sale in this Deed of Trust and all Indebtedness has been paid and discharged in full.

(b)    Beneficiary may at any time, without notice, in person, by agent or by a court appointed receiver, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Trust Estate or any part thereof, in Beneficiary's own name sue for or otherwise collect such Rents and Profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, to any Indebtedness, in such order as Beneficiary may determine. The entering upon and taking possession of the Trust Estate, the collection of such Rents and Profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act on or pursuant to such notice.

Beneficiary may also at any time, without notice, in person, by agent, or by a court appointed receiver, and without regard to the adequacy of any security for the Indebtedness, enter upon, possess, manage, operate, dispose of and contract to dispose of the Trust Estate or any part thereof; take custody of all accounts; negotiate with governmental authorities with respect to the Trust Estate's environmental compliance and remedial measures; take any action necessary to enforce compliance with the Environmental Laws (defined above), including but not limited to spending Rents and Profits and/or other benefits arising from the Trust Estate to cause compliance with Environmental Laws; make, terminate, enforce or modify real or personal property leases, contracts, and agreements for occupancy and/or use of the Trust Estate upon such terms and conditions as Beneficiary deems proper; contract for goods and services, hire agents, employees and counsel, make repairs, alterations and improvements to the Trust Estate which are necessary, in Beneficiary's judgment, to protect or enhance the security of this Deed of Trust; appear in and defend any action or proceeding affecting the Trust Estate or other security hereof or the rights and powers of Beneficiary or Trustee; incur the risks and obligations ordinarily incurred by owners of property (without any personal obligation on the part of Beneficiary or the receiver); and/or take any and all other actions which may be necessary or desirable to comply with Trustor's obligations hereunder and under the other Loan Documents. All sums expended by Beneficiary or Trustee in exercising any of the foregoing shall be secured by this Deed of Trust and shall be immediately due and payable without demand or notice, with

interest from the date of expenditure at the Advance Interest Rate. All sums realized by Beneficiary under this Section 5.4(b), less all costs and expenses incurred under this Section 5.4(b) (including, without limitation, attorneys' fees and costs), and less such sums as Beneficiary deems appropriate as a reserve to meet future expenses under this Section 5.4(b), shall be applied to the Indebtedness in such order as Beneficiary shall determine in its sole discretion. Neither application of said sums to the Indebtedness, nor any other acts taken by Beneficiary under this Section 5.4(b), shall constitute a waiver of any Event of Default or notice of default, or nullify the effect of any such notice of default. Beneficiary may take any action or proceeding hereunder without regard to the existence of a declaration that the Indebtedness secured hereby has been declared immediately due and payable or the filing of a notice of default and/or a notice of sale.

(c)    Beneficiary shall have the right to commence an action to foreclose this Deed of Trust, appoint a receiver, and specifically enforce any of the covenants contained in this Deed of Trust or any other Loan Document. If an Event of Default under this Deed of Trust occurs, and as long as any such Event of Default exists, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the adequacy of the security or the then value of the Trust Estate or the interest of Trustor therein, shall have the right to have a receiver of the Trust Estate appointed by any court having jurisdiction, and Trustor hereby irrevocably consents to such appointment. Any such receiver shall have all the usual powers and duties of receivers in like or similar cases and all the powers of Beneficiary in case of entry as provided in Section 5.2(b) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Trust Estate unless such receivership is sooner terminated.

(d)    Beneficiary shall have the right to exercise and enforce any or all of the rights and remedies available to a secured party under the Uniform Commercial Code of California, including, without limitation, those rights and remedies set forth in Section 4 of this Deed of Trust, or the right to sell the Personal Property or any part thereof, or any further or additional or substitute of the Personal Property, at one or more times, and from time to time at public sale or sales or private sale or sales, on such terms as cash or credit, or partly for cash and partly on credit, as Beneficiary may deem proper. At any such sale or sales, Beneficiary shall have the right to become the purchaser, free and clear of any and all claims and rights of equity or redemption in Trustor, all of which are hereby waived and released. Should any of the Personal Property be sold to any party other than Beneficiary, on credit or for future delivery, the Personal Property so sold may be retained by Beneficiary until the full sales price therefor is paid, and Beneficiary shall not be liable or responsible for the failure of such purchaser to pay for any Personal Property so sold but may, in such event resell such Personal Property. Trustor shall not be credited with the amount of any part of such purchase price, unless (and only to the extent) that such payment is actually received in cash. Notice of public sale, if given, shall be sufficiently given, for all purposes, if published not less than nor more than seven (7) days prior to any sale, in a newspaper of general circulation distributed in the city in which the Personal Property is located. The net proceeds of any sale of the Personal Property which may remain after the deduction of all costs, fees and expenses incurred in connection therewith (including, but not limited to, all advertising

expenses, brokers' commissions, documentary stamp taxes, recording fees, foreclosure costs, and attorneys' fees and costs) shall be credited by Beneficiary against the Indebtedness. Any portion of the Personal Property which may remain unsold after the full payment of the Indebtedness shall be returned to the respective parties which delivered the same to Beneficiary. If at any time Trustor or any other parties shall become entitled to the return of any of the Personal Property, any transfer or assignment by Beneficiary shall be and shall recite that the same is made wholly without representation or warranty whatsoever by or recourse whatsoever against Beneficiary. Trustor recognizes that Beneficiary may not have the usual opportunity for an orderly liquidation of the Personal Property or part thereof, but may be compelled to resort to "private sale" of the Personal Property, at a price which may be less than any fair market price for the Personal Property at the time of its sale. Trustor specifically authorizes Beneficiary to sell at Beneficiary's election, any or all of the Personal Property at "private sale" at such price as may be negotiated directly between Beneficiary and the purchaser of the Personal Property, or any part thereof, whether or not the price may be less than the fair market price at the time of such sale. Trustor further acknowledges and agrees that, at Beneficiary's election, the Personal Property may be sold, pursuant to the California Commercial Code, concurrent with the sale of the Trust Estate.

(e)    Beneficiary or its agents, acting by themselves or through a court appointed receiver, may, with or without notice, and without releasing Trustor from any obligation hereunder, for the purpose of curing any default of Trustor or otherwise in connection therewith, enter upon the Trust Estate or any part thereof and perform such acts and do such things as Beneficiary deems necessary or desirable to inspect, investigate, assess and protect the security of this Deed of Trust, including, without limitation: (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Trust Estate under California Civil Code Section 2929.5 to determine whether there exists a release or threatened release of a Hazardous Substances onto the Trust Estate (which such determination by Beneficiary shall be deemed reasonable and conclusive as between the parties hereto); and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Trust Estate for Hazardous Substances. All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections and examinations which Beneficiary or its agents or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants and attorneys, shall be paid by Trustor. All costs and expenses incurred by Trustee and Beneficiary pursuant to this Section 5.4(e) (including, without limitation, court costs, consultant fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment) shall bear interest at the Advance Interest Rate from the date of expenditure and shall be secured by this Deed of Trust.

(f)    Beneficiary may seek a judgment that Trustor has breached its covenants, representations, warranties and/or indemnities set forth in Section 2.2, above (or elsewhere in this Deed of Trust), in any separate environmental indemnity or other agreement relating to environmental matters, by commencing and maintaining an action for breach of contract pursuant to California Code of Civil Procedure Section 736, whether commenced prior to foreclosure of the Trust Estate or after foreclosure of the Trust Estate, and may further seek the

recovery of any and all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred by Beneficiary (collectively the "Environmental Costs") or advanced by Beneficiary for the cleanup, remediation or other response action required by any Environmental Law, or which Beneficiary believes necessary to protect the Trust Estate, it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action of or to the Trust Estate were made by Beneficiary in good faith. All Environmental Costs incurred by Beneficiary under this Section 5.2(f) (including without limitation court costs, consultant fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment) shall bear interest at the Advance Interest Rate from the date of expenditure and shall be secured by this Deed of Trust until said sums have been paid. Beneficiary shall be entitled to bid at any foreclosure sale of the Trust Estate held under this Deed of Trust the amount of said Environmental Costs together with accrued interest thereon in addition to the amount of the other Indebtedness as a credit bid, but neither such credit bid nor the foreclosure and sale of the Trust Estate shall operate to invalidate or to discharge Trustor from its obligations under the terms of Section 5.2(f), any other portion of this Deed of Trust, any environmental indemnity or other agreement relating to the environmental condition of the Trust Estate. In addition, Beneficiary may, without notice, elect to waive its lien against the Trust Estate or any portion thereof, including fixtures or personal property, to the extent such Trust Estate is found to be environmentally impaired in accordance with California Code of Civil Procedure Section 726.5 and to exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and the Trust Estate for the recovery of any deficiency and Environmental Costs, including, but not limited to, seeking an attachment order under California Code of Civil Procedure Section 483.010. As between Beneficiary and Trustor, for purposes of California Code of Civil Procedure Section 726.5, Trustor shall have the burden of proving that Trustor or any related party (or any affiliate or agent of Trustor or any related party) was not in any way negligent in permitting the release or threatened release of the Hazardous Substance. TRUSTOR ACKNOWLEDGES AND AGREES THAT NOTWITHSTANDING ANY TERM OR PROVISION CONTAINED HEREIN OR IN THE OTHER LOAN DOCUMENTS, ALL ENVIRONMENTAL COSTS INCURRED PURSUANT TO THIS DEED OF TRUST AND ALL JUDGMENTS AND AWARDS ENTERED AGAINST TRUSTOR IN RESPECT OF OR PERTAINING TO THE PROVISIONS OF THIS SECTION 5.2(f), SHALL BE EXCEPTIONS TO ANY NONRECOURSE OR EXCULPATORY PROVISION OF THE LOAN DOCUMENTS, WHETHER SPECIFICALLY SET FORTH IN THE LOAN DOCUMENTS OR PROVIDED BY STATUTE, AND TRUSTOR SHALL BE FULLY AND PERSONALLY LIABLE FOR ALL SUCH ENVIRONMENTAL COSTS AND FOR ALL SUCH JUDGMENTS AND AWARDS ENTERED AGAINST TRUSTOR THEREUNDER, AND SUCH LIABILITY SHALL NOT BE LIMITED TO THE ORIGINAL PRINCIPAL AMOUNT OF THE INDEBTEDNESS. TRUSTOR'S OBLIGATIONS WITH RESPECT TO SUCH ENVIRONMENTAL COSTS AND JUDGMENTS AND AWARDS SHALL SURVIVE A FORECLOSURE, DEED IN LIEU OF FORECLOSURE, RELEASE, RECONVEYANCE OR ANY OTHER TRANSFER OF THE TRUST



ESTATE OR THIS DEED OF TRUST. FOR THE PURPOSES OF ANY ACTION BROUGHT UNDER THIS SECTION 5.2(F), TRUSTOR HEREBY WAIVES THE DEFENSE OF LACHES AND ANY APPLICABLE STATUTE OF LIMITATIONS.

(g)    Beneficiary shall have the right to full and complete access to the Trust Estate for the purpose of conducting any investigations, appraisals, studies or reports that Beneficiary may desire in its sole discretion, and the cost of any such investigations, appraisals, studies and reports shall be paid by Trustor, together with interest at the Advance Interest Rate, and shall be secured by this Deed of Trust.

5.3    Remedies Not Exclusive. Every right, power and remedy granted to Trustee or Beneficiary in this Deed of Trust shall be cumulative and not exclusive, and in addition to all rights, powers and remedies granted at law or in equity or by statute, and each such right, power and remedy may be exercised from time to time and as often and in such order as may be deemed expedient by Trustee or Beneficiary, and the exercise of any such right, power or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy.

5.4    Waiver of Rights. Upon the commencement of any action, suit or other legal proceeding by Beneficiary to obtain a judgment in connection with the Indebtedness or for the enforcement of this Deed of Trust or any other Loan Document, Trustor, to the fullest extent permitted by law, hereby waives every statute of limitations applicable at any time to any such action, suit, or proceeding. To the fullest extent permitted by applicable law, Trustor shall not at any time insist upon, plead or in any manner claim or take any benefit or advantage of, any stay or extension or moratorium law or law pertaining to the marshaling of assets, the administration of estates of decedents, any exemption from execution or sale of the Trust Estate or any part thereof, including exemption of homestead, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust. Trustor, to the fullest extent permissible, further waives its rights to claim, take, or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Trust Estate or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction (not including, however, appraisals incident to judicial foreclosures hereunder). Additionally, after any such sale or sales, Trustor shall not claim or exercise any right under any statute heretofore or hereafter enacted to redeem the Trust Estate so sold or any part thereof. Trustor hereby expressly waives, to the extent legally permissible, all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of every power as though no such law or laws had been made or enacted. Finally, Trustor, for itself and all who claim under it, specifically waives, to the extent that it lawfully may, all right to have the Trust Estate marshaled upon any sale or foreclosure hereunder.

29

5.5    Expenses. All expenses incurred by Beneficiary and Trustee in exercising any of their rights under this Section 5 of the Deed of Trust or in exercising any other rights available at law or in equity (including, without limitation, expenses incurred in retaking, holding, preparing for sale or selling the Trust Estate or any part thereof and Trustee's and attorneys' fees and costs) shall be borne solely by Trustor and shall, together with interest at the Advance Interest Rate, be secured by this Deed of Trust.

5.6    Order of Application. The purchase money or other proceeds of any foreclosure sale made under or by virtue of this Deed of Trust, together with all other sums which then may be held by Trustee or Beneficiary under this Deed of Trust, whether under the provisions of Section 5.4 or otherwise, shall be applied as follows: (a) first, to the payment of the costs and expenses of sale and any related judicial proceeding including, without limitation, reasonable compensation to Trustee and Beneficiary, their agents and counsel, all costs of publishing, recording, mailing and posting notices, the costs of any search and evidence of title procured in connection therewith and revenue stamps on any deed or instrument of conveyance, all expenses, liabilities and advances made or incurred by Trustee under this Deed of Trust, together with interest as provided herein and all taxes or assessments, except for any taxes, assessments or other charges subject to which the Trust Estate shall have been sold; (b) second, to the payment of any and all other sums expended under the provisions of this Deed of Trust not then repaid, and all other sums (other than sums described in clause (c), below) required to be paid by Trustor pursuant to any provisions of this Deed of Trust or any other Loan Document, including, without limitation, all expenses, liabilities and advances made or incurred by Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest thereon as set forth herein, with the specific exception of any sums which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; (c) third, to the payment of the whole amount then due, owing or unpaid upon the Note for the principal, interest, other charges and any damages, and any other sums advanced by, or owed to, Beneficiary and secured hereby, with the exception of any sums which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; (d) fourth, to any and all portions of the Indebtedness which might otherwise be recoverable by Beneficiary under the provisions of California Code of Civil Procedure Section 736; and (e) fifth, the remainder, if any, to the persons legally entitled thereto.

6.    MISCELLANEOUS.

6.1    Governing Law. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California without resort to choice of law principles.

6.2    Statements. Beneficiary shall, within ten (10) days after notice, furnish to Trustor a written statement setting forth the unpaid principal and interest due under the Note and any other component of the Indebtedness. Trustor agrees to pay Beneficiary for each such statement

30

the maximum fee allowed by law or, if there is no maximum fee, such reasonable fee as is then charged by Beneficiary for such statement.

6.3    Reconveyance by Trustee. Upon written request of Beneficiary stating that the Indebtedness has been paid in full, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention, and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder. The recitals in such reconveyances of any matters or facts shall be conclusive proof of the truthfulness thereof.

6.4    Trustee. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust hereby created shall be irrevocable by Trustor. Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county in which the Trust Estate is located, and by otherwise complying with applicable law, substitute a successor or successors to the Trustee named herein or acting hereunder. Trustee may resign at any time upon giving ten (10) days notice in writing to Trustor and to Beneficiary. Trustor shall pay all costs, fees, and expenses of Trustee, its agents, and counsel in connection with the performance of its duties hereunder and shall pay all taxes (except federal and state income taxes) or other governmental charges or impositions imposed by any governmental authority on Trustee by reason of its interest in the Note, this Deed of Trust or any other Loan Document.

6.5    Further Assurances. Whenever reasonably requested by Beneficiary, Trustor shall promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances, and promptly do or cause to be done all such other and further things as may be necessary and reasonably required in order to further and more fully vest in Trustee or Beneficiary all rights, interest powers, benefits, privileges and advantages conferred or intended to be conferred by this Deed of Trust.

6.6    Notices. Whenever Beneficiary, Trustor or Trustee wishes to give any notice or demand with respect to this Deed of Trust, each such notice or demand shall be in writing and shall be given by personal service, certified or registered mail, return receipt requested, or Federal Express or other recognized overnight delivery service regularly providing proof of delivery, addressed to the address set forth at the beginning of this Deed of Trust. All such notices and demands shall be deemed given upon receipt. Any party may change its address for such notices by giving notice of such change to the other parties hereto.

6.7    Time. Time is of the essence in the performance of each and every obligation contained herein.

6.8    Successors and Assigns. This Deed of Trust inures to the benefit of and binds all parties hereto, their personal representatives, heirs, successors and assigns. The term Trustor includes both the original Trustor and any subsequent owner of the Trust Estate or any part

31

thereof. The term Beneficiary shall mean the owner and holder of the Note whether or not named as Beneficiary herein.

6.9    Interpretation. The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust. Whenever the context requires, the singular number includes the plural, and vice versa, and each gender includes each other gender.

6.10    Invalidity of Certain Provisions. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Indebtedness, or if such lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partially secured portion of such Indebtedness shall be completely paid prior to the payment of the remaining and secured or partially secured portion, and all payments made, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the Indebtedness which is not secured or not fully secured by the lien of this Deed of Trust. The invalidity of any provision of this Deed of Trust shall not affect the remaining provisions of this Deed of Trust or any part thereof and this Deed of Trust shall be construed as if such invalid provision, if any, had not been inserted herein.

6.11    Subrogation. To the extent that proceeds of the Note or advances under this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds or advances have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

6.12    No Waiver. The acceptance by Beneficiary of any sum after it is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance only of the sum so paid, and such acceptance of less than the full amount due shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due. In addition, Trustor's failure to pay the entire sum then due shall be and continue to be a default notwithstanding acceptance of an amount which is less than the full amount due, and Beneficiary or Trustee shall, at all times thereafter and until the entire sum then due has been paid (and notwithstanding the acceptance by Beneficiary thereafter of further sums) be entitled to exercise all rights in this Deed of Trust conferred upon them upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice. Consent by Beneficiary to any transaction or action of Trustor which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiveUr of the right to require such consent or approval to future or successive transactions or actions. This Deed of Trust cannot be waived, amended, modified, changed, discharged or

terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, modification, change, discharge or termination is sought.

6.13    Counterparts. This Deed of Trust may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and all such counterparts shall together constitute one and the same Deed of Trust.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

"TRUSTOR(S)":

ARREHBORI FAMILY, LLC., a
California Limited Liability company

By: _____
Name: Raymond Arrehbori
Its: Member & Manager

By: _____
Name: Robin Arrehbori
Its: Member & Manager

33

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _2-5-2016_ before me, _German Guzman, notary public_
   Date                      Here Insert Name and Title of the Officer

personally appeared _Raymond Arrehberi and Robin Arohbor._
                                Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
          Signature of Notary Public

> GERMAN GUZMAN
> Commission # 1992664
> Notary Public - California
> Orange County
> My Comm. Expires Sep 29, 2016

       Place Notary Seal Above

―――――――――――――― OPTIONAL ――――――――――――――
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Deed of Trust_ Document Date: _2-5-2016_
Number of Pages: _30_ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907



**Fill in this information to identify the case:**

Debtor name    **M.R.R. Fabric, Inc.**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    **2:16-bk-21734 BR**

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br><br>Do not deduct the value<br>of collateral. | Column B<br>**Value of collateral<br>that supports this<br>claim** |
|---|---|---|---|
| **2.1**  **Celtic Bank Corporation**<br>Creditor's Name<br><br>**268 S. State Street**<br>**Suite L 300**<br>**Salt Lake City, UT 84111**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien<br>**All assets**<br><br><br>Describe the lien<br>**Non-Purchase Money Security**<br>**Is the creditor an insider or related party?** | **$0.00** | **Unknown** |

Creditor's email address, if known

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    **$0.00**

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did<br>you enter the related creditor? | Last 4 digits of<br>account number for<br>this entity |
|---|---|---|
| | | |

**Fill in this information to identify the case:**

Debtor name     **M.R.R. Fabric, Inc.**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    **2:16-bk-21734 BR**

☐ Check if this is an
    amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ☐ No. Go to Part 2.

    ■ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
    with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | Total claim | Priority amount |
|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address | **$0.00** | **$0.00** |

| 2.1 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**2.1**

Priority creditor's name and mailing address

**Employment Development
Department
P.O. Box 826806
Bankruptcy Group MIC 92E
Sacramento, CA 94206-0001**

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Is the claim subject to offset?
■ No
☐ Yes

**2.2**

Priority creditor's name and mailing address

**Franchise Tax Board
P.O. Box 1673
Bankruptcy Unit
Sacramento, CA 95812**

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Is the claim subject to offset?
■ No
☐ Yes

Total claim **$0.00**    Priority amount **$0.00**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    52233                    Best Case Bankruptcy

| Debtor | **M.R.R. Fabric, Inc.** | | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|---|
| | Name | | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **$0.00** | **$0.00** |
|---|---|---|---|---|---|

**Internal Revenue Service**
**P.O. Box 7346**
**Centralizied Bankruptcy**
**Philadelphia, PA 19101-7346**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  | | **Amount of claim** |
|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$19,404.38** |
|---|---|---|---|

**Attorney Recovery Systems, Inc**
**18757 Burbank Boulevard**
**Unit 300**
**Tarzana**
**Tarzana, CA 91356**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** 2016

Basis for the claim: collection account

**Last 4 digits of account number** 2192

Is the claim subject to offset? ■ No ☐ Yes

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$4,932.39** |
|---|---|---|---|

**Atwell Curtis & Brooks Ltd.**
**204 Stonehinge Lane**
**P.O. Box 363**
**Carle Place, NY 11514-0363**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** 2016

Basis for the claim: collection account

**Last 4 digits of account number** CIT

Is the claim subject to offset? ■ No ☐ Yes

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$234.05** |
|---|---|---|---|

**Avery Dennison**
**15178 Collections Center Drive**
**Chicago, IL 60693**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** 2015

Basis for the claim: collection account

**Last 4 digits of account number** 9919

Is the claim subject to offset? ■ No ☐ Yes

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$480,000.00** |
|---|---|---|---|

**Bonded Apparel, Inc.**
**800 McGarry Street**
**5th Floor**
**Los Angeles, CA 90021**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** 2015

Basis for the claim: lawsuit settlement

**Last 4 digits of account number** 4406

Is the claim subject to offset? ■ No ☐ Yes

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$155,000.00** |
|---|---|---|---|

**Call & Jensen**
**610 Newport Center Drive**
**Suite 700**
**Newport Beach, CA 92660**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

Basis for the claim: attorneys fees

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **M.R.R. Fabric, Inc.** | | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.6 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$1,257,787.94** |
|---|---|---|---|

**Celtic Bank Corporation**
**268 S. State Street**
**Suite L 300**
**Salt Lake City, UT 84111**

■ Contingent
■ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ☐ No ■ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$15,000.00** |
|---|---|---|---|

**City of Los Angeles Finance**
**200 N. Spring Street**
**Room 1225 City Hall**
**Los Angeles, CA 90012**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __municipal taes__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$7,500.00** |
|---|---|---|---|

**Continental Logistic Services, Inc.**
**800-850 W. Artesia Bouelvard**
**Compton, CA 90220**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2016__

**Basis for the claim:** __storage company used for storage of material -__
__estimated debt__

Last 4 digits of account number __7103__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$50,000.00** |
|---|---|---|---|

**Dibas, LLC**
**1016 E 14th Place**
**Los Angeles, CA 90021**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __landlord eviction__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Division of Labor Standards Enf**
**320 W. Fourth Street**
**Room 450**
**Los Angeles, CA 90013**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __labor claims__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **Unknown** |
|---|---|---|---|

**EDD Socal Authorization**
**P.O. Box 19009**
**San Bernardino, CA 92423-9009**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __tax employee claims__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** *Check all that apply.* | **$0.00** |
|---|---|---|---|

**Eric D. Dean, Esq.**
**8911 Research Drive**
**Irvine, CA 92618**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **M.R.R. Fabric, Inc.** | | Case number (*if known*) | **2:16-bk-21734 BR** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $3,175.00 |
|---|---|---|---|
| | **Euler Hermes Collections**<br>**800 Red Brook Boulevard**<br>**Suite 400C**<br>**Owings Mills, MD 21117** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **collection** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $94,445.26 |
|---|---|---|---|
| | **Fabric Selection, Inc.**<br>**800 E. 14th Street**<br>**Los Angeles, CA 90021** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2016** | Basis for the claim:  **collection judgment** | |
| | Last 4 digits of account number  **8962** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $80,000.00 |
|---|---|---|---|
| | **Firouzeh Simab, Esq.**<br>**2800 28th Street**<br>**Suite 328**<br>**Santa Monica, CA 90405** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **business loan** | |
| | Last 4 digits of account number  **Rahimian** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,575,000.00 |
|---|---|---|---|
| | **George Washington Lending, Inc.**<br>**660 Sacramento Street**<br>**Suite 201**<br>**San Francisco, CA 94111** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **listed as a precaution -- debt of LLC on property -**<br>**potential cross liability** | |
| | Last 4 digits of account number  **2100** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **I.O.U International, Inc.**<br>**109 South St. Andrews Place**<br>**Number 3**<br>**Los Angeles, CA 90004** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2016** | Basis for the claim:  **copyright case and claims** | |
| | Last 4 digits of account number  **MRR** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $499,639.81 |
|---|---|---|---|
| | **Jacqueline N. Anker, Esq.**<br>**27 West Anapuma Street**<br>**Unit 325**<br>**Santa Barbara, CA 93101** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **2016** | Basis for the claim:  **collection account** | |
| | Last 4 digits of account number  **Southwest Trade Services** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|
| | **Larry C. Jones, Esq.**<br>**101 South Tryon Street**<br>**Suite 4000**<br>**Charlotte, NC 28280-4000** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **copyright claimants** | |
| | Last 4 digits of account number  **TJX** | Is the claim subject to offset? ■ No ☐ Yes | |

---

| Debtor | **M.R.R. Fabric, Inc.** | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|
| | Name | | |

---

**3.20** | Nonpriority creditor's name and mailing address
**Marlin Leasing Corporation**
**300 Fellowship Road**
**Mount Laurel, NJ 08054**

Date(s) debt was incurred ___
Last 4 digits of account number ___

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **equipment**

Is the claim subject to offset? ■ No   ☐ Yes

**$1,472.39**

---

**3.21** | Nonpriority creditor's name and mailing address
**Medici Textile, Inc.**
**1665 Mateo Street**
**2nd Floor**
**Los Angeles, CA 90021**

Date(s) debt was incurred  **2016**
Last 4 digits of account number  **R2D**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **collection account business debt**

Is the claim subject to offset? ■ No   ☐ Yes

**$0.00**

---

**3.22** | Nonpriority creditor's name and mailing address
**Meridian Textiles, Inc.**
**6415 Canning Street**
**Los Angeles, CA 90040**

Date(s) debt was incurred ___
Last 4 digits of account number ___

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **settlement of copyright claims**

Is the claim subject to offset? ■ No   ☐ Yes

**Unknown**

---

**3.23** | Nonpriority creditor's name and mailing address
**Minx International, Inc.**
**752 S. San Pedro Street**
**Los Angeles, CA 90014**

Date(s) debt was incurred  **2013**
Last 4 digits of account number  **7psg**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **copyright litigation**

Is the claim subject to offset? ■ No   ☐ Yes

**Unknown**

---

**3.24** | Nonpriority creditor's name and mailing address
**Moosa Lari**
**1734 Coldwater Canyon**
**Beverly Hills, CA 90210**

Date(s) debt was incurred ___
Last 4 digits of account number ___

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **listed as a precaution -- debt of LLC on property - potential cross liability**

Is the claim subject to offset? ■ No   ☐ Yes

**$125,000.00**

---

**3.25** | Nonpriority creditor's name and mailing address
**Neman Brothers & Associates, Inc.**
**1525 S. Broadway**
**Los Angeles, CA 90015**

Date(s) debt was incurred ___
Last 4 digits of account number ___

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **ongoing copyright issues**

Is the claim subject to offset? ■ No   ☐ Yes

**Unknown**

---

**3.26** | Nonpriority creditor's name and mailing address
**Pacific Continetal Textiles, Inc.**
**18737 S. Reyes Avenue**
**Compton, CA 90221**

Date(s) debt was incurred ___
Last 4 digits of account number  **7664**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **copyright issues**

Is the claim subject to offset? ■ No   ☐ Yes

**Unknown**

---

| Debtor | **M.R.R. Fabric, Inc.** | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|
| | Name | | |

---

| 3.27 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$203.45** |

**Progressive Management Systems**
**P.O. Box 2220**
**West Covina, CA 91793-9917**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _____

Basis for the claim:  **collection account**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.28 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$450,000.00** |

**Ray Davis**
**244 South Robertson Boulevard**
**Beverly Hills, CA 90211**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _____

Basis for the claim:  **listed as a precaution -- debt of LLC on property - potential cross liability**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.29 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,866.70** |

**RMS**
**P.O. Box 361136**
**Columbus, OH 43236**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _____

Basis for the claim:  **collection account**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.30 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$700,000.00** |

**Sionit Neman**
**1818 Pelham Avenue**
**Apartment 107**
**Los Angeles**
**Los Angeles, CA 90025**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _____

Basis for the claim:  **listed as a precaution -- debt of LLC on property - potential cross liability**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.31 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$103.49** |

**Transworld Systems**
**507 Prudential Road**
**Horsham, PA 19044**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _____

Basis for the claim:  **collection account**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.32 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** |

**Urban Textile, Inc.**
**5075 S. Santa Fe Avenue**
**Los Angeles, CA 90058**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2013**

Basis for the claim:  **litigation copyright matters**

Last 4 digits of account number _____

Is the claim subject to offset? ■ No ☐ Yes

---

**Part 3:**    **List Others to Be Notified About Unsecured Claims**

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured claims.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| Debtor | **M.R.R. Fabric, Inc.** | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|
| | Name | | |

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Aaron L. Renfro, Esq.**<br>**610 Newport Center Drive**<br>**Suite 700**<br>**Newport Beach, CA 92660** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.2 | **Bill Weintraul**<br>**1800 Century Park East**<br>**7th Floor**<br>**Los Angeles, CA 90067** | Line **3.22**<br>☐ Not listed. Explain ____ | _ |
| 4.3 | **C. Yong Jeong, Esq.**<br>**1055 West 7th Street**<br>**Suite 2280**<br>**Los Angeles, CA 90017** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.4 | **Franchise Tax Board**<br>**P.O. Box 2952**<br>**Bankruptcy Section, MS: A-340**<br>**Sacramento, CA 95812-2952** | Line **2.2**<br>☐ Not listed. Explain ____ | _ |
| 4.5 | **Franchise Tax Board**<br>**P.O. Box 1720, MS: A-260**<br>**c/o General Counsel Section**<br>**Rancho Cordova, CA 95741-1720** | Line **2.2**<br>☐ Not listed. Explain ____ | _ |
| 4.6 | **Fred Mashian**<br>**9255 Sunset Boulevard**<br>**Suite 630**<br>**West Hollywood, CA 90069** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.7 | **Fred Mashian**<br>**9255 Sunset Boulevard**<br>**Suite 630**<br>**West Hollywood, CA 90069** | Line **3.9**<br>☐ Not listed. Explain ____ | _ |
| 4.8 | **Joseph P. Graziano, Esq.**<br>**18757 Burbank Boulevard**<br>**Suite 300**<br>**Tarzana, CA 91356** | Line **3.1**<br>☐ Not listed. Explain ____ | _ |
| 4.9 | **Michael C. Baum, Esq.**<br>**1840 Century Park East**<br>**17th Floor**<br>**Los Angeles, CA 90067** | Line **3.14**<br>☐ Not listed. Explain ____ | _ |
| 4.10 | **Mirit Neman**<br>**1875 Century Park East**<br>**Suite 1700**<br>**Los Angeles, CA 90067** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.11 | **Neman Brothers Apparel Group, Inc.**<br>**4519 South Everett Avenue**<br>**Los Angeles, CA 90058** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.12 | **Nico N. Tabibi, Esq.**<br>**9454 Wilshire Boulevard**<br>**Penthouse**<br>**Beverly Hills, CA 90212** | Line **3.17**<br>☐ Not listed. Explain ____ | _ |

| Debtor | **M.R.R. Fabric, Inc.** | Case number (if known) | **2:16-bk-21734 BR** |
|---|---|---|---|
| | Name | | |

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.13 | **Poetry Corporation**<br>**2111 Long Beach Avenue**<br>**Los Angeles, CA 90058** | Line **3.25**<br>☐ Not listed. Explain ____ | _ |
| 4.14 | **Rebecca Hufford Cohen, Esq.**<br>**433 N. Camden Drive**<br>**Suite 600**<br>**Beverly Hills, CA 90210** | Line **3.9**<br>☐ Not listed. Explain ____ | _ |
| 4.15 | **Richard P. Keavney, Esq.**<br>**3828 Carson Street**<br>**Suite 100**<br>**Torrance, CA 90503** | Line **3.26**<br>☐ Not listed. Explain ____ | _ |
| 4.16 | **Robert W. Blanchard**<br>**800 Silverado Street**<br>**Second Floor**<br>**La Jolla, CA 92037** | Line **3.18**<br>☐ Not listed. Explain ____ | _ |
| 4.17 | **Rosita Neman**<br>**721 N. Rodeo Drive**<br>**Beverly Hills, CA 90210** | Line **3.14**<br>☐ Not listed. Explain ____ | _ |
| 4.18 | **Roy A. Levun, Esq.**<br>**1742 Flowerdale Street**<br>**Simi Valley, CA 93063** | Line **3.21**<br>☐ Not listed. Explain ____ | _ |
| 4.19 | **Sepehr Daghighian, Esq.**<br>**433 North Camden Drive**<br>**Fourth Floor**<br>**Beverly Hills, CA 90210** | Line **3.4**<br>☐ Not listed. Explain ____ | _ |
| 4.20 | **Southwest Trade Services, Inc.**<br>**20 Pacifica**<br>**Suite 360**<br>**Irvine, CA 92618** | Line **3.18**<br>☐ Not listed. Explain ____ | _ |
| 4.21 | **Stephen M. Doniger, Esq.**<br>**603 Rose Avenue**<br>**Venice, CA 90291** | Line **3.17**<br>☐ Not listed. Explain ____ | _ |
| 4.22 | **Stephen M. Doniger, Esq.**<br>**300 Corporate Pointe**<br>**suite 355**<br>**Culver City, CA 90230** | Line **3.23**<br>☐ Not listed. Explain ____ | _ |
| 4.23 | **Steve Wasserman**<br>**5567 Reseda Boulevard**<br>**Tarzana, CA 91356** | Line **3.23**<br>☐ Not listed. Explain ____ | _ |
| 4.24 | **US Attorney's Office Civil Process**<br>**300 North Los Angeles Street**<br>**Federal Builiding Room 7516**<br>**Los Angeles, CA 90012** | Line **2.3**<br>☐ Not listed. Explain ____ | _ |

| Debtor | **M.R.R. Fabric, Inc.** | | Case number (if known) | **2:16-bk-21734 BR** | |
|---|---|---|---|---|---|
| | Name | | | | |

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.25 | **USDOJ Attorney General**<br>**P.O. Box 683**<br>**Ben Franklin Station**<br>**Washington, DC 20044** | Line  **2.3**<br><br>☐  Not listed. Explain ____ | _ |

---

**Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims**

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ 0.00 |
| **5b. Total claims from Part 2** | 5b. + | $ 5,520,764.86 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 5,520,764.86 |



| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Arrehbori Family, LLC** |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an
amended filing

## Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

   ■ No.  Go to Part 2.
   ☐ Yes Fill in the information below.

   **All cash or cash equivalents owned or controlled by the debtor**                    Current value of
                                                                                          debtor's interest

| Part 2: | Deposits and Prepayments |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

   ■ No.  Go to Part 3.
   ☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

   ■ No.  Go to Part 4.
   ☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

13. **Does the debtor own any investments?**

   ■ No.  Go to Part 5.
   ☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

18. **Does the debtor own any inventory (excluding agriculture assets)?**

   ■ No.  Go to Part 6.
   ☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

   ■ No.  Go to Part 7.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

| Debtor | **Arrehbori Family, LLC** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

☐ Yes Fill in the information below.

<table>
<tr><td style="background-color:black;color:white">Part 7:</td><td>Office furniture, fixtures, and equipment; and collectibles</td></tr>
</table>

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

<table>
<tr><td style="background-color:black;color:white">Part 8:</td><td>Machinery, equipment, and vehicles</td></tr>
</table>

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

<table>
<tr><td style="background-color:black;color:white">Part 9:</td><td>Real property</td></tr>
</table>

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.     Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  **237 South Wetherly Drive Beverly Hills, CA 90211** | Fee simple | $0.00 | Comparable sale | $2,167,964.00 |

| 56. | **Total of Part 9.** | | $2,167,964.00 |
|---|---|---|---|
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. | | |

57.     **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

58.     **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

<table>
<tr><td style="background-color:black;color:white">Part 10:</td><td>Intangibles and intellectual property</td></tr>
</table>

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

<table>
<tr><td style="background-color:black;color:white">Part 11:</td><td>All other assets</td></tr>
</table>

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Arrehbori Family, LLC** | Case number *(If known)* |
|---|---|---|
| | Name | |

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Arrehbori Family, LLC** | Case number *(If known)* | |
|---|---|---|---|
| | Name | | |

<table>
<tr><td colspan="2" style="background:black;color:white">Part 12:</td><td colspan="2">Summary</td></tr>
</table>

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9* ....................................> | | $2,167,964.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 | + 91b. $2,167,964.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $2,167,964.00 |

Fill in this information to identify the case:

Debtor name __**Arrehbori Family, LLC**__

United States Bankruptcy Court for the: __CENTRAL DISTRICT OF CALIFORNIA__

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

| | | Column A | Column B |
|---|---|---|---|
| **2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. | | **Amount of claim**<br><br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

| | | | |
|---|---|---|---|
| **2.1** **George Washington Lending, Inc.** | **Describe debtor's property that is subject to a lien** | $1,575,000.00 | $2,167,964.00 |
| Creditor's Name | **237 South Wetherly Drive** | | |
| **660 Sacramento Street Suite 201 San Francisco, CA 94111** | **Beverly Hills, CA  90211** | | |
| Creditor's mailing address | | | |
| | **Describe the lien** | | |
| | **First Mortgage** | | |
| | Is the creditor an insider or related party? | | |
| Creditor's email address, if known | ☑ No | | |
| | ☐ Yes | | |
| | Is anyone else liable on this claim? | | |
| **Date debt was incurred** | ☑ No | | |
| **2015** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Last 4 digits of account number** | | | |
| **2100** | **As of the petition filing date, the claim is:** | | |
| **Do multiple creditors have an interest in the same property?** | Check all that apply | | |
| ☐ No | ☐ Contingent | | |
| ☑ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | ☐ Disputed | | |
| **1. George Washington Lending, Inc. 2. Sionit Neman 3. Moosa Lari 4. Ray Davis** | | | |

| | | | |
|---|---|---|---|
| **2.2** **Moosa Lari** | **Describe debtor's property that is subject to a lien** | $125,000.00 | $2,167,964.00 |
| Creditor's Name | **237 South Wetherly Drive** | | |
| **1734 Coldwater Canyon Beverly Hills, CA 90210** | **Beverly Hills, CA  90211** | | |
| Creditor's mailing address | | | |
| | **Describe the lien** | | |
| | **Deed of Trust** | | |
| | Is the creditor an insider or related party? | | |
| Creditor's email address, if known | ☑ No | | |
| | ☐ Yes | | |
| | Is anyone else liable on this claim? | | |
| **Date debt was incurred** | ☑ No | | |
| | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |

Debtor    **Arrehbori Family, LLC**

Name    Case number (if know)

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: |
|---|---|
| ☐ No | Check all that apply |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| **Specified on line 2.1** | ☐ Disputed |

---

| 2.3 | **Ray Davis** | Describe debtor's property that is subject to a lien | $450,000.00 | $2,167,964.00 |
|---|---|---|---|---|

Creditor's Name

**244 South Robertson Boulevard**
**Beverly Hills, CA 90211**

**237 South Wetherly Drive**
**Beverly Hills, CA 90211**

Creditor's mailing address

Describe the lien

**Deed of Trust**

Is the creditor an insider or related party?

Creditor's email address, if known

■ No
☐ Yes

Is anyone else liable on this claim?

Date debt was incurred

■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: |
|---|---|
| ☐ No | Check all that apply |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| **Specified on line 2.1** | ☐ Disputed |

---

| 2.4 | **Sionit Neman** | Describe debtor's property that is subject to a lien | $700,000.00 | $2,167,964.00 |
|---|---|---|---|---|

Creditor's Name

**1818 Pelham Avenue**
**Apartment 107**
**Los Angeles**
**Los Angeles, CA 90025**

**237 South Wetherly Drive**
**Beverly Hills, CA 90211**

Creditor's mailing address

Describe the lien

**Deed of Trust**

Is the creditor an insider or related party?

Creditor's email address, if known

■ No
☐ Yes

Is anyone else liable on this claim?

Date debt was incurred

■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: |
|---|---|
| ☐ No | Check all that apply |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| **Specified on line 2.1** | ☐ Disputed |

---

3.   **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    $2,850,000.00

**Part 2:**    **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies,

| Debtor | **Arrehbori Family, LLC** | Case number (if know) | |
|---|---|---|---|
| | Name | | |

assignees of claims listed above, and attorneys for secured creditors.

**If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                  Best Case Bankruptcy



## PROMISSORY NOTE SECURED BY DEED OF TRUST

County of Los Angeles, California
October 6, 2015

    1.    For value received, the undersigned, **M.R.R. FABRIC, INC., a California corporation,** and **RAYMOND ARREHBORI,** an individual, and **RABIN ARREHBORI,** an individual (collectively, joint and severally referred to as "Borrower"), whose address is 237 S. Wetherly Drive, Beverly Hills, CA 90211, promises to pay to the order of **MADISON TEX, INC., a California corporation,** and **SIONIT NEMAN,** an individual, and **MOHTERAM AZIM,** an individual (collectively referred to as "Lender"), at 1818 Pelham Avenue, Apt. 107, Los Angeles, CA 90024 or at any other place that may be designated in writing by Lender, the principal sum of **ONE MILLION DOLLARS ($1,000,000.00)** with interest as set forth in this Note (calculated on the basis of a 360-day year). All sums due are payable in lawful money of the United States of America. The principal amount of this Note will bear interest at the rate of **Ten Percent (10.00%)** per annum.

    2.    This Note is secured by, among other things, the **DEED OF TRUST, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (SECURING PROMISSORY NOTE)** on the same date as this Note, executed by Borrower, as trustor, in favor of Lender, as beneficiary ("Deed of Trust"), and encumbering the real property located at 237 S Wetherly Drive, Beverly Hills, CA 90211 and more particularly described in the Deed of Trust ("Property"). The holder of this Note will be entitled to the benefits of the security provided by the Deed of Trust and will have the right to enforce the covenants and agreements of Borrower contained in the Deed of Trust.

    3.    Borrower will pay to Lender the principal amount of this Note, and accrued interest, as follows: Borrower shall make interest only payments of $8,333.00 on the first day ("Due Date") of each month until the maturity date of this Note. The entire outstanding principal balance of this Note, together with all accrued and unpaid interest, will be due within thirty (30) days from the date of written demand by Lender to Borrower at Borrower's address via U.S. Certified Mail, Return Receipt Requested ("Maturity Date").

    4.    If Borrower fails to make any required payment on or before its due date or Maturity Date following the date on which it becomes due, Borrower will pay, at Lender's option, a late charge equal to five percent (5.00%) of the amount of the unpaid payment.

    5.    From and after the Maturity Date, or an earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing under this Note will bear interest until paid in full at a rate equal to five percent (5.00%) per annum in excess of the rate of interest specified above ("Default Rate").

6.    All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the reduction of the principal balance; or in any other order that Lender requires.

7.    If: Borrower fails to pay when due any sums payable under this Note; an Event of Default (defined in the Deed of Trust) occurs; or any other event or condition occurs that, under the terms of the Deed of Trust, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due and payable. However, if any document related to this Note provides for the automatic acceleration of payment of sums owing under this Note, all sums owing will be automatically due and payable in accordance with the terms of that document.

8.    Borrower will have the right to pay, without penalty or premium, on any payment date, all or any portion of the outstanding principal amount of this Note prior to the Maturity Date on not less than five (5) days' prior written notice to Lender.

9.    Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Deed of Trust will in no manner make Lender the partner or joint venture of Borrower.

10.    If any attorney is engaged by Lender to enforce or construe any provision of this Note, the Deed of Trust, or the other Loan Documents (defined in the Deed of Trust) or as a consequence of any Event of Default, with or without the filing of any legal action or proceeding, then Borrower will immediately pay to Lender on demand all attorneys' fees and other costs incurred by Lender, together with interest from the date of the demand until paid at the Default Rate.

11.    No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note, the Deed of Trust, or the other Loan Documents will constitute a waiver of any breach, default, or failure of condition under this Note, the Deed of Trust, or the other Loan Documents. A waiver of any term of this Note, the Deed of Trust, or the other Loan Documents must be made in writing and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Note and the terms of any of the other Loan Documents, the terms of this Note will prevail.

Lender does not intend to contract for, charge or receive any interest or other charge which is usurious, and by execution of this Note, Borrower acknowledges that

Lender has no such intent. All agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby expressly limited so that in no event, whether by reason of acceleration of the maturity hereof, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the money to be loaned hereunder or otherwise or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to the indebtedness evidenced hereby, exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever fulfillment of any provision hereof or other documents, at the time performance of such provision shall be due, shall exceed the maximum amount prescribed by law, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Lender shall ever receive as interest or otherwise an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to reduce the principal amount owing hereunder or on account of any other principal indebtedness of Borrower to Lender and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal hereof and such other indebtedness, such excess shall be refunded to Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness of Borrower to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness does not exceed the maximum permitted by applicable law.

12.    All notice required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Deed of Trust for the giving of notices.

13.    If this Note is executed by more than one person or entity as Borrower, the obligations of each person or entity will be joint and several. No person or entity will be a mere accommodation maker, but each will be primarily and directly liable. Borrower waives presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses, or losses and interest; notice of interest on interest and late charges; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interests to properties securing payment of this Note. Time is of the essence with respect to every provision of this Note. This Note will be construed and enforced in accordance with California law, except to the extent that Federal laws pre-empt state law, and all persons and entities in any manner obligated under this Note consent to the jurisdiction of any Federal or State Court within California having proper venue and also consent to service of process by any means authorized by California or Federal law.

14.    All Borrower(s) will and are hereby be personally, individually and Joint

and Severally liable for the payment of the indebtedness evidenced by this Note or the other Loan Documents, and any judgment or decree in any action brought to enforce the obligation of Borrower to pay the indebtedness will be enforceable against all Borrower(s) jointly and severally.  In addition, Borrower will be fully and personally liable for all loss, cost, liability, damage or expense suffered or incurred by Lender arising from, including but not limited to, the following:

(i)    failure to pay taxes, assessments, and any other charges that could result in liens against any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents;

(ii)    failure to pay and discharge any mechanics' liens, materialmen's liens, or other liens against any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents;

(iii)    fraud or intentional misrepresentation with respect to any representations, warranties, or certifications made in the Loan Documents, or otherwise made by Borrower in connection with the loan evidenced by this Note;

(iv)    retention by Borrower of any rental income or other income arising with respect to any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents subsequent to the date of any notice of an Event of Default from Lender to Borrower, or which, under the terms of the Loan Documents, should otherwise have been paid to Lender;

(v)    all insurance proceeds, condemnation awards, or other similar funds or payments attributable to the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents that, by its terms, should have been paid to Lender or used in a manner contrary to the use made by Borrower;

(vi)    waste of the Property, or any other failure to maintain, repair, or restore any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents in accordance with the terms;

(vii)    the removal, demolition, damage, or destruction of any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents that is neither consented to in writing by Lender nor fully compensated for by insurance proceeds or condemnation awards;

(viii)    the consequences of the failure of the Loan Documents to constitute a first and prior lien or security interest, as applicable, on the Property or any other collateral pledged, encumbered, or otherwise covered, subject only to those exceptions, if any, permitted by any of the Loan Documents or otherwise approved in writing by Lender;

(ix)    the breach of any Environmental Provision (defined in the Deed of Trust); and

(x)    all legal costs and expenses reasonably incurred by Lender after the giving to Borrower of notice of the occurrence of an Event of Default, other than those customarily incurred by a lender in realizing on its lien in an uncontested foreclosure sale after an undisputed default.

(b)    Nothing in this paragraph will affect or limit the rights of Lender to enforce any of Lender's rights or remedies with respect to any portion of the Property or any other collateral pledged, encumbered, or otherwise covered by the Loan Documents.

(c)    Nothing in this paragraph will affect or limit the rights of Lender to proceed against any person or entity, including, without limitation, Borrower or any member of Borrower's board of directors or trustees with respect to the enforcement of any guarantees of payment, performance, and completion or other similar rights.

*BORROWER(S):*

M.R.R. FABRIC, INC.,
a California corporation

By: _____
Name: Raymond Arrehbori
Its: President

10/20/15

_____
RAYMOND ARREHBORI,
individually

10/20/15

_____
RABIN ARREHBORI,
individually



## CONTINUING SECURED GUARANTY

THIS CONTINUING SECURED GUARANTY ("Guaranty"), dated as of November 6, 2015, is made by **ARREHBORI FAMILY, LLC.,** a California Limited Liability company ("Guarantor") in favor of **MADISON TEX, INC., a California corporation,** and SIONIT NEMAN, an individual, and **MOHTERAM AZIM,** an individual (collectively referred to as "Lender").

### Recitals

A.   **M.R.R. FABRIC, INC., a California corporation,** and **RAYMOND ARREHBORI,** an individual, and **ROBIN ARREHBORI,** an individual (collectively, joint and severally referred to as "Borrower"), has obtained a Loan from Lender in the principal amount of **One Million Dollars ($1,000,000.00)** ("Loan"). The Loan is evidenced by a **PROMISSORY NOTE SECURED BY DEED OF TRUST** ("Note"), dated October 20, 2015, and executed by Borrower in favor of Lender, which loan was to be secured by, among other security, the **DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT** dated October 6, 2015 and executed on October 26, 2015 ("Original Deed of Trust"), by Borrower in favor of Lender, and covering the real property located at **237 S Wetherly Drive, Beverly Hills, California 90211** ("Property") and further described in the Original Deed of Trust. Collectively such documents are known as the "Loan Documents."

B.   However at the time of execution of the Original Deed of Trust, Borrowers **RAYMOND ARREHBORI,** an individual, and **ROBIN ARREHBORI,** an individual, without the knowledge of the Lender and in violation of the terms of the Original Deed of Trust, had executed a Grant Deed on  September 22, 2015 (said Grant Deed was recorded on September 30, 2015 as instrument number 20151213283 with the Los Angeles County Recorder's Office) transferring ownership of the Property from the Borrowers to the Guarantor **ARREHBORI FAMILY, LLC.,** (the "Transfer") an entity which is owned, controlled and managed by the Borrower.

C.   The Transfer referenced in section "B" above, negated the intention and purpose of the Original Deed of Trust in that the Lender was no longer able to create any security in or against the Property as a lienholder once the Transfer was completed;

D.   The Lender alleges that the Transfer is a fraudulent transfer orchestrated by the Borrowers to avoid the creation of any security against the Property by the Lender. Borrowers deny such fraudulent transfer. Therefore, the Lender has agreed to forbear suing the Borrowers and Guarantor (which is also the transferee of the Transfer) for Fraud, Intentional Misrepresentation, Fraudulent Transfer, Constructive Trust, and various other causes of action in exchange for the Guarantor to guaranty the Loan and securitize the Continuing Guaranty by executing a Deed of Trust, securitizing the Loan against the Property ("Consideration");



RA

E.      As a condition to forbear immediate litigation against the Borrower and Guarantor, the Lender has required that Guarantor execute and deliver this Guaranty along with a Deed of Trust.

Now, therefore, in consideration of the foregoing, as stated in the recitals above, receipt of which is hereby acknowledged, Guarantor hereby agrees as follows:

### Section 1. Secured Guaranty.

Guarantor absolutely and unconditionally guarantees the punctual payment when due, whether at stated maturity, by acceleration, or otherwise, of all obligations of Borrower now or later existing under the Loan Documents (defined in the Deed of Trust) whether for principal, interest, fees, expenses, or otherwise including, without limitation, all real property taxes and assessments affecting the Property, all costs and expenses, including insurance premiums, of maintaining in full force all policies of insurance required pursuant to the Deed of Trust, and all costs and expenses, including repair and maintenance costs, required in order to maintain the Property in the condition required under the Deed of Trust ("Obligations"). The terms "indebtedness" and "obligations" are used in their most comprehensive sense and include all debts, obligations, and liabilities of Borrower incurred or created, with or without notice to Guarantor, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, whether Borrower is liable individually or jointly with others, and whether recovery on any indebtedness or obligations is now or later becomes barred by any statute of limitations or is or later becomes otherwise unenforceable.

This Guaranty is secured by, among other things, the **DEED OF TRUST, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (SECURING CONTINUING SECURED GUARANTY)** on the same date as this Guaranty, executed by Guarantor, as trustor, in favor of Lender, as beneficiary ("Deed of Trust"), and encumbering the real property located at 237 S Wetherly Drive, Beverly Hills, CA 90211 and more particularly described in the Deed of Trust ("Property"). The holder of this **CONTINUING SECURED GUARANTY** will be entitled to the benefits of the security provided by the Deed of Trust and will have the right to enforce the covenants and agreements of Guarantor contained in the Deed of Trust.

### Section 2. Guaranty Absolute.

(a)      Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms of the Loan Documents, regardless of any law, regulation, or order now or later in effect in any jurisdiction affecting any of the terms or the rights of Lender with respect to that. The liability of Guarantor under this Guaranty will be absolute and unconditional irrespective of:

(i)      any lack of validity or enforceability of any of the Loan Documents (or any other agreement or instrument relating to the Loan Documents);



(ii)     any change in the time, manner, or place of payment of, or in any other term of, any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the Loan Documents, including, without limitation, changes in the terms of disbursement of the Loan proceeds or repayment, modifications, extensions (including extensions beyond and after the original term), or renewals of payment dates, changes in interest rate, or the advancement of additional funds by Lender in its discretion;

(iii)    any exchange, release, or nonperfection of any collateral, or any release or amendment or waiver of or consent to departure from any other guaranty, for any of the Obligations; or

(iv)    any other circumstance that might otherwise constitute a defense available to, or a discharge of, Borrower in respect of the Obligations of Guarantor under this Guaranty.

(b)     Regardless of any termination of this Guaranty or the cancellation of the Note or any other agreement evidencing the Obligations, if at any time any payment of any of the Obligations (from any source) is rescinded, repaid, or must otherwise be returned by Lender due to the insolvency, bankruptcy, or reorganization of Borrower or Guarantor, or for any other circumstance, this Guaranty will continue to be effective or be reinstated, as the case may be, as though that payment had not been made.

### Section 3. Guaranty Independent; Waivers.

(a)     Guarantor agrees that:

(i)     the obligations under this Guaranty are joint and several and are independent of and in addition to the undertakings of Borrower pursuant to the Loan Documents, any evidence of indebtedness issued in connection with the Loan, any deed of trust or security agreement given to secure the Loan, any other guarantees given in connection with the Loan, and any other obligations of Guarantor to Lender;

(ii)    a separate action may be brought to enforce the provisions of this Guaranty whether Borrower is a party in any action or not;

(iii)   Lender may at any time, or from time to time, in its sole discretion:

(A) extend or change the time of payment or performance or the manner, place, or terms of payment or performance of any of the Obligations;

(B) exchange, release, or surrender any of the collateral security, or any part of it, by whomever deposited, which is now or may later be held



by Lender in connection with any of the Obligations;

(C) sell or purchase any of the collateral at public or private sale, or at any broker's board, in the manner permitted by law, and after all costs and expenses of every kind for collection, sale, or delivery, the net proceeds of any sale may be applied by Lender on any of the Obligations; and

(D) settle or compromise with Borrower, or any other person liable, any of the Obligations, or subordinate the payment of it, or any part of it, to the payment of any other debts or claims, that may at any time be due or owing to Lender or any other person or corporation; and

(iv) Lender will be under no obligation to marshal any assets in favor of Guarantor or in payment of any of the Obligations.

(b)     Guarantor waives:

(i) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of nonperformance, and any other notice with respect to any of the Obligations and this Guaranty, and promptness in commencing suit against any party, or in giving any notice to or making any claim or demand on Guarantor;

(ii) any right to require Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any remedy in Lender's power;

(iii) any defense based on any legal disability or other defense of Borrower, any other guarantor, or other person or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment of all sums payable under the Note and the performance of the other Obligations;

(iv) any defense based on any lack of authority of the officers, directors, partners, or agents purporting to act on behalf of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower;

(v) to the fullest extent permitted by law, all rights and benefits under Civ. Code § 2809 purporting to reduce a guarantor's obligations in proportion to the principal obligation;

(vi) any defense based on the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Guarantor;

(vii) any defense it may acquire by reason of Lender's election of any remedy against it or Borrower or both, including, without limitation, election by Lender to exercise its rights under the power of sale in the Deed of Trust and the consequent loss by Guarantor of the right to recover any deficiency from Borrower;



(viii) any defense based on Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay all sums payable under the Note or any of the other Obligations;

(ix) any defense based on any statute or rule of law that provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal;

(x) any defense based on Lender's election, in any proceeding instituted under the Federal Bankruptcy Code, of the application of Section 1111 subd. (b)(2) of the Federal Bankruptcy Code or any successor statute;

(xi) any defense based on any borrowing or any grant of a security interest under § 364 of the Federal Bankruptcy Code;

(xii) any right of subrogation, contribution, or reimbursement against Borrower, any right to enforce any remedy that Lender has or may in the future have against Borrower, any other right that Lender may now or later acquire against Borrower that arises from the existence or performance of Guarantor's obligations under this Guaranty or would arise with respect to the Obligations, and any benefit of, and any right to participate in, any security for the Obligations now or in the future held by Lender;

(xiii) the benefit of any statute of limitations affecting the liability of Guarantor or the enforcement of the Guaranty, including, without limitation, any rights arising under Code Civ. Proc. § 359.5; and

(xiv) to the fullest extent permitted by law, all rights and benefits under Code Civ. Proc. § 580a, purporting to limit the amount of any deficiency judgment that might be recoverable following the occurrence of a trustee's sale under a deed of trust; Code Civ. Proc. § 580b, stating that no deficiency may be recovered on a real property purchase money obligation; and Code Civ. Proc. § 580d, stating that no deficiency may be recovered on a note secured by a deed of trust on real property in case the real property is sold under the power of sale contained in the deed of trust, if those statutory sections have any application.

Guarantor agrees that the payment of all sums payable under the Note or any of the other Obligations or any other act that tolls any statute of limitations applicable to the Note or the other Obligations will similarly operate to toll the statute of limitations applicable to Guarantor's liability. Without limiting the generality of the foregoing or any other provision of this Guaranty, Guarantor expressly waives all benefits that might otherwise be available to Guarantor under Civ. Code §§ 2809, 2810, 2819, 2839, 2845, 2849, 2850, 2899, and 3433, Code Civ. Proc. §§ 580a, 580b, 580d, and 726, or similar sections.



(c)     Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Code Civ. Proc. § 580d or otherwise. Furthermore, Guarantor understands and acknowledges that if Bank forecloses judicially or nonjudicially against any real property security for the Loan, that foreclosure could impair or destroy any ability that Guarantor may have to seek reimbursement, contribution, or indemnification from Borrower or others based on any right Guarantor may have of subrogation, reimbursement, contribution, or indemnification for any amounts paid by Guarantor under this Guaranty. Guarantor further understands and acknowledges that in the absence of this provision, the potential impairment or destruction of Guarantor's rights, if any, may entitle Guarantor to assert a defense to this Guaranty based on Code Civ. Proc. § 580d, as interpreted in Union Bank v. Gradsky, 265 Cal. App. 2d 40, 71 Cal. Rptr. 64 (2d Dist. 1968). By executing this Guaranty, Guarantor freely, irrevocably, and unconditionally:

(i) waives and relinquishes that defense, and agrees that Guarantor will be fully liable under this Guaranty even though Bank may foreclose judicially or nonjudicially against any real property security for the Loan;

(ii) agrees that Guarantor will not assert that defense in any action or proceeding that Bank may commence to enforce this Guaranty;

(iii) acknowledges and agrees that the rights and defenses waived by Guarantor under this Guaranty include any right or defense the Guarantor may have or be entitled to assert based upon or arising out of any one or more of Code Civ. Proc. §§ 580a, 580b, 580d, or 726, or Civ. Code § 2848; and

(iv) acknowledges and agrees that Bank is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration that Bank is receiving for making the Loan.

### Section 4. Does Not Supersede Other Guarantees.

The obligations of Guarantor will be in addition to any obligations of Guarantor under any other guarantees of the Obligations or any obligations of Borrower or any other persons or entities previously given or later to be given to Lender, and this Guaranty will not affect or invalidate any other guarantees. The liability of Guarantor to Lender will at all times be deemed to be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guarantees previously or later given by Guarantor to Lender.



## Section 5. Representations and Warranties.

Guarantor represents and warrants as follows:

### (a) Power and Authority.

(i)    Guarantor has the requisite power and authority to execute and deliver this Guaranty, and thus, even if the guaranty is not enforceable as a contract, it may be enforceable on a theory of equitable estoppel.

(ii) Guarantor is a California Limited Liability company organized, validly existing in good standing under the laws of the jurisdiction of its organization, and qualified to do business in California.

### (b) Validity of Guaranty.

(i)    The execution, delivery, and performance by Guarantor of this Guaranty are within the power of Guarantor, have been duly authorized by all requisite corporate or partnership action, as appropriate, have received all necessary governmental approval, and will not violate any provision of law, any order of any court or agency of government, the Articles of Organization and Operating Agreement of Guarantor, or any indenture, agreement, or any other instrument to which Guarantor is a party or by which Guarantor or its property is bound, or be in conflict with, result in a breach of, or constitute (with due notice and lapse of time) a default under any indenture, agreement, or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature on any of its property or assets, except as contemplated by the provisions of the Loan Documents.

(ii)    This Guaranty, when delivered to Lender, will constitute a legal, valid, and binding obligation enforceable against Guarantor in accordance with its terms.

### (c) Financial Statements.

(i)    All financial statements and data that have been given to Lender by Guarantor with respect to Guarantor:

(A)    are complete and correct in all material respects as of the date given;

(B)    accurately present the financial condition of Guarantor on each date as of which and the results of Guarantor's operations for the periods for which they have been furnished; and

(C)    have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(ii)    All balance sheets and the notes that Guarantor furnished to Lender disclose all material liabilities of Guarantor, fixed and contingent, as of their respective dates.



Page **7** of **13**

(iii)    There has been no adverse change in the financial condition or operations of Guarantor since:

(A)    the date of the most recent financial statement given to Lender with respect to Guarantor; or

(B)    the date of the financial statement given to Lender immediately prior to the date of this Guaranty, other than changes in the ordinary course of business, none of which have been materially adverse individually or in the aggregate.

### Other Arrangements.

(d)    Other Arrangements. Guarantor is not a party to any agreement or instrument materially and adversely affecting Guarantor's present or proposed business, properties, or assets, or operations or conditions (whether financial or otherwise); and Guarantor is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions in any agreement or instrument to which Guarantor is a party.

### Other Information.

(e)    Other Information. All other reports, papers, and written data and information given to Lender by Guarantor with respect to Guarantor are accurate and correct in all material respects and complete insofar as completeness may be necessary to give Lender a true and accurate knowledge of the subject matter.

### Litigation.

(f)    Litigation. There is not now pending against or affecting Guarantor, nor to the knowledge of Guarantor is there threatened, any action, suit, or proceeding at law or in equity or by or before any administrative agency that, if adversely determined, would materially impair or affect the financial condition or operations of Guarantor.

### Taxes.

(g)    Taxes. Guarantor has filed all federal, state, provincial, county, municipal, and other income tax returns required to have been filed by Guarantor and has paid all taxes that have become due pursuant to the returns or pursuant to any assessments received by Guarantor, and Guarantor does not know of any basis for any material additional assessment against it in respect of those taxes.

### Section 6. Affirmative Covenants.

Guarantor covenants and agrees that, so long as any part of the Indebtedness (defined in the Deed of Trust) remains unpaid, Guarantor will do the following, unless Lender otherwise consents in writing:



### Taxes Affecting Guarantor.

(a)     Taxes Affecting Guarantor. File all federal, state, provincial, county, municipal, and other income tax returns required to be filed by it and pay, before they become delinquent, all taxes that become due pursuant to those returns or pursuant to any assessments received by it.

### Compliance with Law.

(b)     Compliance with Law. Promptly and faithfully comply with all laws, ordinances, rules, regulations, and requirements, both present and future, of every governmental authority or agency having jurisdiction that may be applicable to it.

### Books and Records.

(c)     Books and Records. Maintain complete books of accounts and other records reflecting the results of its operations, in a form reasonably satisfactory to Lender, and furnish to Lender any information about the financial condition of Guarantor that Lender reasonably requests, including, but not limited to, the following information, which will be furnished without request:

(i)     immediately on availability, but in any case not later than sixty (60) days after the close of each fiscal year of Guarantor:

(A) a balance sheet of Guarantor as at the close of the fiscal year of Guarantor, and

(B) statements of income and expense and change in financial condition of Guarantor for the fiscal year (each will set forth in comparable form the corresponding figures of the previous period, will be in reasonable detail, and will be certified by the chief financial officer of Guarantor); and

(ii) any other information or data that Lender may reasonably request.

Lender will have the right, at all reasonable times and on reasonable notice, to audit (at Guarantor's sole cost and expense) Guarantor's books of account and records, all of which will be made available to Lender or Lender's representatives for that purpose, from time to time, on Lender's request.

### Section 7. Amendments or Waiver.

No amendment or waiver of any provision of this Guaranty or consent to any departure from any provision by Guarantor will be effective unless it is in writing and signed by Lender, and then the waiver or consent will be effective only in the specific instance and for the specific purpose for which it is given. No notice to or demand on Guarantor will in any case entitle it to any other or further notice or demand in similar or other circumstances.



### Section 8. Notices.

All notices that may be required or otherwise provided for or contemplated under the terms of this Guaranty for any party to serve on or give to any other, will, whether so stated, be in writing, and if not in writing, will not be deemed to have been given, and be either personally served or sent with return receipt requested by registered or certified mail with postage prepaid (including registration or certification charges) in a securely enclosed and sealed envelope, sent to the following addresses:

| | |
|---|---|
| If to Guarantor: | ARREHBORI FAMILY, LLC., a California Limited Liability company 237 S. Wetherly Drive, Beverly Hills, CA 90211 |
| If to Lender: | MADISON TEX, INC., a California corporation, and SIONIT NEMAN, an individual, and MOHTERAM AZIM, an individual 1818 Pelham Avenue, Apt. 107, Los Angeles, CA 90024 |

These addresses may be changed from time to time by written notice to the other parties given in the same manner. Any matter served on or sent to Guarantor or Lender in this manner will be deemed sufficiently given for all purposes on the date three (3) days following the date it was deposited in a United States Post Office, except that notices of changes of address will not be effective until actual receipt.

### Section 9. No Waiver; Remedies.

No failure on the part of Lender to exercise and no delay in exercising any right or remedy will operate as a waiver; nor will Lender be estopped to exercise any right or remedy at any future time because of any failure or delay; nor will any single or partial exercise of any right or remedy preclude any other or further exercise or the exercise of any other right or remedy. The remedies provided are cumulative and not exclusive of any remedies provided by law.

### Section 10. Right of Setoff.

Lender is authorized at any time and from time to time, without notice to Guarantor (any notice being expressly waived by Guarantor), to set off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by Lender to or for the credit or the account of Guarantor against any of the obligations of Guarantor now or later existing under this



Guaranty. Lender agrees promptly to notify Guarantor after any setoff and application, provided that the failure to give notice will not affect the validity of the setoff and application. The rights of Lender under this section are in addition to other rights and remedies (including, without limitation, other rights of setoff) that Lender may have.

### Section 11. Continuing Guaranty; Transfer of Note.

This Guaranty is a continuing guaranty and will:

(a)    subject to the provisions of section 2(b), remain in full force and effect until payment in full of the indebtedness and the Obligations and all other amounts payable under this Guaranty;

(b)    be binding on Guarantor; and

(c)    inure to the benefit of and be enforceable by Lender and its successors, transferees, and assigns.

Without limiting the generality of the subsection 11(c), Lender may assign or otherwise transfer the Loan Documents to any other Person (defined in the Deed of Trust), and that other Person will become vested with all the rights granted to Lender.

### Section 12. Subordination.

Any indebtedness of Borrower now or later held by Guarantor is subordinated to the indebtedness of Borrower to Lender, and any indebtedness of Borrower to Guarantor will, if Lender requests, be collected, enforced, and received by Guarantor as trustee for Lender and be paid over to Lender, but without reducing or limiting in any manner the liability of Guarantor under the other provisions of this Guaranty.

### Section 13. No Duty.

Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment of the Obligations, and agrees that Lender will have no duty to advise Guarantor of any information known to Lender regarding any financial condition or circumstances.

### Section 14. Bankruptcy of Borrower.

Regardless of any modification, discharge, or extension of the Obligations or any amendment, modification, stay, or cure of Lender's rights that may occur in any bankruptcy or reorganization case or proceeding concerning Borrower, whether permanent or temporary and whether assented to by Lender, Guarantor agrees that it



will be obligated to pay and perform the Obligations and discharge its other obligations in accordance with the terms of the Obligations and the terms of this Guaranty in effect on the date of this Guaranty. Guarantor understands and acknowledges that by virtue of this Guaranty, it has specifically assumed all risks of a bankruptcy or reorganization case or proceeding with respect to Borrower. As an example, and not in any way of limitation, a subsequent modification of the Obligations in any reorganization case concerning Borrower will not affect the obligation of Guarantor to perform the Obligations in accordance with their original terms.

### Section 15. Entire Agreement.

This Guaranty is intended as a final expression of this agreement of guaranty and is intended also as a complete and exclusive statement of the terms of this agreement. No course of prior dealings between Guarantor and Lender, no usage of the trade, and no parol or extrinsic evidence of any nature will be used or will be relevant to supplement, explain, contradict, or modify the terms or provisions of this Guaranty.

### Section 16. Governing Law.

This Guaranty will be governed by and construed in accordance with the laws of California.

### Section 17. Attorneys' Fees.

Guarantor agrees to pay all costs, including, without limitation, attorneys' fees and expenses, incurred by Lender in enforcing the terms of this Guaranty, whether or not suit is filed. Guarantor agrees to indemnify and hold Lender harmless from all liability, loss, damage, or expense (including, without limitation, attorneys' fees) that it may incur under this Guaranty, or in connection with the making of any of the loans or financial arrangements guaranteed by this Guaranty, the enforcement of any of Lender's rights or remedies, any action taken by Lender under this Guaranty, or by reason or in defense of any claims and demands that may be asserted against Lender arising out of the Collateral.

### Section 18. Miscellaneous.

(a)     Time is of the essence.

(b)     The obligations and promises will be joint and several undertakings of each of the Persons executing this Guaranty, and Lender may proceed against any one or more of those Persons without waiving its right to proceed against any of the others.

(c)     Any married person who signs this instrument expressly agrees that recourse may be had against his or her separate property for all of her or his obligations



under this Guaranty.

(d)     If any term, provision, covenant, or condition or any application is held by a court of competent jurisdiction to be invalid, void, or unenforceable, all provisions, covenants, and conditions and all applications not held invalid, void, or unenforceable will continue in full force and will in no way be affected.

(e)     This Guaranty may be executed in any number of counterparts and by different parties in separate counterparts, each of which when executed and delivered will be deemed to be an original, and all counterparts taken together will constitute one and the same instrument.

(f)     Section headings in this Guaranty are included for convenience of reference only and do not constitute a part of this Guaranty for any other purpose.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Guaranty as of the date first above written.

*GUARANTOR:*

**ARREHBORI   FAMILY,   LLC.,   a**
California Limited Liability company

By: _____
Name: Raymond Arrehbori
Its:  Manger and Member

By: _____  11/13/15
Name: Robin Arrehbori
Its:  Manger and Member

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of __LOS ANGELES_____)

On __NOVEMBER 12, 2015_____ before me, __GUADALUPE CABELLO, NOTARY PUBLIC__
                                                    (insert name and title of the officer)

personally appeared __RAYMOND ARREHBORI---------------------------__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

GUADALUPE CABELLO
COMM. #1997177
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires NOV 4, 2016

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _LOS ANGELES_____)

On _NOVEMBER 13, 2015_____ before me, GUADALUPE CABELLO, NOTARY PUBLIC
                                         (insert name and title of the officer)

personally appeared _RABIN ARREHBORI------------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

GUADALUPE CABELLO
COMM. #1997177
NOTARY PUBLIC•CALIFORNIA
LOS ANGELES COUNTY
My Comm Expires NOV 4, 2016





**This page is part of your document - DO NOT DISCARD**



## 20151213283



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/30/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



201509301130002

**00011195577**



007108529

**SEQ:**
**24**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T80

NATIONS TITLE COMPANY OF CA
*1587967*

**RECORDING REQUESTED BY:**

Order No. 01587967-RB3
Escrow No. 10076-LVG
Parcel No. 4331-024-010
**AND WHEN RECORDED MAIL TO:**
ARREHBORI FAMILY, LLC
237 SOUTH WETHERLY DRIVE
BEVERLY HILLS, CA 90211

09/30/2015
*20151213283*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS **$0.00** and CITY **$0.00**
THE GRANTORS AND THE GRANTEES IN THIS CONVEYANCE ARE COMPRISED OF THE SAME PARTIES WHO CONTINUE
TO HOLD THE SAME PROPORTIONATE INTEREST IN THE PROPERTY, R & T 11925(D)

☐ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area:        ☐ **Beverly Hills, and**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Rabin Arrehbori, a married man as his
sole and separate property, as to an undivided ½ interest; and Raymond Arrehbori, a single man as his sole and
separate property, as to an undivided ½ interest; as tenants in common**

hereby GRANT(S) to   **Arrehbori Family, LLC A California Limited Liability Company**

the following described real property in the County of **Los Angeles**, State of California:
Lot 699, of Tract No. 6380, in the City of Beverly Hills, County of Los Angeles, State of California, as per Mao recorded in
Book 69 Pages 11 to 20 inclusive of Maps in the Office of the County Recorder of said County.
More commonly known as: **237 South Wetherly Drive, Beverly Hills, CA  90211**

Date    September 22, 2015

Borrower's Signature

_____            _____
Rabin Arrehbori                    Raymond Arrehbori,

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_   } S.S.

On _September 22, 2015_ ,before me, _Lea L. Levy, Notary Public_ ,
personally appeared _Rabin Arrehbori and Raymond Arrehbori_ who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature _____     (Seal)



LEA L. LEVY
Commission # 2088410
Notary Public - California
Los Angeles County
My Comm. Expires Nov 28, 2018

Mail Tax Statements to: SAME AS ABOVE or Address Noted Below





This page is part of your document - DO NOT DISCARD

## 20160161809





Pages:
0037

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

02/12/16 AT 08:00AM

| | |
|---|---|
| FEES: | 184.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 184.00 |



LEADSHEET



201602120250005

00011712211

007379040

SEQ:
01

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T97

2

Recording Requested by:

NEXTITLE

When recorded mail to:



George Washington Lending, Inc.
660 Sacramento Street Suite 201
San Francisco, CA 94111

<u>Deed of Trust</u>
*(Title on Document)*

19

3

WHEN RECORDED, RETURN TO:
C/O George Washington Lending Inc.
660 Sacramento Street Suite 201
San Francisco, CA 94111

APN: 4331-024-010

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT
*(Commercial)*

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of 02/01/2016, among Arrehbori Family LLC., a(n) California Limited Liability Company as trustor ("Borrower"), whose address is 2826 E 12th Street, Los Angeles CA 90023; iClose Escrow, as trustee ("Trustee"); and Maximus Lending Fund IV LLC., a(n) California Limited Liability Company, as beneficiary ("Lender"), whose address is C/O George Washington Lending Inc., 660 Sacramento Street Suite 201 San Francisco, CA 94111.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY

---

© 2007 Geraci Law Firm, All Rights Reserved.

1

Borrower Initials

Rev 07/07

4

OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN
DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND

© 2007 Geraci Law Firm; All Rights Reserved.

1

Borrower Initials                              Rev. 07/07

OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**1. Definitions.**  For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

    **1.1.**    "**Attorney Fees.**"    Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

    **1.2.**    "**Borrower.**"   The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

    **1.3.**    "**Default Rate.**"  The Default Rate as defined in the Note.

    **1.4.**    "**Event of Default.**" An Event of Default as defined in paragraph 19 of this Deed of Trust.

    **1.5.**    "**Environmental Laws.**"    Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

    **1.6.**    "**Fixtures.**"  All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    **1.7.**    "**Governmental Authority.**"  Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

    **1.8.**    "**Governmental Requirements.**"  Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

    **1.9.**    "**Hazardous Substance.**"  Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the

© 2007 Geraci Law Firm; All Rights Reserved.

2

RA  RA  Borrower Initials

Rev. 07/07

California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

    **1.10.** "**Impositions.**" All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

    **1.11.** "**Improvements.**" Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

    **1.12.** "**Indebtedness.**" The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

        1.12.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

        1.12.2. This Deed of Trust and all other Loan Documents;

        1.12.3. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

        1.12.4. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

        1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

    **1.13.** "**Land.**" The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

    **1.14.** "**Leases.**" Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

---

3

© 2007 Geraci Law Firm; All Rights Reserved.
Rev. 07/07

Borrower Initials

1

**1.15.   "Legal Requirements."** Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16.   "Lender."** The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17.   "Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18.   "Loan Documents."** Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19.   "Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as 237 S Wetherly Drive, Beverly Hills CA 90211

together with:

1.19.1.  All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.19.2.  All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.19.3.  All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

---

4

© 2007 Geraci Law Firm, All Rights Reserved.

RA RA Borrower Initials

Rev. 07/07

1.19.4.  Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.19.5.  All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.19.6.  All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.19.7.  Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.19.8.  If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9.  All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

1.19.10.  All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.19.11.  All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

---

5

© 2007 Geraci Law Firm; All Rights Reserved.

Borrower Initials

Rev 07/07

1.19.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.19.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.19.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.19.15. All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.20.** **"Note."** The Promissory Note payable by Borrower to the order of Lender in the principal amount of One Million Five Hundred Seventy Five Thousand and 00 /100 dollars ($1,575,000.00) which matures on 09/01/2016, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.21.** **"Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

**1.22.** **"Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

**1.23.** **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.24.** **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or

6

© 2007 Geraci Law Firm, All Rights Reserved.                                    Rev. 07/07
Borrower Initials

10

Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

    **1.25.** "**Rents.**" All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

    **1.26.** "**Water Rights.**" All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

    Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2.**     **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

7

© 2007 Geraci Law Firm, All Rights Reserved.      RA  RA Borrower Initials      Rev 07/07

**3.    Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise consents in writing, Borrower shall not allow changes in the use of the Mortgaged Property from that which is contemplated by Borrower and Lender at the time of execution of this Deed of Trust, as specified in the loan application and the Loan Documents. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.    Insurance.**

    **4.1.    Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

        4.1.1.    Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9 of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

        4.1.2.    Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

        4.1.3.    Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

        4.1.4.    Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

        4.1.5.    During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

        4.1.6.    Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

    **4.2.    Liability Insurance.** Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $5,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

    **4.3.    Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

---

8

© 2007 Geraci Law Firm, All Rights Reserved.          Rev. 07/07
                                          Borrower Initials

**4.4.    Form of Policies.** All insurance required under this paragraph 4 shall be fully paid for and non-assessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least _ _[e.g., 30 days]_ _ prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.    Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**4.6.    Increased Coverage.** If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.    No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8.    Transfer of Title.** In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.    Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.    Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.    Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its

9

© 2007 Geraci Law Firm; All Rights Reserved.

RA RA
Borrower Initials

Rev. 07/07

13

possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.   Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender, so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.    Condemnation and Insurance Proceeds.**

**5.1.    Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $5,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**5.2.    Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

5.2.1. Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property

© 2007 Geraci Law Firm; All Rights Reserved   RA RA \Borrower Initials   Rev 07/07

shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

      5.2.2.  If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

      **5.3.**    <u>**Material Loss Not Covered.**</u>  If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

      **5.4.**    <u>**Total Condemnation Payments.**</u>  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

      **5.5.**    <u>**Partial Condemnation Payments.**</u>  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds.  The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled

© 2007 Geraci Law Firm; All Rights Reserved.        RA  RA Borrower Initials     Rev. 07/07



by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

**5.6.    No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.    Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this paragraph 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7.    Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion,

© 2007 Geraci Law Firm, All Rights Reserved


Borrower Initials

Rev. 07/07

16

shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

**8.     Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**9.     Funds for Taxes and Insurance.** If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it

13

© 2007 Geraci Law Firm; All Rights Reserved

RA RA Borrower Initials

Rev. 07/07

to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

10.    **Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

11.    **Defense of Deed of Trust; Litigation.**  Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of

14

© 2007 Geraci Law Firm; All Rights Reserved.

Borrower Initials

the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, non-judicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

12.    **Borrower's Failure to Comply With Deed of Trust.**  If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or non-judicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.    **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.**  At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14.    **Inspection of Mortgaged Property.**  In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15.    **Financial Statements; Estoppel Certificates.**

© 2007 Geraci Law Firm; All Rights Reserved.   RA RA Borrower Initials   Rev. 07/07

19

**15.1.    Borrower's Financial Statements.**  On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

**15.2.    Recordkeeping.**  Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

**15.3.    Guarantors' Financial Statements.**  Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted accounting principles and practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

**15.4.    Estoppel Certificates.**  Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and,

---

16

© 2007 Geraci Law Firm; All Rights Reserved

RA  RA
_____  Borrower Initials

Rev. 07/07

*20*

except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

**15.5.    Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

**15.6.    Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

**15.7.    No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**16.    Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the California Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

**17.    Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

---

17

© 2007 Geraci Law Firm; All Rights Reserved.

PA RA Borrower Initials

Rev. 07/07

21

18.    **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19.    **Events of Default.** The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1.    **Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2.    **Performance of Obligations.** The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required, and the continuance of such failure for 90 days after Lender gives written notice of such failure to Borrower.

19.3.    **Judgment.** If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.    **Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.    **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 90 days after its entry.

19.6.    **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 60 days after institution of such foreclosure proceedings.

19.7.    **Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

19.8.    **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first and prior lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

19.9.    **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

19.10.    **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 60 days after such levy.

18

© 2007 Geraci Law Firm; All Rights Reserved.

RA RA
___ Borrower Initials

Rev. 07/07

22

**19.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12.** **Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**20.** **Acceleration on Transfer or Encumbrance.**

**20.1.** **20.1. Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, conveys, assigns or otherwise transfers (a) all or any part of the Property, (b) any interest in the Property, or (c) all or substantially all of the beneficial interest of Borrower (which shall include, without limitation, a sale or other transfer of twenty-five percent (25%) or more of the shares of Borrower if Borrower is a corporation, and a sale or other transfer of twenty-five percent (25%) or more of the general partners' interests in Borrower if Borrower is a partnership), whether any such sale, conveyance, assignment or other transfer occurs directly or indirectly, voluntarily or involuntarily or by operation of law, without the prior written consent of Lender (which may be withheld in Lender's sole and absolute discretion), then Lender may elect, in its sole and absolute discretion, to accelerate the Maturity Date and declare the entire unpaid principal, accrued interest and other sums due hereunder to be immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**20.2.** **Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

**20.3.** **Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21.** **Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and
election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may

© 2007 Geraci Law Firm. All Rights Reserved.                                                                      Rev. 07/07

_RA_  _RA_  Borrower Initials

23

determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows:  (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

**22.    Obligation to Notify Lender of Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in paragraphs 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

**23.    Waiver of Marshaling.**  Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24.    Environmental Matters.**

    **24.1.    Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

        24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

        24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

---

20

© 2007 Geraci Law Firm; All Rights Reserved

RA RA Borrower Initials

Rev. 07/07

24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

**24.2.    Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**24.3.    Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4.    Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5.    Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost,

---

21

© 2007 Geraci Law Firm; All Rights Reserved    RA  RA  Borrower Initials    Rev. 07/07

expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.      Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26.      Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

**27.      Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

**28.      Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

© 2007 Geraci Law Firm; All Rights Reserved.      Borrower Initials      Rev. 07/07

26

**29.    No Waiver by Lender.**  No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

**30.    Consents and Modifications; Borrower and Lien Not Released.**  Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

---

23

© 2007 Geraci Law Firm; All Rights Reserved.

RA  RA Borrower Initials

Rev. 07/07

*21*

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**31.    Waiver of Right of Offset.**  No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

**32.    Future Advances.**  On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s) are secured by this Deed of Trust.

**33.    Prepayment.**  If the Note secured by this Deed of Trust provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

**34.    Additional Borrower Representations.**  To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

**34.1.    Capacity.**  Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

**34.2.    Authority and Enforceability.**  Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and

---

24

© 2007 Geraci Law Firm, All Rights Reserved
Rev. 07/07

Borrower Initials

the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

**34.3.**    **Compliance With Other Instruments.** The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

**34.4.**    **Compliance With Law.** The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

**34.5.**    **Material Adverse Events.** Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially affected adversely affected in any way.

**34.6.**    **Litigation.** There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

**34.7.**    **No Untrue Statements.** All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**34.8.**    **Policies of Insurance.** Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

**34.9.**    **Financial Statements.** All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

**34.10.**    **Water Rights.** (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances

25

© 2007 Geraci Law Firm, All Rights Reserved.

Borrower Initials

Rev. 07/07

except as set forth in the title report described in paragraph 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11.   Taxes.**  Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12.   Leases.**  If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13.   Further Acts.**  Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14.   Filing Fees.**  Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15.   Entity Compliance.**  As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35.   Governing Law.**  This instrument shall be deemed to have been made in the State of California, and the validity of this Deed of Trust and the other Loan Documents, their construction, interpretation, and enforcement, and the parties' rights under such documents and concerning the Mortgaged Property, shall be decided under, governed by, and construed in accordance with the laws of the State of California. The parties agree that all actions or proceedings arising in connection with this Deed of Trust and the other Loan Documents shall be tried and litigated only in the state courts located in the Los Angeles County, California, or the applicable federal district court that covers said county. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

**36.   Taxation of Deeds of Trust.**  In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged

© 2007 Geraci Law Firm, All Rights Reserved.            Rev. 07/07
Borrower Initials

30

Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37.    Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**38.    Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person who is or may be entitled to any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

**39.    Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**40.    Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

|  |  |
|---|---|
| Lender: | Maximus Lending Fund IV LLC.<br>660 Sacramento Street 201<br>San Francisco CA 94111 |
| Borrower: | Arrehbori Family LLC.<br>2826 E 12th Street<br>Los Angeles CA 90023 |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

---

27

© 2007 Geraci Law Firm; All Rights Reserved.

RA  RA  Borrower Initials

Rev. 07/07

31

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

**41.    Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

**42.    Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**43.    Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**44.    Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

**45.    Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**46.    Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**47.    General Provisions.**

    **47.1.    Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

    **47.2.    Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

    **47.3.    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

    **47.4.    Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

    **47.5.    Captions.** Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

    **47.6.    Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such

---

28

© 2007 Geraci Law Firm; All Rights Reserved.

Borrower Initials

Rev. 07/07

nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48.    Leasehold Provisions.**

   **48.1.    Leasehold Estate.** If the security for this Deed of Trust is a leasehold estate demised by a lease (the "Leasehold"), this Deed of Trust shall be a lien on all present and future right, title, estate, and interest of Borrower in the Mortgaged Property and Improvements covered by the Leasehold and on all Mortgaged Property interests acquired by Borrower as a result of the exercise of any option in the Leasehold or as amended, in the same manner and to the same extent as if the Mortgaged Property encompassed in the Leasehold and option agreements had been held in fee by Borrower at the time of the execution of this Deed of Trust, and Borrower agrees not to amend, change, or modify its leasehold interest, or any of its terms, or to exercise any option to purchase, or agree to do so, without having obtained Lender's prior written consent. In a violation of this provision, Lender may, at its option, declare all sums secured by this Deed of Trust immediately due and payable. Consent to any amendment, change, or modification, or a waiver of the right to require such consent in one instance, shall not be a waiver of the right to require such consent at a subsequent time. The term "Mortgaged Property" as used in this Deed of Trust means such leasehold estate or any other present or future interest of Borrower in the Mortgaged Property whenever the context requires.

   **48.2.    Compliance With Leasehold.** In the event that the security for this Deed of Trust is a leasehold estate, Borrower covenants and agrees as follows: (a) to promptly and faithfully observe, perform, and comply with all Leasehold terms, covenants, and provisions on its part to be observed, performed, and complied with, at the times set forth in the Leasehold; (b) not to do, permit, suffer, or refrain from doing anything, as a result of which, there would be a default under or breach of any of the terms of the Leasehold; (c) not to cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the terms of the Leasehold; (d) to give Lender immediate notice of any default by anyone under the Leasehold and to promptly deliver to Lender copies of each notice of default and all other notices, communications, plans, specifications, and other similar instruments received or delivered by Borrower in this connection; (e) to furnish to Lender such information and evidence as Lender may reasonably require for Borrower's due observance, performance, and compliance with the Leasehold terms, covenants, and provisions; (f) that any default of the tenant under the Leasehold shall constitute an Event of Default under this Deed of Trust; and (g) to give immediate written notice to Lender of the commencement of any remedial proceedings under the Leasehold by any party to it and, if required by Lender, to permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings. Borrower expressly transfers and assigns to Lender the benefit of all covenants in the Leasehold, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants or any other covenants in the Leasehold.

   **48.3.    Borrower's Warranties and Representations.** With respect to the Leasehold, Borrower warrants and represents as follows: (a) the Leasehold is in full force and effect, unmodified by any writing or otherwise, except as specifically set forth in Exhibit B; (b) all rent, additional rent, and other charges reserved in the Leasehold have been paid to the extent they are payable to the date of this Deed of Trust; (c) Borrower enjoys the quiet and peaceful possession of the Mortgaged Property demised by the Leasehold; (d) Borrower is not in default under any Leasehold term and, to the best of its knowledge, there are no circumstances that, with the passage of time or the giving of notice or both, would constitute an Event of Default under the Leasehold; (e) to the best of Borrower's knowledge, the landlord under the Leasehold is not in default under any Leasehold term or provision the landlord is required to observe or perform

   **48.4.    Assignments to Lender.** If Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency, moratorium law, or any other law or laws for the relief of or relating to debtors, on demand by Lender, Borrower covenants to transfer and assign to Lender its

---

29

© 2007 Geraci Law Firm, All Rights Reserved.

Borrower Initials

Rev 07/07

33

leasehold estate and the Leasehold in lieu of rejection of the Leasehold by Borrower and covenants to assign to Lender its right to accept or reject the Leasehold and to apply for any extension of time within which to accept or reject the Leasehold. These assignments to Lender shall be automatic on Lender's demand. If Lender demands the assignment of the Leasehold under this Deed of Trust, Lender covenants to cure any defaults outstanding under the Leasehold after the Leasehold is assigned to Lender.

    **48.5.**   **Default Under Leasehold.** If Borrower defaults in performing any of its obligations under the Leasehold, including, without limitation, any default in the payment of rent and other charges and impositions made payable by the tenant under the Leasehold, then, in each and every case, Lender may, at its option and without notice, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of Borrower under the Leasehold in the name of and on behalf of Borrower. Borrower shall, on demand, reimburse Lender for all advances made and expenses incurred by Lender in curing any such default (including, without limitation, reasonable Attorney Fees), together with interest computed at the rate provided for in the Note from the date that an advance is made or expense is incurred, to and including the date the same is paid. Lender shall have no duty to prevent the termination of the leasehold estate by the landlord. If the landlord terminates the leasehold estate, Lender shall have the right, at its option, to declare all sums secured by this Deed of Trust immediately due and payable and immediately bring an action on the Note, provided there is no other real property security for the Note.

    **48.6.**   **Options.** Borrower shall give Lender notice of its intention to exercise each and every option to extend the term of the Leasehold at least 20 days but not more than 60 days before expiration of the time to exercise such option under the Leasehold. If Borrower intends to extend the term of the Leasehold, it shall deliver to Lender, with the notice of such decision, a copy of the notice of extension delivered to the landlord under the Leasehold. If Borrower does not intend to extend the term of the Leasehold, Lender may, at its option, exercise the option to extend in the name and on behalf of Borrower.

    **48.7.**   **No Merger/Attorney-in-Fact.** It is hereby agreed that the fee title, the leasehold estate, and the subleasehold estate in the Mortgaged Property demised by the Leasehold shall not merge but shall be kept separate and distinct, despite the union of these estates in either the landlord under the Leasehold, Borrower, or a third party, whether by purchase or otherwise. If Borrower acquires the fee title or any other estate, title, or interest in the Mortgaged Property demised by the Leasehold or any part of it, the lien of this Deed of Trust shall attach to, cover, and be a lien on such acquired estate, title, or interest and it shall simultaneously be and become a part of the Mortgaged Property with the same force and effect as if specifically encumbered in this Deed of Trust. Borrower agrees to execute all instruments and documents that Lender may reasonably require to ratify, confirm, and further evidence Lender's lien on the acquired estate, title, or interest. Furthermore, Borrower appoints Lender as its true and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Borrower. This power, being coupled with an interest, shall be irrevocable as long as any amounts secured by this Deed of Trust remain unpaid.

    **48.8.**   **Interests in Successor Leasehold.** If the Leasehold is canceled or terminated, and if Lender or its nominee shall acquire an interest in any new lease of the Mortgaged Property demised by the Leasehold, Borrower shall have no right, title, or interest in or to the new lease or the leasehold estate created by such new lease.

    **48.9.**   **Estoppel Certificate.** Borrower shall use its best efforts to obtain and deliver to Lender, within 20 days after written demand by Lender, an estoppel certificate from the landlord under the Leasehold setting forth (a) the name of the tenant under the Leasehold, (b) that the Leasehold has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (c) the basic rent payable under the Leasehold, (d) the date to which the tenant paid all rental charges under the Leasehold, and (e) whether there are any alleged defaults of the tenant under the Leasehold and, if there are, setting forth their nature in reasonable detail.

    **48.10.**   **Limitations on Lender's Liability Under Leasehold.** Despite anything to the contrary in this Deed of Trust, this Deed of Trust shall not constitute an assignment of the Leasehold within the

30

© 2007 Geraci Law Firm, All Rights Reserved

Rev. 07/07

Borrower Initials

*34*

meaning of any provision of the Leasehold prohibiting its assignment, and Lender shall have no liability or obligation under the Leasehold because of its acceptance of this Deed of Trust. Lender shall be liable for the tenant's obligations arising under the Leasehold for only that period of time that Lender is in possession of the Mortgaged Property covered by the Leasehold or has acquired, by foreclosure or otherwise, and is holding all of Borrower's right, title, and interest in the Mortgaged Property covered by the Leasehold.

**49.     Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Trustor, Trustor agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Trustor agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**50.     Dispute Resolution: Waiver of Right to Jury Trial**

    **50.1     WAIVER OF RIGHT TO JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

                                    BORROWER'S INITIALS: _R A_

    **50.2     ARBITRATION.** TO THE EXTENT A PREDISPUTE WAIVER OF THE RIGHT TO TRIAL BY JURY IS NOT ENFORCEABLE UNDER APPLICABLE LAW, ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS ARISING OUT OF OR RELATING TO THIS DEED OF TRUST AND OTHER LOAN DOCUMENTS OR TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING, WITHOUT LIMITATION, THE MAKING, PERFORMANCE, OR INTERPRETATION OF THIS DEED OF TRUST OR OTHER LOAN DOCUMENTS, SHALL BE RESOLVED BY BINDING ARBITRATION. UNLESS OTHERWISE AGREED ON, THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE THEN-CURRENT ARBITRATION PROCEDURES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE §§ 1281-1284.3 AND LOCAL SUPPLEMENTARY RULES THEN IN EFFECT. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. UNLESS OTHERWISE AGREED BY THE PARTIES, THE ARBITRATION SHALL BE HELD BEFORE A SINGLE ARBITRATOR SELECTED AS FOLLOWS: THE DISPUTING PARTIES SHALL, WITHIN TEN (10) BUSINESS DAYS FROM THE DATE ARBITRATION IS REQUESTED BY EITHER PARTY, AGREE UPON AN ARBITRATOR. IF THE PARTIES CANNOT SO AGREE, THEN EACH PARTY, WITHIN FIVE

---

© 2007 Geraci Law Firm; All Rights Reserved

R A  R A Borrower Initials

Rev 07/07

35

(5) BUSINESS DAYS THEREAFTER, SHALL NAME AN ARBITRATOR WHO SHALL BE AN ATTORNEY LICENSED TO PRACTICE IN CALIFORNIA AND EXPERIENCED AND QUALIFIED IN REAL ESTATE MATTERS OF THE TYPE CONTEMPLATED BY THIS DEED OF TRUST AND OTHER LOAN DOCUMENTS OR A RETIRED CALIFORNIA SUPERIOR OR APPELLATE COURT JUDGE. THOSE TWO NAMED ARBITRATORS SHALL THEN, WITHIN FIVE (5) BUSINESS DAYS, SELECT A THIRD ARBITRATOR WHO SHALL BE QUALIFIED AS DEFINED ABOVE, AND SUCH THIRD ARBITRATOR SHALL BE THE SOLE ARBITRATOR TO HEAR AND DETERMINE THE DISPUTE. IF ANY PARTY HERETO FAILS TO NAME AN ARBITRATOR WITHIN THE TIME LIMIT PROVIDED IN THIS PARAGRAPH, THEN THE ARBITRATOR TIMELY NAMED BY THE OTHER PARTY SHALL HEAR AND DECIDE THE DISPUTE. IF THE ARBITRATION IS COMMENCED, THE PARTIES AGREE TO PERMIT DISCOVERY PROCEEDINGS OF THE TYPE PROVIDED BY THE CALIFORNIA CODE OF CIVIL PROCEDURE BOTH IN ADVANCE OF, AND DURING RECESSES OF, THE ARBITRATION HEARINGS. ALL FACTS AND OTHER INFORMATION RELATING TO ANY ARBITRATION ARISING UNDER THIS DECLARATION SHALL BE KEPT CONFIDENTIAL TO THE FULLEST EXTENT PERMITTED BY LAW. THE DECISION OR THE ARBITRATOR(S) SHALL FOLLOW THE LAW, SHALL BE RENDERED WITHIN TEN (10) BUSINESS DAYS FOLLOWING THE CONCLUSION OF THE ARBITRATION, AND SHALL BE SET FORTH IN A WRITTEN OPINION STATING THE FINDINGS OF FACT OR THE ARBITRATOR(S) AND LEGAL AUTHORITIES THAT ARE THE BASIS OF THE DECISION. THE VENUE FOR ANY SUCH ARBITRATION SHALL BE THE COUNTY IN WHICH BENEFICIARY'S OFFICE AT THE ADDRESS SET FORTH HEREIN IS SITUATED. THE COSTS OF THE ARBITRATOR(S) SHALL BE SPLIT EQUALLY BY THE PARTIES BUT SHALL BE A RECOVERABLE COST FOR THE PARTY PREVAILING IN THE ARBITRATION.

**50.3    PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 50.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 50.2, above. Neither the exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 50.2, above.

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

BORROWER:
Arrehbori Family LLC.

_____          _____
Raymond Arrehbori Manager /Date            Rabin Arrehbori Manager / Date
                                           By:_____
                                           Name:_____
                                           Its:_____

© 2007 Geraci Law Firm; All Rights Reserved.                    Rev 07/07

RA RA Borrower Initials

36

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On 2-5-2016 before me, German Guzman, notary public
_____ Date _____ Here insert Name and Title of the Officer
Personally appeared Raymond Arrehbori and Robin Arrehbori
_____ Name(s) of signer(s) _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

Place Notary Seal Above

GERMAN GUZMAN
Commission # 1992664
Notary Public - California
Orange County
My Comm. Expires Sep 29, 2016

© 2007 Geraci Law Firm, All Rights Reserved.      RA RA Borrower Initials      Rev. 07/07

Order No. NXCA-0210970  37

**Exhibit "A"**
(Legal Description)


LOT 699, OF TRACT NO. 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number(s):  4331-024-010





**This page is part of your document - DO NOT DISCARD**



# 20160161811



Pages:
0007

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/12/16 AT 08:00AM**

| | |
|---|---:|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |



**L E A D S H E E T**



201602120250005

00011712213



007379040

**SEQ:
03**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T97

2

RECORDING REQUESTED BY: _NexTITLE_
iClose Escrow, Inc.
Order No. NXCA-0210970
Escrow No. 1695-ME
Parcel No. 4331-024-010

AND WHEN RECORDED MAIL TO:
Ray Davis
224 South Robertson Blvd.
Beverly Hills. CA 90211



02/12/2016

*20160161811*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SHORT FORM DEED OF TRUST

**THIS DEED OF TRUST**, made this **9th day of February, 2016**, between
**Arrehbori Family, LLC., a Limited Liability Corporation,**
herein called TRUSTOR, whose address is
**237 South Wetherly    Beverly Hills, CA 90211**

**Next Title Company** , a California Corporation herein called **TRUSTEE** , and

**Ray Davis** , herein called **BENEFICIARY,**

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of **BEVERLY HILLS, LOS ANGELES** County, State of California, described as:

SEE EXHIBIT"A" ATTACHED.

**Due on Sale (Acceleration):** If the Trustors shall sell, convey, or alienate said property or any part thereof, or any interest therein, or shall be divested of their title in any manner or way, whether voluntarily or involuntarily, any indebtedness or obligation secured hereby, irrespectively of the maturity date express in any note evidencing the same, at the option of the holder hereof and without demand or notice, shall immediately become due and payable.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** 1.Performance of each agreement of Trustor incorporated by reference or contained herein. 2.Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $ 400,000.00 executed by Trustor in favor of Beneficiary or order. 3.Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

INITIALS: _RA_

39

Parcel No. 4331-024-010

3

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:** By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humbolt | 657 | 527 | | | | San Diego Series 2 Book 1961, Page 183887 | | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 3 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

**NOTICE:  A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST.  IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.**

Arrenbori Family, LLC.

By: _Raymond Arrenbori_

Document Date: February 9, 2016

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_   } S.S.

On _1-9-2016_, before me, _German Guzman notary public_, personally appeared _Raymond Arrenbori_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

GERMAN GUZMAN
Commission # 1992664
Notary Public - California
Orange County
My Comm. Expires Sep 29, 2016

INITIALS: RA



Parcel No. 4331-024-010

DO NOT RECORD

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust and made a part thereof as if set forth at length therein.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the rate called for in the note secured hereby, or at the amount allowed by law at date of expenditure, whichever is greater, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in this same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee is such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them.)

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties, must contain the name of the original

INITIALS: ℰA

---

5

Parcel No. **4331-024-010**

Trustor, Trustee and Beneficiary hereunder, the book and page where this deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so required, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or Proceeding in which Trustor, Beneficiary or Trustee shall be party unless brought by Trustee.

INITIALS: RA

Parcel No. **4331-024-010**

# REQUEST FOR FULL RECONVEYANCE

To: **, Trustee**

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

Date: _____

By: _____    By: _____

**Please mail Reconveyance to:**

_____

**Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.**
*Both original documents must be delivered to the Trustee fro cancellation before reconveyance will be made.*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_ } S.S.

On _2-9-2016_ before me, _German Guzman, notary public_,
personally appeared _Gary Hawser_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

GERMAN GUZMAN
Commission # 1992664
Notary Public - California
Orange County
My Comm. Expires Sep 29, 2016

INITIALS: _RA_

Order No. NXCA-0210970

# Exhibit "A"
(Legal Description)

LOT 699, OF TRACT NO. 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number(s): 4331-024-010





**This page is part of your document - DO NOT DISCARD**



# 20160161812



Pages:
0008

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/12/16 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 61.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 61.00 |



L E A D S H E E T



201602120250005

00011712214



007379040

SEQ:
04

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T97

2

RECORDING REQUESTED BY: *NexTitle*
iClose Escrow, Inc.
Order No. NXCA-0210970
Escrow No. 1695-ME
Parcel No. 4331-024-010

AND WHEN RECORDED MAIL TO:
Moossa Lari
*1734 Coldwater Canyon
Beverly Hills, CA 90210*


02/12/2016
*20160161812*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SHORT FORM DEED OF TRUST

**THIS DEED OF TRUST,** made this 9th day of February, 2016, between
**Arrehbori Family, LLC.,** a Limited Liability Corporation,
herein called TRUSTOR, whose address is
**237 South Wetherly    Beverly Hills, CA 90211**

**Next Title Company,** a California Corporation herein called **TRUSTEE** , and

**Moossa Lari,** herein called **BENEFICIARY,**

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of BEVERLY HILLS, LOS ANGELES County, State of California, described as:

    SEE EXHIBIT "A" ATTACHED.

    **Due on Sale (Acceleration):** If the Trustors shall sell, convey, or alienate said property or any part thereof, or any interest therein, or shall be divested of their title in any manner or way, whether voluntarily or involuntarily, any indebtedness or obligation secured hereby, irrespectively of the maturity date express in any note evidencing the same, at the option of the holder hereof and without demand or notice, shall immediately become due and payable.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** 1.Performance of each agreement of Trustor incorporated by reference or contained herein. 2.Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of **$125,000.00** executed by Trustor in favor of Beneficiary or order. 3.Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

INITIALS: 

SHORT FORM DEED OF TRUST                                    PAGE 1 of 5

44

3

Parcel No. **4331-024-010**

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:  By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humbolt | 657 | 527 | | | | San Diego Series 2 Book 1961, Page 183887 | | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 3 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

NOTICE:   A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST.  IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.

Arrehbori Family, LLC.

By *Raymond Arrehbori*

SIGNED IN COUNTERPART
Robin Arrehbori

Document Date: February 9, 2016

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *Los Angeles*        } S.S.

On *2-9-2016*, before me, *German Guzman notary public*, personally appeared *Raymond Arrehbori* who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____   (Seal)

GERMAN GUZMAN
Commission # 1992664
Notary Public - California
Orange County
My Comm. Expires Sep 29, 2016

INITIALS: *RA*

SHORT FORM DEED OF TRUST                    PAGE 2 of 5

Parcel No. **4331-024-010**

4

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:** By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humbolt | 657 | 527 | | | | San Diego Series 2 Book 1961, Page 183887 | | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 3 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

**NOTICE:** A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST. IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.

Arrchbori Family, LLC.

SIGNED IN COUNTERPART
Raymond Arrehbori

By: Robin Arrchbori

Document Date: February 9, 2016

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Los Angeles } S.S.

On Feb 10, 2016, before me, Sharon Diane Cohen, Notary Public, personally appeared Robin Arrehbori who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

SHARON DIANE COHEN
Commission # 2122114
Notary Public - California
Los Angeles County
My Comm. Expires Sep 1, 2019

INITIALS: RA

$6$

Parcel No. 4331-024-010

## DO NOT RECORD

**The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.**

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

(1)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)  To appear in and defend any action or proceeding purporting to affect the security hereof or affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)  To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the rate called for in the note secured hereby, or at the amount allowed by law at date of expenditure, whichever is greater, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in this same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)  That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)  That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees.  Trustee shall reconvey, without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee is such reconveyance may be described as "the person or persons legally entitled thereto."  Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them.)

(10)  That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act pursuant to such notice.

(11)  That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12)  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties, must contain the name of the original

INITIALS: _____

Parcel No. **4331-024-010**

Trustor, Trustee and Beneficiary hereunder, the book and page where this deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so required, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or Proceeding in which Trustor, Beneficiary or Trustee shall be party unless brought by Trustee.

INITIALS: _____

---

SHORT FORM DEED OF TRUST                                    PAGE 4 of 5

*1*

Parcel No. 4331-024-010

## REQUEST FOR FULL RECONVEYANCE

To: , **Trustee**

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

Date: _____

_____        _____

By: _____        By: _____

**Please mail Reconveyance to:**

_____

**Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.**
*Both original documents must be delivered to the Trustee fro cancellation before reconveyance will be made.*

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA
COUNTY OF _____  } S.S.

On _____, before me, _____,
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

INITIALS: _RK_

_____

Order No. NXCA-0210970

## Exhibit "A"
(Legal Description)

LOT 699, OF TRACT NO. 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number(s):  4331-024-010



# NASS LAW FIRM

---

EDMOND NASSIRZADEH, ESQ          9454 WILSHIRE BOULEVARD          TEL: (310) 858-7755
ED@NASSLAWFIRM.COM                      SUITE 700                      FAX: (310) 858-2255
                                 BEVERLY HILLS, CA 90212

January 13, 2016

***Via U.S. First Class and U.S. Mail***

ARREHBORI FAMILY, LLC.                    Raymond Arrehbori
237 S. Wetherly Drive,                    237 S. Wetherly Drive,
Beverly Hills, CA 90211                   Beverly Hills, CA 90211


Rabin Arrehbori                           M.R.R. FABRIC, INC.,
237 S. Wetherly Drive,                    1120 East 14th Place
Beverly Hills, CA 90211                   Los Angeles, CA 90021


      **Re:**     **NOTICE OF DEFAULT**
              Loan Amount:    $1,000,000.00
              Property:         237 S Wetherly Dr., Beverly Hills, CA 90211

Dear Messrs. Arrehbori,

      Our office represents MADISON TEX, INC., a California corporation, SIONIT NEMAN, and MOHTERAM AZIM (collectively referred to as "Lender" or "Beneficiary"), with regards to a Promissory Note ("Note") dated October 6, 2015, executed by M.R.R. FABRIC, INC., a California corporation, and RAYMOND ARREHBORI, and RABIN ARREHBORI, as Borrowers (collectively referred to as "Borrower").

      As you are aware, the obligations of the Borrower under the Note was also Guaranteed by Arrehbori Family, LLC ("Guarantor") via a Continuing Secured Guaranty ("Guaranty") dated November 6, 2015.  The Guaranty is also secured by a Deed of Trust executed by the Guarantor and recorded on November 18, 2015, as instrument number 2012-1446115 with the County Recorder's Office, against the property located at 237 S. Wetherly Drive, Beverly Hills, California 90211 ("Property").

      This letter is to notify all Borrowers and Guarantor that the Lender has declared an Event of Default (as defined in the Note) on January 1, 2016 (the "Date of Default") in accordance with the Note for Borrowers' failure to make interest payments under the Note.  Therefore, in accordance with Section 5.2 of the Deed of Trust, the Beneficiary is hereby declaring all the indebtedness and accrued interest thereto immediately due and payable.  In addition, the Default interest rate shall accrue on all outstanding sums as of January 1, 2016.

Raymond Arrehbori
Rabin Arrehbori
ARREHBORI FAMILY, LLC.
M.R.R. FABRIC, INC.,
January 13, 2016
Page 2 of 2


      In addition, irrespective of the Default discussed above, this letter shall also serve as written demand by Lender that the entire outstanding principal balance of this Note, together with all accrued and unpaid interest, shall be due within thirty (30) days from the date of this letter.  Hence the Maturity Date of the Note is now declared to be February 15, 2016 irrespective of any defaults that have caused the entire balance of the Note to be due and payable immediately.

      Should this demand not be met and the Indebtedness not paid in full, the Lender will commence an action to foreclose on the Property. You shall additionally be liable for all reasonable cost of collection, including attorney's fees as provided for under the Deed of Trust, the Note and the Guaranty.

      Lender's receipt of any payments after the Date of Default shall not constitute a waiver of the Event of Default or of Lender's rights or remedies upon this Event of Default. As stated in the Note, payment of principal and interest after such Event of Default shall be deemed a prepayment as of the Date of Default.


      Very truly yours,


      NASS LAW FIRM


      Edmond Nassirzadeh, Esq.

902129998
0544850411-0094

```
------ Sales Receipt ------
Product          Sale Unit    Final
Description       Qty Price   Price

LOS ANGELES CA 90021-2602           $0.71
Zone-1
First-Class Mail Letter
  1.10 oz.
  Expected Delivery: Fri 01/15/16
  @@ Certified Mail               $3.45
  USPS Certified Mail #:
  70121010000068324191
  Return Receipt                  $2.80
  Label #:
  9590940301195077395053
                                ========
  Issue Postage:                  $6.96

BEVERLY HILLS CA 90211-2515         $0.49
Zone-1
First-Class Mail Letter
  1.00 oz.
  Expected Delivery: Fri 01/15/16
  @@ Certified Mail               $3.45
  USPS Certified Mail #:
  70121010000068324177
  Return Receipt                  $2.80
  Label #:
  9590940301195077395077
                                ========
  Issue Postage:                  $6.74

BEVERLY HILLS CA 90211-2515         $0.49
Zone-1
First-Class Mail Letter
  1.00 oz.
  Expected Delivery: Fri 01/15/16
  @@ Certified Mail               $3.45
  USPS Certified Mail #:
  70121010000068324184
  Return Receipt                  $2.80
  Label #:
  9590940301195077395046
                                ========
  Issue Postage:                  $6.74

BEVERLY HILLS CA 90211-2515         $0.49
Zone-1
First-Class Mail Letter
  1.00 oz.
  Expected Delivery: Fri 01/15/16
  @@ Certified Mail               $3.45
  USPS Certified Mail #:
  70121010000068324160
  Return Receipt                  $2.80
  Label #:
  9590940301195077395060
                                ========
  Issue Postage:                  $6.74
                                --------
Total:                           $27.18

Paid by:
Cash                             $40.00
Change Due:                     -$12.82
```

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

BEVERLY HILLS CA 90211   OFFICIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00  $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| | $0.49 |
| Total Postage & Fees | $ $6.74 |

Postmark Here   0411  06   BEVERLY HILLS CA   01/13/2016

Sent To  ARREHBORI FAMILY LLC
Street, Apt. No.; or PO Box No.  237 S Wethenly Drive
City, State, ZIP+4  Beverly Hills, CA 90211

PS Form 3800, August 2006        See Reverse for Instructions

7012 1010 0000 6832 4184

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

BEVERLY HILLS CA 90211   OFFICIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $2.80  $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| | $0.49 |
| Total Postage & Fees | $ $6.74 |

Postmark Here   0411  06   01/13/2016

Sent To  Rabin Arrehbori
Street, Apt. No.; or PO Box No.  237 S Wethenly Drive
City, State, ZIP+4  Beverly Hills, CA 90211

PS Form 3800, August 2006        See Reverse for Instructions

7012 1010 0000 6832 4177

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

BEVERLY HILLS CA 90211   OFFICIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $2.80  $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| | $0.49 |
| Total Postage & Fees | $ $6.74 |

Postmark Here   0411  06   01/13/2016

Sent To  RAYmond ARREHbori
Street, Apt. No.; or PO Box No.  237 S Wethenly Drive
City, State, ZIP+4  Beverly Hills, CA 90211

PS Form 3800, August 2006        See Reverse for Instructions

7012 1010 0000 6832 4177



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

LOS ANGELES, CA 90021

OFFICIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A N/A $0.71 |
| Total Postage & Fees | $ $6.96 |

Postmark Here

01/13/2016

Sent To M.R.R. Fabric, Inc.
Street, Apt. No.; or PO Box No. 1120 East 14th Place
City, State, ZIP+4 Los Angeles, CA 90021

PS Form 3800, August 2006          See Reverse for Instructions